UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LOUISIANA NEWPACK SHRIMP, INC.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-12948-WBV-KWR** |
| **OCEAN FEAST OF CHINA, LTD, ET AL.** | **SECTION: D (4)** |

*Consolidated with*

| | |
|---|---|
| **LONGHAI DESHENG SEAFOOD STUFF CO. LTD** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-782-WBV-KWR** |
| **LOUISIANA NEWPACK SHRIMP, INC., ET AL.** | **SECTION: D (4)** |

## ORDER AND REASONS

Before the Court is Defendants' Motion for Issuance of Writ of Sequestration.[1] The Motion is opposed,[2] Defendants have filed a Reply,[3] and Longhai Desheng Seafood Stuff Co. Ltd. has filed a memorandum in support of the Motion.[4] After careful consideration of the parties' memoranda and the applicable law, the Motion is **GRANTED.**

### I.   FACTUAL AND PROCEDURAL BACKGROUND

This consolidated matter arises from a joint venture between Louisiana Newpack Shrimp, Inc. ("Louisiana Newpack"), Ocean Feast of China ("Ocean Feast")

---

[1] R. Doc. 78.  Unless otherwise specified, all footnotes refer to the docket of the master file, 19-cv-12948.
[2] R. Doc. 81.
[3] R. Doc. 84.
[4] R. Doc. 79.

and Indigo Seafood Partners, Inc. ("Indigo"), that operated between 2017 and 2019. On June 17, 2017, Louisiana Newpack, Ocean Feast and Indigo executed a Joint Venture Agreement, effective March 15, 2017, to purchase, import and sell Chinese crabmeat under the OCEANA brand.[5] Edward Lee ("Lee") signed the Joint Venture Agreement on behalf of Louisiana Newpack, Arthur Zeng signed on behalf of Ocean Feast, and Jeffrey G. Martinez-Malo signed on behalf of Indigo.[6] Under the terms of the Joint Venture Agreement, Louisiana Newpack served as the financier, Ocean Feast handled procurement and quality control, and Indigo was responsible for sales and marketing.[7] According to Louisiana Newpack's First Amended Complaint, under the Joint Venture Agreement, "Louisiana Newpack is fee-based, meaning that it receives 2% of the sales amount for general administration expenses and 3% of the sales amount as compensation. Net profits are divided equally between Indigo and Ocean Feast, and are distributed every 30 days."[8]

On or about September 24, 2019, Louisiana Newpack filed a Petition for Declaratory Judgment, Suit on Open Account and Damages against Ocean Feast, Indigo, Zeng and Martinez-Malo in Louisiana state court.[9] Louisiana Newpack alleges that Indigo and Ocean Feast breached the Joint Venture Agreement by selling crabmeat outside the joint venture despite an exclusivity provision, including to one of the joint venture's largest supplier, Longhai Desheng Seafood Stuff Co., Ltd.

---

[5] R. Doc. 1-1 at p. 3; R. Doc. 29 at pp. 3-4; R. Doc. 29-1.
[6] R. Doc. 29-1 at p. 5.
[7] R. Doc. 29 at p. 4; R. Doc. 29-1 at p. 1.
[8] R. Doc. 29 at ¶ 19 (*citing* R. Doc. 29-1).
[9] R. Doc. 1-1.

("Longhai"), and that they should share in the joint venture's costs and expenses.[10] Indigo and Ocean Feast deny that the Joint Venture Agreement contained any exclusivity requirement and deny that it requires them to share in the joint venture's costs or expenses.[11] On October 3, 2019, Zeng, Martinez-Malo, Indigo and Ocean Feast removed the case to this Court based upon diversity jurisdiction under 28 U.S.C. § 1332.[12]

On March 6, 2020, Longhai filed a Complaint for Breach of Contract and Claim on Open Account in this Court against Louisiana Newpack and Edward Lee, seeking to recover an outstanding balance $998,188.03 allegedly owed by Louisiana Newpack for three lots of crabmeat that it purchased from Longhai in November and December 2018.[13] The Court consolidated the two cases on May 29, 2020.[14]

On July 24, 2020, Ocean Feast, Indigo, Zeng and Martinez-Malo (collectively, "Defendants"), filed the instant Motion, seeking the sequestration of certain United States Customs and Border Protection Agency tariff reimbursements, which are owned by the joint venture and ultimately payable to Defendants, but are (or soon will be) in Louisiana Newpack's possession or control.[15] Defendants claim that sequestration is necessary to prevent Louisiana Newpack from wrongfully concealing or disposing of the funds to which Defendants are entitled. Defendants explain that the crabmeat Louisiana Newpack purchased on behalf of the joint venture was

---

[10] *Id.* at p. 4.
[11] R. Doc. 33.
[12] R. Doc. 1.
[13] R. Doc. 1 in Civ. A. No. 20-782-WBV-KWR, *Longhai Desheng Seafood Stuff Co. Ltd. v. Louisiana Newpack Shrimp Company, Inc., et al.*
[14] R. Doc. 54.
[15] R. Doc. 78.

subject to a 10% duty to the United States Customs and Border Protection Agency, imposed effective September 2018, which increased to 25% in May 2019.[16] Defendants assert that Louisiana Newpack, as the financier of the joint venture, was responsible for paying these tariffs on behalf of the joint venture, which amounted to $879,318.50 between October 2018 and December 2019.[17] According to Defendants, the joint venture accounted for these tariff payments as costs of goods sold, which increased the joint venture's costs and reduced its net profits by $879,318.50. As a result, and because the joint ventures costs and expenses exceeded its sales revenue, Defendants claim the joint venture did not earn any net profits in 2019, so neither Indigo nor Ocean Feast was compensated that year.[18] Defendants argue, however, that because Louisiana Newpack received "fee-based" compensation, its 2% and 3% fees amounted to payments of at least $317,888.16 in 2018 based on that year's sales figures, and $264,445.31 in 2019.[19]

Defendants claim that on December 17, 2019, the Office of the United States Trade Representative ("USTR") published a Notice of Product Exclusions: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation (the "Notice") in the Federal Register, announcing its decision to grant certain exclusion requests from the duties previously assessed to goods imported from China, including the crabmeat that the joint venture purchased and

---

[16] R. Doc. 78-1 at p. 3 (*citing* R. Doc. 78-2 at ¶ 10).
[17] R. Doc. 78-1 at p. 3 (*citing* R. Doc. 29 at ¶ 15; R. Doc. 78-2 at ¶ 11).
[18] R. Doc. 78-1 at p. 4 (*citing* R. Doc. 78-2 at ¶¶ 13-14).
[19] R. Doc. 78-1 at p. 4 (*citing* R. Doc. 78-2 at ¶ 15).

imported.[20] Defendants assert that the product exclusions announced in the Notice apply retroactively to September 24, 2018, meaning the joint venture is entitled to reimbursement of the $879,318.50 paid in tariffs between October 2018 and December 2019.[21] Defendants claim that Louisiana Newpack has submitted formal requests for return of the tariff amounts, or "protests," and that Louisiana Newpack will receive the $879,318.50 "on a rolling basis in the coming weeks" as the United States Customs and Border Protection Agency reviews and processes the protests.[22]

Defendants argue that the tariff reimbursement should be sequestered because they belong to the joint venture, not Louisiana Newpack, since the tariffs increased the joint venture's costs of goods sold and decreased its net profits.[23] Defendants claim that there are competing claims to the funds, including: (1) Indigo and Ocean Feast's claim to their share of the $879,318.50 to the extent that it increases the joint venture's net profits; (2) creditors of the joint venture, including Longhai; and (3) possibly Louisiana Newpack, which may claim that it is a creditor of the joint venture.[24] Defendants "vehemently deny" that Louisiana Newpack has any claim to the tariff reimbursements, since the Joint Venture Agreement does not entitle Louisiana Newpack to any of the joint venture's net profits and limits its compensation to a percentage of net sales.[25] As such, Defendants argue that these

---

[20] R. Doc. 78-1 at p. 4 (*citing* R. Doc. 78-2 at ¶ 17).
[21] R. Doc. 78-1 at p. 4 (*citing* R. Doc. 78-2 at ¶ 17).
[22] R. Doc. 78-1 at p. 4 (*citing* R. Doc. 78-2 at ¶ 19).
[23] R. Doc. 78-1 at p. 5.
[24] *Id.* at pp. 5-6.
[25] *Id.* at p. 6 (*citing* R. Doc. 78-2 at ¶ 15).

competing claims warrant sequestration of the funds during the pendency of litigation.

Defendants further assert that the grounds for issuance of a writ of sequestration "unquestionably exist" under Fed. R. Civ. P. 64, La. Code Civ. P. 3501 and La. Code Civ. P. art. 3571 because the tariff reimbursements are within Louisiana Newpack's power to conceal, dispose of, or waste, and Defendants (and other parties) have a claim of ownership to the funds.[26] Defendants further assert that the Court should exercise its discretion by granting sequestration of the tariff reimbursements without requiring Defendants to post a bond, as authorized by Louisiana law and Fifth Circuit precedent.[27] Defendants argue that security is not required in this case because they are agreeable to placing the funds in an interest-bearing account at a federally insured bank, and therefore Louisiana Newpack will not suffer any harm from the wrongful issuance of a writ of sequestration. Alternatively, if the Court determines that security is required, Defendants claim that only a nominal bond should be set.[28]

On August 3, 2020, Longhai filed a Memorandum in Support of Defendants' Motion, asserting that sequestration is warranted to protect its interest in the tariff reimbursements as a creditor of the joint venture.[29] Longhai points out that two of the joint venturers acknowledged in the instant Motion that Louisiana Newpack owes

---

[26] R. Doc. 78-1 at pp. 6-7 (citations omitted).
[27] R. Doc. 78-1 at pp. 10-11 (*citing* La. Code Civ. P. art. 3574; *J.C. Trahari Drilling Contractor, Inc. v. Sterling*, 335 F.2d 65, 66 (5th Cir. 1964); *Joiner v. Bill Hood Ford, Inc.*, 2002-0996 (La. App. 1 Cir. 4/2/03); 843 So.2d 1147, 1151; *People's United Equip. Finan. Corp. v. TAK, LLC*, Civ. A. No. 18-11767, 2019 WL 2744481 (E.D. La. July 1, 2019)).
[28] R. Doc. 78-1 at p. 11.
[29] R. Doc. 79.

a balance of $988,188.03 to Longhai,[30] and that Lee acknowledged the debt and personal responsibility for the debt owed by Louisiana Newpack in a letter dated July 11, 2019.[31] Longhai asserts that Lee has balked at paying the debt because he wants to be reimbursed by Indigo and Ocean Feast for his capital investments and personal loans used to finance the joint venture. Longhai claims that, upon information and belief, Lee has taken control of the procured crabmeat and continues to sell the product, but is diverting the proceeds to repay the debt Louisiana Newpack owes him (Lee), instead of paying the long-overdue amounts owed to Longhai, an acknowledged creditor.[32] As such, and because the tariff reimbursements would satisfy most of the amount owed to Longhai, Longhai asserts that the tariff reimbursements should be sequestered pending resolution of its claims.

Also on August 3, 2020, Louisiana Newpack filed its Opposition brief, asserting that the Motion should be denied because Defendants cannot satisfy the requirements for the issuance of a writ of sequestration.[33] Louisiana Newpack argues that Defendants do not have an ownership interest in the tariff reimbursements, they cannot establish the amount of the funds to be sequestered with "specific facts," and they failed to post security, all of which are required under Louisiana law.[34] Louisiana Newpack points out that Defendants seek sequestration of a speculative, yet-to-be-received amount of $879,318.50, but Louisiana Newpack has only received

---

[30] R. Doc. 79 at p. 2 (*quoting* R. Doc. 78-2 at ¶¶ 8-9; R. Doc. 78-1 at p. 3).
[31] R. Doc. 79 at p. 2 (*quoting* R. Doc. 79-1).
[32] R. Doc. 79 at p. 3.
[33] R. Doc. 81.
[34] *Id.* at pp. 1-2 (*citing* La. Code Civ. P. arts. 3501, 3571).

approximately $231,299.24 to date and it is unclear whether, or when, it may receive any additional tariff reimbursements.[35] According to Louisiana Newpack, it is well settled that sequestration of property based upon a thing not yet due is improper.[36]

Louisiana Newpack further asserts that it has already used the $231,299.24 to offset a fraction of the debts that Ocean Feast and Indigo owe to the joint venture,[37] and to "pay down loans made to the Joint Venture."[38] Louisiana Newpack argues that Defendants neither own nor have the right to possess the tariff reimbursements, which belong to the joint venture. Louisiana Newpack claims that under the terms of the Joint Venture Agreement, it has the right to possess the reimbursements as "security" in its position as financier.[39] As the financier, Louisiana Newpack asserts that it was required to incur, and has incurred, significant costs on behalf of the joint venture, and that the Joint Venture Agreement allows Louisiana Newpack to recoup its expenses from the joint venture's receivables, which are held as security to ensure payment of the joint venture's debts.[40] Louisiana Newpack asserts that because the joint venture has been operating at "a great loss for many, many months," it used the $231,299.24 tariff reimbursement that it received in June 2020 to offset the losses, so there is no "net profit" to which Ocean Feast or Indigo could conceivably have any interest.[41] Louisiana Newpack argues that Longhai's memorandum in support of the

---

[35] R. Doc. 81 at pp. 2, 9-10 (*citing* R. Doc. 81-1 at ¶ 7).
[36] R. Doc. 81 at p. 11 (quoting *Williams v. Williams*, 541 So.2d 928, 931 (La. App. 5 Cir. 3/15/89)).
[37] Louisiana Newpack asserts that as of May 31, 2020, Indigo and Ocean Feast, along with their principals, Zeng and Martinez-Malo, were each indebted to the joint venture (and Louisiana Newpack) in the amount of $1,318,504.00. R. Doc. 81 at pp. 2, 7, 10.
[38] R. Doc. 81 at p. 2 (*citing* R. Doc. 81-1 at ¶ 7).
[39] R. Doc. 81 at pp. 2, 6, 12 (*citing* R. Doc. 81-2).
[40] R. Doc. 81 at pp. 3, 5-7, 12 (*citing* R. Doc. 81-2).
[41] R. Doc. 81 at pp. 3, 11.

instant Motion should be disregarded because it adds nothing more than unsupported conjecture and the superficial beliefs of Longhai.[42]

Finally, to the extent this Court finds that a writ of sequestration should issue, Louisiana Newpack asserts that the Motion should be denied because Defendants failed to post security, as required under La. Code Civ. P. arts. 3501 & 3574.[43] Louisiana Newpack claims that the Court only has discretion to dispense with that requirement if it is "is dispensed with by law."[44] Louisiana Newpack argues that Defendants fail to cite any legal authority that would allow the Court to dispense with the security requirement. Louisiana Newpack further asserts that the Court cannot cure Defendants' failure to post security by issuing a writ of sequestration on its own motion under Article 3501.[45] Louisiana Newpack asserts that Article 3501 only allows the Court to issue a writ of sequestration without requiring security if the Court finds that there is a dispute regarding ownership of the property and neither party appears to have a better right to possession.[46] Louisiana Newpack argues that Defendants have not identified any facts that would allow the Court to make such a finding. As such, Louisiana Newpack asserts that the Motion should be denied.

In response, Defendants argue that Louisiana Newpack's Opposition brief underscores why sequestration is appropriate in this case because Louisiana Newpack admitted that it has unilaterally disposed of $231,299.24 in tariff

---

[42] R. Doc. 81 at pp. 13-14.
[43] *Id.* at pp. 3, 14.
[44] *Id.* at p. 14 (*quoting* La. Code Civ. P. art. 3574) (quotation marks omitted).
[45] R. Doc. 81 at pp. 14-15. Although Louisiana Newpack cites Article 3501, La. Code Civ. P. art. 3573 governs sequestration by the Court on its own motion.
[46] R. Doc. 81 at p. 15 (*quoting* La. Code Civ. P. art. 3501) (quotation marks omitted).

reimbursements it received in June 2020.[47] Defendants believe that the funds were used by Louisiana Newpack to pay itself and/or its owner, Lee, for "debts" the joint venture purportedly "owed" them.[48] Defendants argue that Louisiana Newpack has no authority to decide how, and in what order, to satisfy claims against joint venture property, or to pay itself or its owner from the tariff reimbursements.[49] Although Louisiana Newpack claims there are no funds to sequester, Defendants argue that Louisiana Newpack does not contest that it will receive the remaining $648,012.26 of the tariff reimbursements and Louisiana Newpack cannot avoid sequestration because it does not yet have physical possession of the remaining funds.[50] Defendants assert that Louisiana Newpack's argument regarding sequestration of funds "not yet due" ignores that the tariff reimbursements are due and that they are a certain, undisputed sum that Louisiana Newpack unquestionably will receive.[51]

Defendants further assert that although the tariff reimbursements are property of the joint venture, Defendants' membership in the joint venture entitles them to their share of those funds to the extent any remain after Longhai is paid.[52] Contrary to Louisiana Newpack's argument, Defendants assert the tariff reimbursements are not "accounts receivables" that it may hold as "security," as they are not amounts owed from customers. Instead, they are repayments for the costs of goods sold by the joint venture.[53] Defendants also argue that Louisiana Newpack's

---

[47] R. Doc. 84 at p. 2 (*citing* R. Doc. 81 at p. 9); R. Doc. 84 at p. 3.
[48] R. Doc. 84 at pp. 2, 3.
[49] *Id.* at p. 3.
[50] *Id.* at pp 2-3 (citing *Blitz v. Guenin*, 187 So. 690 (La. App. 1939)).
[51] R. Doc. 84 at p. 3 n.1.
[52] *Id.* at p. 4.
[53] *Id.* at p. 6.

argument regarding security ignores Fifth Circuit authority that gives this Court discretion to seize tariff reimbursements without requiring a bond.[54] Defendants point out that Louisiana Newpack failed to identify any damage that it would suffer if the tariff reimbursements are wrongfully seized, or why the funds should not be placed in an interest bearing account.[55] Contrary to Louisiana Newpack's assertion, Defendants argue that this Court can dispense with the security requirement because the parties have competing claims to joint venture property (the funds) which, at a minimum, are equal claims to the tariff reimbursements.[56] Thus, Defendants maintain that the Motion should be granted without requiring security.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 64(a) provides that, "At the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment. But a federal statute governs to the extent it applies." One of the remedies available under this rule is sequestration.[57] Louisiana law provides that a writ of sequestration "shall issue only when the nature of the claim and the amount thereof, if any, and the grounds relied upon for the issuance of the writ clearly appear from specific facts shown by the petition verified by, or by the separate affidavit of, the petitioner, his counsel, or agent."[58] Louisiana Code of Civil

---

[54] R. Doc. 84 at p. 6 (citing *J.C. Trahari Drilling Contractor, Inc. v. Sterling*, 335 F.2d 65, 66 (5th Cir. 1964); *People's United Equip. Finan. Corp. v. TAK, LLC*, Civ. A. No. 18-11767, 2019 WL 2744481 (E.D. La. July 1, 2019)).
[55] R. Doc. 84 at p. 7 & n.5.
[56] *Id.* at pp. 7-8.
[57] Fed. R. Civ. P. 64(b).
[58] La. Code Civ. P. art. 3501.

Procedure article 3501 requires the applicant to "furnish security as required by law for the payment of the damages the defendant may sustain when the writ is obtained wrongfully."[59] The grounds for issuance of a writ of sequestration are found in La. Code Civ. P. art. 3571, which provides:

> When one claims the ownership or right to possession of property, or a mortgage, security interest, lien, or privilege thereon, he may have the property seized under a writ of sequestration, if it is within the power of the defendant to conceal, dispose of, or waste the property or the revenues therefrom, or remove the property from the parish, during the pendency of the action.

In *Pioneer Bank & Tr. Co. v. Oechsner*, the collateral for a loan consisted of "buildings, improvements, machinery, equipment, furniture, furnishings and all other property, movable and immovable," and the creditor moved for sequestration of the property "and the revenues from the use of the property" under Article 3571.[60] In affirming the appellate court's decision allowing sequestration, the Louisiana Supreme Court explained:

> Pioneer need not show that Oechsner would conceal or waste the revenues, only that it is within his power to do so. Because the of the very nature of the revenues and the fact that they are on the mortgaged property and kept by Oechsner, it is within Oechsner's power to conceal, dispose of or waste the said revenues. Therefore we hold that, under arts. 3571 and 327, Pioneer may have the mortgaged property seized

---

[59] *Id.*
[60] 468 So.2d 1164, 1166 (La. 1985).

under a writ of sequestration and collect the revenues produced by the property under seizure.[61]

The Louisiana Supreme Court has also held that a writ of sequestration is "an extremely harsh remedy which is only extended where the formalities of the law have been strictly and literally complied with . . . ."[62]

### III. ANALYSIS

#### 1. *Louisiana Newpack has the power to conceal, dispose of, or waste the tariff reimbursements.*

As in *Pioneer*, because of the nature of the property at issue in this case—money—the Court finds it is within Louisiana Newpack's power to conceal, dispose of, or waste the tariff reimbursements. The Court agrees with Defendants that Louisiana Newpack's Opposition brief underscores this fact, as Louisiana Newpack readily admits that it has already received, and disposed of, $231,299.24 in tariff reimbursements, which it used, at least in part, to repay itself and/or Lee.[63] Accordingly, Defendants have shown that it is within Louisiana Newpack's power to conceal, dispose of, or waste the remaining tariff reimbursements, or $648,019.26, during the pendency of the action, as required under La. Code Civ. P. art. 3571.

#### 2. *Defendants have an ownership interest in the tariff reimbursements based upon the Joint Venture Agreement.*

The Court further finds that Defendants have shown that they have an ownership interest in the remaining tariff reimbursements under the terms of the

---

[61] *Id*. at 1168 (internal citations omitted).
[62] *Hancock Bank v. Alexander*, 237 So.2d 669, 672 (La. 1970); *Joiner v. Bill Hood Ford, Inc.*, 2002-0996 (La. App. 1 Cir. 4/2/03), 843 So.2d 1147, 1150 (quoting *Hancock Bank*, 237 So.2d at 672).
[63] R. Doc. 81 at p. 2 (*citing* R. Doc. 81-1 at ¶ 7).

Joint Venture Agreement. Defendants claim an ownership interest in the tariff reimbursements based upon Indigo and Ocean Feast's right to split the net profits of the joint venture, and the fact that the $879,318.50 in tariff reimbursements belong to, and will increase the net profits of, the joint venture. Although Louisiana Newpack argues that Defendants have no ownership interest or right to possess the tariff reimbursements because the reimbursements belong to the joint venture, the Court disagrees. Louisiana Newpack fails to acknowledge the practical effect that the tariff reimbursements will have on the net profits of the joint venture. As Defendants point out, any tariff reimbursements will reduce the joint venture's costs of goods sold, thereby increasing the joint venture's net profits, which, according to the Joint Venture Agreement, belong to Ocean Feast and Indigo. Louisiana Newpack readily admits in its First Amended Complaint and in its Opposition brief that Defendants are entitled to the net profits of the joint venture under the Joint Venture Agreement.[64] Although Louisiana Newpack argues that Defendants have no interest in the tariff reimbursements because Indigo and Ocean Feast must share equally in the joint venture's losses, to a tune of over $1.3 million each, that assertion is a source of contention between the parties and hotly contested by Defendants.[65]

The Court rejects Louisiana Newpack's assertion that it has the right to hold the tariff reimbursements as security under the terms of the Joint Venture Agreement to secure the payment of the joint venture's debts.[66] While the Joint

---

[64] R. Doc. 29 at ¶ 19 (*citing* R. Doc. 29-1); R. Doc. 81 at p. 3.
[65] *See* R. Doc. 29 at ¶¶ 38, 129-134; R. Doc. 33-1 at pp. 20-21.
[66] *See* R. Doc. 81 at p. 12.

Venture Agreement empowers Louisiana Newpack to hold inventory and "Account Receivables" as security,[67] as Defendants aptly point out, the term "accounts receivable" typically refers to money owed by customers for goods or services delivered or used.  Nonetheless, even if Louisiana Newpack has the right to hold the tariff reimbursements as security, that right does not negate the fact that the tariff reimbursements impact the joint venture's net profits or Defendants' right to share in the net profits.  The Court likewise rejects Louisiana Newpack's assertion that Defendants are not entitled to sequestration of future tariff reimbursements because they constitute "a thing not yet due him."[68]  The Court agrees with Defendants[69] that Louisiana Newpack's argument ignores that the tariff reimbursements are due, even though the full amount of the tariff reimbursements has not yet been paid.  While Louisiana Newpack claims that "there is no certainty as to whether or when [$879,318.50 in tariff reimbursements] will be received,"[70] it does not dispute Defendants' assertion that Louisiana Newpack has submitted formal requests for $879,318.50 in tariff reimbursements.  Louisiana Newpack even submitted evidence that "applications [for tariff reimbursements] have been submitted by a third party representative."[71]  The Court notes that Louisiana Newpack completely glosses over this issue by asserting that it received $231,299.24 in tariff reimbursements in June

---

[67] R. Doc. 78-3 at p. 2.
[68] R. Doc. 81 at p. 11 (citing *Williams v. Williams*, 531 So.2d 928, 931 (La. App. 5 Cir. 3/15/89)).
[69] *See* R. Doc. 83 at p. 3 n. 1.
[70] R. Doc. 81 at p. 9 (*citing* R. Doc. 81-1 at ¶ 7).
[71] R. Doc. 81-1 at ¶ 7.

2020,[72] without explaining its role in requesting the tariff reimbursements or the amount of reimbursement sought.

Based on the foregoing, the Court finds that Defendants have shown an ownership interest in the tariff reimbursements.

### 3. *Security*

Under La. Code Civ. P. art. 3574, "An applicant for a writ of sequestration shall furnish security for an amount determined by the court to be sufficient to protect the defendant against any damage resulting from a wrongful issuance, unless security is dispensed with by law." Louisiana Newpack acknowledges in its Opposition brief that the Court can dispense with the security requirement when issuing a writ of sequestration on its own motion if the Court finds that there is a dispute regarding ownership of the property and one of the parties does not appear to have a better right to possession than the other.[73] However, this case does not involve sequestration by this Court on its own motion under La. Code Civ. P. art. 3573. This is a request for a writ of sequestration under La. Code Civ. P. art. 3501. Although the Louisiana Supreme Court has not directly addressed the extent to which Article 3574 grants discretion to issue a writ of sequestration without security, as requested by Defendants, this Court has held that, "in *Joiner v. Bill Hood Ford, Inc.*, the Louisiana Court of Appeal for the First Circuit relied on *Ludwig* and *J.C. Trahan* to hold the trial court had 'wide latitude and discretion afforded it in ordering . . .

---

[72] *See* R. Doc. 81 at p. 2; R. Doc. 81-1 at ¶¶ 5 & 6.
[73] R. Doc. 81 at pp. 14-15 (*citing* La. Code Civ. P. 3501). Although Louisiana Newpack cites La. Code Civ. P. art. 3501 to support this assertion, Louisiana Newpack quotes directly from La. Code Civ. P. art. 3573, which governs "Sequestration by court on its own motion."

sequestration without bond.'" [74]   As such, this Court concluded that it has the discretion to grant sequestration without bond.[75]

Nevertheless, the Court believes that requiring security is appropriate. As Defendants point out, the purpose of furnishing security is to protect Louisiana Newpack from any harm for wrongful seizure.[76] Thus, the remaining tariff reimbursements received by Louisiana Newpack in the amount of $648,019.26, shall be sequestered and placed in an interest-bearing account at a federally insured bank and Defendants shall post security in the amount of $10,000.00.

Accordingly, the Court finds that Defendants are entitled to have any tariff reimbursements due to be paid to Louisiana Newpack seized under a writ of sequestration and placed in an interest-bearing account at a federally insured bank. Defendants have shown specific facts, through the affidavit of Martinez-Malo, to warrant the issuance of a writ of sequestration under La. Code Civ. P. 3501. Defendants have established adequate grounds for the issuance of a writ of sequestration under La. Code Civ. P. art. 3571 by showing that they have an ownership interest in the remaining tariff reimbursements and that it is within Louisiana Newpack's power to conceal, dispose of, or waste the funds, as it did with the first $231,299.24 of tariff reimbursement that it received. Further, recognizing that a writ of sequestration is a harsh remedy, the Court has considered whether any

---

[74] *People's United Equipment Finance Corp. v. TAK, LLC*, Civ. A. No. 18-11767, 2019 WL 2744481, at *4 (E.D. La. Jul. 1, 2019) (citing *Joiner*, 2002-0996 (La. App. 1 Cir. 4/2/03), 843 So.2d 1147; *Ludwig v. Calloway*, 187 So.4 (La. 1939); *J.C. Trahan Drilling Contractor, Inc. v. Sterling*, 335 F.2d 65, 66 (5th Cir. 1964)).
[75] *People's United Equipment Finance Corp.*, Civ. A. No. 18-11767, 2019 WL 2744481 at *4.
[76] *See* La. Code Civ. P. art. 3501 ("The applicant shall furnish security as required by law for the payment of the damages the defendant may sustain when the writ is obtained wrongfully.").

lesser remedy would protect the tariff reimbursements from concealment, disposal or waste. The Court is not satisfied that any other recourse would protect the disputed funds.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion for Issuance of Writ of Sequestration[77] is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendants shall post security in the amount of $10,000.00 prior to the issuance of the writ of sequestration.

**IT IS FURTHER ORDERED** that Defendants shall have until **Wednesday, September 2, 2020,** to provide that Court with a proposed Order for Writ of Sequestration commensurate with the Court's findings. Defendants shall send the proposed Order to the Court's email address, efile-Vitter@laed.uscourts.gov.

New Orleans, Louisiana, August 26, 2020.

_____
**WENDY B. VITTER**
**United States District Judge**

---

[77] R. Doc. 78.