## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

**LOUISIANA NEWPACK SHRIMP, INC.**               CIVIL ACTION

**VERSUS**                                       NO. 19-12948-WBV-KWR

**OCEAN FEAST OF CHINA, LTD, ET AL.**            SECTION: D (4)

*Consolidated with*

**LONGHAI DESHENG SEAFOOD**                      CIVIL ACTION
**STUFF CO. LTD**

**VERSUS**                                       NO. 20-782-WBV-KWR

**LOUISIANA NEWPACK**                            SECTION: D (4)
**SHRIMP, INC., ET AL.**

## ORDER AND REASONS

Before the Court is Defendants' Motion to Dismiss, filed by Ocean Feast Co., Ltd., Indigo Seafood Partners, Inc., Arthur Zeng and Jeffrey Martinez-Malo. [1] Louisiana Newpack Shrimp, Inc. opposes the Motion,[2] and Defendants have filed a Reply.[3] After careful consideration of the parties' memoranda and the applicable law, the Motion is **GRANTED in part** and **DENIED in part**.

### I.    FACTUAL AND PROCEDURAL BACKGROUND

This consolidated matter arises from a failed joint venture between Louisiana Newpack Shrimp, Inc. ("Louisiana Newpack"), Ocean Feast Co., Ltd. ("Ocean Feast")

---

[1] R. Doc. 33.  Unless otherwise specified, all footnotes refer to the docket of the master file, 19-cv-12948.
[2] R. Doc. 37.
[3] R. Doc. 40.

and Indigo Seafood Partners, Inc. ("Indigo"), that operated between 2017 and 2019. On June 17, 2017, Louisiana Newpack, Ocean Feast and Indigo executed a Joint Venture Agreement, effective March 15, 2017, to purchase, import and sell seafood products from international seafood manufacturers.[4]  Edward Lee ("Lee") signed the Joint Venture Agreement as the legal representative of Louisiana Newpack, Arthur Zeng ("Zeng") signed as the legal representative of Ocean Feast, and Jeffrey G. Martinez-Malo ("Martinez-Malo") signed as the legal representative of Indigo.[5] Under the terms of the Joint Venture Agreement, Louisiana Newpack served as the financier, Ocean Feast handled procurement and quality control, and Indigo was responsible for sales and marketing.[6]  Louisiana Newpack claims that the parties created the joint venture to sell seafood under the OCEANA brand.[7]  Louisiana Newpack also claims that under the Joint Venture Agreement, it receives 5% of each sale for general administration expenses and compensation, while the net profits are divided equally between Indigo and Ocean Feast and distributed every 30 days.[8]

On or about September 24, 2019, Louisiana Newpack filed a Petition for Declaratory Judgment, Suit on Open Account and Damages in Louisiana state court, asserting eleven causes of action against Ocean Feast, Indigo, Zeng and Martinez-Malo.[9]  Most of the claims stem from Louisiana Newpack's allegation that Indigo and Ocean Feast breached the Joint Venture Agreement and their fiduciary duties owed

---

[4] R. Doc. 1-1 at p. 3; R. Doc. 29 at pp. 3-4; R. Doc. 29-1.
[5] R. Doc. 29-1 at p. 5.
[6] *Id.* at p. 1.
[7] R. Doc. 29 at ¶ 13.
[8] R. Doc. 29 at ¶ 19 (*citing* R. Doc. 29-1).
[9] R. Doc. 1-1.

to the joint venture by procuring, marketing and selling seafood product outside of the joint venture, despite agreeing orally and in writing to the exclusive nature of the joint venture.[10]  As an example, Louisiana Newpack alleges that Ocean Feast and Indigo conspired to import and sell product from Longhai Desheng Seafood Stuff Co., Ltd. (hereafter, "Longhai"), which is one of the joint venture's largest supplier of crabmeat.[11]  On October 3, 2019, Zeng, Martinez-Malo, Indigo and Ocean Feast removed the case to this Court based upon diversity jurisdiction under 28 U.S.C. § 1332.[12]

On March 6, 2020, Longhai filed a Complaint for Breach of Contract and Claim on Open Account in this Court against Louisiana Newpack and Edward Lee, seeking to recover an outstanding balance of $998,188.03 allegedly owed by Louisiana Newpack for three lots of crabmeat that it purchased from Longhai in November and December of 2018.[13]  On April 20, 2020, Louisiana Newpack and Lee filed a Motion to Consolidate the two cases.[14]  The Court granted the motion, and the cases were consolidated on May 29, 2020.[15]

On March 16, 2020, Louisiana Newpack sought leave to file an amended complaint to assert additional claims against Indigo and Martinez-Malo, and to assert claims against Oceana Seafood Partners, LLC ("Oceana Seafood"), an entity

---

[10] R. Doc. 1-1 at pp. 3-13.
[11] *Id*. at pp. 4-5.
[12] R. Doc. 1.
[13] R. Doc. 1 in Civ. A. No. 20-782-WBV-KWR, *Longhai Desheng Seafood Stuff Co. Ltd. v. Louisiana Newpack Shrimp Company, Inc., et al*.
[14] R. Doc. 16 in Civ. A. No. 20-782-WBV-KWR, *Longhai Desheng Seafood Stuff Co. Ltd. v. Louisiana Newpack Shrimp Company, Inc., et al*.
[15] R. Doc. 54.

owned by Martinez-Malo.[16]  The Court granted the motion, and Louisiana Newpack's First Amended Complaint for Declaratory Judgment, Suit on Open Account, and Damages (the "Amended Complaint") was filed into the record on March 26, 2020.[17]

On April 9, 2020, Ocean Feast, Indigo, Zeng and Martinez-Malo (collectively, "Defendants"), filed the instant Motion to Dismiss, asserting that all but one of Louisiana Newpack's claims (Count 12) fail to state a claim under Federal Rule of Civil Procedure 12(b)(6). [18]   Defendants assert that virtually all of Louisiana Newpack's claims are predicated on a fabricated breach of a non-existent exclusivity requirement in the Joint Venture Agreement.  Defendants argue that because there was no exclusivity provision or non-compete obligation, there can be no breach or other violation, and that Louisiana Newpack's claims against them should be dismissed.  Louisiana Newpack opposes the Motion, asserting that it has alleged sufficient facts that, if accepted as true, establish viable claims against Defendants that are plausible on their face.[19]  In their Reply brief, Defendants maintain that the parties never agreed to exclusivity and that dismissal is warranted.[20]

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a defendant can seek dismissal of a complaint, or any part of it, for failure to state a claim upon which relief may be granted.[21]  To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain

---

[16] R. Doc. 22 at p. 2.
[17] R. Docs. 22 & 29.
[18] R. Doc. 33.
[19] R. Doc. 37 at p. 9.
[20] R. Doc. 40.
[21] Fed. R. Civ. P. 12(b)(6).

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[22]   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[23]   "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."[24]

A court must accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.[25]   The Court, however, is not bound to accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions. [26] "Dismissal is appropriate when the complaint on its face shows a bar to relief."[27] Nonetheless, the Fifth Circuit has held that a motion to dismiss under Rule 12(b)(6) is generally disfavored and is rarely granted.[28]   In deciding a Rule 12(b)(6) motion to dismiss, a court is generally prohibited from considering information outside the pleadings, but may consider documents outside of the complaint when they are: (1) attached to the motion; (2) referenced in the complaint; and (3) central to the

---

[22] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

[23] *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Ashcroft*, 556 U.S. at 678, 129 S.Ct. at 1949) (quotation marks omitted).

[24] *Iqbal*, 556 U.S. at 679, 129 S.Ct. at 1949 (quotation omitted).

[25] *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)).

[26] *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

[27] *Cutrer v. McMillan*, 308 Fed.Appx. 819, 820 (5th Cir. 2009) (quotation and internal quotation marks omitted).

[28] *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)); *Manguno v. Prudential Property and Casualty Ins. Co.*, 276 F.3d 720, 725 (5th Cir. 2002).

plaintiff's claims.[29]  The Court can also take judicial notice of matters that are of public record, including pleadings that have been filed in a federal or state court.[30]

The Court now turns to the sufficiency of each cause of action at issue in Defendants' Motion.

### III.   ANALYSIS

### A. Louisiana Newpack's Breach of Contract Claims (Counts One, Two, Three and Six).

#### 1. *Counts One, Two and Six*

Louisiana Newpack asserts various breach of contract claims against Defendants in Counts One, Two, and Six of the Amended Complaint.  In Counts One and Two, Louisiana Newpack alleges that the joint venture partners "agreed both orally and in writing as to the exclusive nature of the Joint Venture."[31]  Louisiana Newpack alleges in Count One that Ocean Feast and Indigo breached the Joint Venture Agreement by procuring, importing and selling product separate and apart from the joint venture for their own personal economic benefit, effectively cutting Louisiana Newpack out.[32]  In Count Two, Louisiana Newpack alleges that Indigo and Martinez-Malo breached the Joint Venture Agreement by forming Oceana Seafood to market, sell and advertise seafood products under the OCEANA brand and compete with Louisiana Newpack and the joint venture.[33]  In Count Six, which is styled as

---

[29] *Maloney Gaming Mgmt., LLC v. St. Tammany Parish*, 456 Fed.Appx. 336, 340-41 (5th Cir. 2011).
[30] *In re American Intern. Refinery*, 402 B.R. 728, 749 (W.D. La. 2008) (citing *Cisco Systems, Inc. v. Alcatel USA, Inc.,* 301 F. Supp. 2d 599, 602 n.3 (E.D. Tex. 2004).
[31] R. Doc. 29 at ¶¶ 41 & 54.
[32] *Id*. at ¶ 43.
[33] *Id*. at ¶ 55.

"Breach of Contract," Louisiana Newpack alleges that Indigo and Ocean Feast breached their duty of good faith and fair dealing by procuring, importing and selling product without Louisiana Newpack's knowledge or permission, completely circumventing the joint venture.[34]   Louisiana Newpack alleges in Count Six that Indigo further breached its duty of good faith and fair dealing by: (1) forming Oceana Seafood to market, sell and advertise seafood product under the OCEANA brand and to compete with Louisiana Newpack and the joint venture; and (2) assigning the OCEANA brand to Oceana Seafood without the knowledge or consent of Louisiana Newpack or the joint venture.[35]

Defendants first argue that Louisiana Newpack should be barred from bringing any breach of contract claims because Louisiana Newpack initially breached the Joint Venture Agreement by failing to supply letters of credit and by failing to pay the joint venture's suppliers pursuant to the Joint Venture Agreement.[36] Defendants further assert that Counts One, Two and Six are predicated upon the existence of an exclusivity obligation or a non-compete clause in the Joint Venture Agreement that does not exist.[37]   Defendants emphasize that the Joint Venture Agreement and the addendum thereto are both devoid of any exclusivity provision, which demonstrates the parties' intent on the subject of non-exclusivity.   Defendants assert that contract interpretation is based upon the intent of the parties, and that courts will not read an exclusivity or non-compete provision into a contract where one

---

[34] *Id*. at ¶ 85.
[35] *Id*. at ¶¶ 86 & 87.
[36] R. Doc. 33-1 at p. 8.
[37] R. Doc. 33-1 at p. 9 (*citing* R. Doc. 29 at ¶¶ 17, 41, 54, 85).

does not exist on its face.[38]  Defendants also point out that Ocean Feast, Indigo and Louisiana Newpack operated other seafood businesses prior to creating the joint venture, which Louisiana Newpack continues to operate, and assert that the joint venture merely added a seafood procurement and sale venture to their existing businesses.[39]

Regarding Counts One and Two, Defendants assert that Louisiana Newpack has failed to state a claim for breach of contract against Indigo and Martinez-Malo because the Joint Venture Agreement does not limit Indigo to selling product only on behalf of the joint venture.[40]  Defendants similarly claim that Count One fails to state a claim against Ocean Feast because it does not allege that Ocean Feast sold any product at all.  As to Count Six, Defendants maintain that Ocean Feast and Indigo are not bound by any exclusivity agreement and, therefore, it was not bad faith to sell product outside of the joint venture.[41]

Louisiana Newpack argues that Defendants' assertion that Louisiana Newpack breached the Joint Venture Agreement is a defense, and whether a party committed a material breach of contract is an issue of fact that cannot be resolved on the pleadings.[42]  Responding to Defendants' assertion regarding the lack of an exclusivity provision, Louisiana Newpack asserts that the fiduciary obligations of joint venture partners "By their very nature . . . create 'exclusivity.'"[43]  Louisiana

---

[38] R. Doc. 33-1 at pp. 9-10.
[39] *Id*. at p. 10.
[40] *Id*.
[41] *Id*.
[42] R. Doc. 37 at p. 11 (citations omitted).
[43] *Id*. at p. 12; *See*, *Id*. at p. 8.

Newpack further asserts that the breach of contract claims alleged in Counts One, Two and Six are not premised on any obligation of exclusivity. Louisiana Newpack contends that the factual allegations, when taken as true, establish that Defendants breached the Joint Venture Agreement and their implied obligations of loyalty, good faith, fairness and honesty by acting in a manner that was prejudicial to the joint venture and to Louisiana Newpack.[44]

In response, Defendants maintain that the parties did not agree to exclusivity and that exclusivity should not be inferred by the Court. Defendants point out that the parties agreed to form a limited-purpose joint venture, not a general partnership, and they each maintained the freedom to transact business beyond the joint venture.[45] Defendants claim that, had the parties intended that none could sell seafood outside of the joint venture, they would have written such a provision into the Joint Venture Agreement or added it as an amendment. Defendants contend that the parties did neither because they never intended for or agreed to that limitation. Defendants maintain that Counts One, Two and Six fail because exclusivity is the foundation for the breach of contract claims in Counts One and Two, and a necessary predicate to the alleged breach of fiduciary duty in Count Six, and no exclusivity provision exists in the Joint Venture Agreement.[46]

As an initial matter, the Court finds that, in determining whether to grant Defendants' Motion to Dismiss, the Court can consider matters outside of the

---

[44] *Id*. at p. 12.
[45] R. Doc. 40 at pp. 4-5.
[46] *Id*. at p. 5.

pleadings, namely the Joint Venture Agreement, because  it was attached as an exhibit to and referenced in Louisiana Newpack's Amended Complaint,[47] and because it is central to Louisiana Newpack's claims.[48]  The Court further finds that, because Defendants invoked the Court's diversity jurisdiction under 28 U.S.C. § 1332, Louisiana substantive law applies, including its principles of contract interpretation. [49]  "In Louisiana, a breach-of-contract claim has three 'essential' elements: '(1) the obligor's undertaking an obligation to perform, (2) the obligor failed to perform the obligation (the breach), and (3) the failure to perform resulted in damages to the obligee.'"[50]  According to the Fifth Circuit, the first two elements – obligation and breach – involve issues of contractual interpretation as a matter of law and questions of fact regarding whether the actions of the parties actually constituted the alleged breach under the applicable contractual terms, while the third element – damages – is a question of fact.[51]

Under the Louisiana Civil Code, "Interpretation of a contract is the determination of the common intent of the parties."[52]  "The words of a contract "are to be construed using their plain, ordinary and generally prevailing meaning, unless

---

[47] *See*, R. Docs. 29 & 29-1.

[48] *See*, *Maloney Gaming Mgmt., LLC v. St. Tammany Parish*, 456 Fed.Appx. 336, 340-41 (5th Cir. 2011).

[49] *Bayou Steel Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 642 F.3d 506, 509 (5th Cir. 2011); *Wiley v. State Farm Fire & Cas. Co.* 585 F.3d 206, 210 (5th Cir. 2009).

[50] *IberiaBank v. Broussard*, 907 F.3d 826, 835 (5th Cir. 2018) (quoting *Favrot v. Favrot*, 2010-0986 (La. App. 4 Cir. 2/9/11), 68 So.3d 1099, 1108).

[51] *IberiaBank*, 907 F.3d at 835 (quotations omitted).

[52] La. Civ. Code art. 204; *See*, *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 181 (5th Cir. 2007) (*quoting* La. Civ. Code art. 2045).

the words have acquired a technical meaning."[53]  "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."[54]  Whether contract language is clear or ambiguous is a question of law."[55]  A contract is ambiguous "when it is uncertain as to the parties' intentions" and when it is susceptible to more than one reasonable meaning under the circumstances and applicable rules of construction.[56]

Here, Louisiana Newpack alleges that Defendants breached the Joint Venture Agreement by procuring, marketing and selling seafood outside of the joint venture. Applying the above principals, the Court finds that the words of the Joint Venture Agreement are clear and explicit regarding the non-exclusive nature of the joint venture.  The Agreement provides the following:

> The purpose of this Joint Venture is to memorialize a working memorandum between 3 cooperating parties for their mutual economic benefits.  The Joint Venture as written herein outlines the functions of each party with respect to the financing, procurement and selling of mutually agreed seafood products from previously approved high volume seafood manufactures [sic] from around the Globe [sic].[57]

The Joint Venture Agreement further specifies that, "Any modifications to the Joint Venture Agreement must be of mutual equal accord, in writing and attached hereto as an addendum."[58]  Neither the Agreement nor the "AMMENDMENT [sic] PAGE" attached thereto contain an exclusivity provision or non-compete clause.  Although

---

[53] *Guidry*, 512 F.3d at 181 (quoting *Cadwallader v. Allstate Ins. Co.*, 2002-1637 (La. 6/27/03), 848 So.2d 577, 580); *See*, La. Civ. Code art. 2047.
[54] La. Civ. Code art. 2046.
[55] *Guidry*, 512 F.3d at 181 (citing *Cadwallader*, 2002-1637, 848 So.2d at 580).
[56] *Guidry*, 512 F.3d at 181 (quoting *Lloyds of London v. Transcon. Gas Pipe Line Corp.*, 101 F.3d 425, 429 (5th Cir. 1996)).
[57] R. Doc. 29-1 at p. 1.
[58] *Id*. at p. 3.

Louisiana Newpack alleges in the Amended Complaint that, "the Joint Venture partners agreed both orally and in writing as to the exclusive nature of the Joint Venture," the Amended Complaint is devoid of any factual allegations to support this assertion.[59]   More importantly, however, the Joint Venture Agreement clearly and explicitly states that any modifications thereto must be in writing and attached to the Joint Venture Agreement as an addendum, and further includes two written amendments.   As Defendants point out, there is no addendum addressing the exclusivity of the joint venture and Louisiana Newpack has failed to point the Court to any written agreement as to the exclusive nature of the joint venture.   In its Opposition brief, Louisiana Newpack urges the Court to find that the fiduciary obligations of the joint venturers, by their very nature, create exclusivity.   The Court rejects this request, as Louisiana Newpack cites no legal authority for this position and the Court has found none.   Louisiana Newpack also asserts that it has alleged that "the joint venture members agreed both orally and in writing as to the ***exclusive nature*** of the joint venture, specifically agreeing that no side deals, 'commissions or kickbacks' would take place."[60]   It then claims that this factual allegation is supported by "concrete, documentary evidence that Defendants intended for the Joint Venture to be exclusive and that the Defendants agreed not to engage in side dealing or accept commissions or kickbacks."[61]   No such concrete, documentary evidence is provided,

---

[59] R. Doc. 29 at ¶¶ 17, 41, 54.
[60] R. Doc. 37 at p. 11 (*quoting* R. Doc. 29 at ¶ 17) (emphasis added by Louisiana Newpack Shrimp).
[61] R. Doc. 37 at p. 11.

either in the Amended Complaint or in Louisiana Newpack's Opposition brief and Plaintiff fails to attribute the quoted language to any source.

Based on the language of the Joint Venture Agreement, the Court finds that Louisiana Newpack, Indigo and Ocean Feast created a joint venture for the limited purpose of working together to finance, procure and sell seafood for the mutual economic benefit of the three entities. Nothing in the Joint Venture Agreement states that any party to the Agreement is precluded from financing, procuring or selling seafood outside of the joint venture. The written amendments to the Joint Venture Agreement likewise do not preclude the parties from financing, procuring or selling seafood outside of the joint venture. As such, Defendants' actions cannot constitute a breach of a non-existent exclusivity provision. The Court therefore rejects Louisiana Newpack's contention that Counts One, Two, and Six "are not premised on any obligation of exclusivity," which is clearly contradicted by the allegations in the Amended Complaint.[62] Because the Joint Venture Agreement is devoid of any exclusivity provision, the Court finds that Louisiana Newpack has failed to state a claim for breach of contract in Counts One, Two and Six of the Amended Complaint, and those counts must be dismissed.

Count Six also lacks facial plausibility to the extent that Louisiana Newpack asserts a breach of contract claim against Indigo and Ocean Feast for breaching their obligations of good faith and fair dealing. The Court finds the claim is not based on a breach of the Joint Venture Agreement, but instead upon the alleged breach of the

---

[62] R. Doc. 37 at p. 12. *See*, R. Doc. 29 at ¶¶ 17, 41, 43, 54, 85.

fiduciary duties owed by Indigo and Ocean Feast, as joint venturers, to Louisiana Newpack and to the joint venture, a claim that is already asserted in Count Five of the Amended Complaint, and addressed further during an analysis of that count.[63] Accordingly, the Court finds that Count Six fails to state a claim for breach of contract and must be dismissed.

### 2. *Count Three*

In Count Three of the Amended Complaint, Louisiana Newpack asserts that Indigo breached the Joint Venture Agreement by failing to sell all inventory "within 90 days of the products landed [sic] date in a US warehouse fully cleared for commerce."[64]   Louisiana Newpack alleges that the excess inventory is not for a designated program or contract business requiring the joint venture to hold the inventory beyond 90 days.[65]

Defendants assert that Count Three must be dismissed because it ignores Amendment 2 to the Joint Venture Agreement, which provides that:

> Any inventory that is held beyond 90 days from receipt and USFDA release that is designed for a designated program or contract business that requires the Joint Venture to hold inventory beyond 90 days to service the account is hereby exempt from this clause.   Example: Inventory necessary to supply Outback Steak Houses or similar customers.[66]

Defendants claim that Louisiana Newpack's Amended Complaint is deficient because it fails to allege how the unsold inventory complained of does not fall within the ambit

---

[63] R. Doc. 29 at ¶¶ 68-79.
[64] *Id.*at ¶ 61.
[65] *Id.* at ¶ 59.
[66] R. Doc. 33-1 at pp. 10-11 (*quoting* R. Doc. 29-1 at p. 4).

of this exception and relies instead on a conclusory allegation that it does not.[67] Defendants note that Louisiana Newpack knows that the inventory was purchased for such programs, as the joint venturers agreed to buy enough inventory to satisfy 12 months of demand in late 2018, but Defendants provide no further information to support this assertion.[68]

Louisiana Newpack asserts that Defendants failed to make any showing that the inventory at issue fits within the parameters of Amendment 2, but claims that such a showing would only create a factual dispute that could not be resolved at the Rule 12(b) motion stage.[69]   Louisiana Newpack contends that Defendants' unsupported, speculative assumption that all of the excess inventory at issue is covered by Amendment 2 does not warrant dismissal of the claim, and that Defendants' reliance on Amendment 2 is an affirmative defense, which cannot be resolved at the Rule 12(b)(6) stage.[70]  Louisiana Newpack also alleges that it has requested "on no less than 10 occasions" that Indigo provide documentation that may support its contention that any inventory is devoted to a designated program or contract requiring it to be held beyond 90 days and Indigo has failed to do so.[71] Louisiana Newpack claims that, accepting its allegations as true, it has stated a claim for breach of contract.

---

[67] R. Doc. 33-1 at p. 11.
[68] *Id*. at n.6.
[69] R. Doc. 37 at p. 13.
[70] *Id*. at pp. 13-14 (citations omitted).
[71] *Id*.

In response, Defendants argue that it is Louisiana Newpack, not Defendants, who must properly plead a cause of action for breach of contract and to satisfy Amendment 2 of the Joint Venture Agreement. [72]   Defendants maintain that Louisiana Newpack's allegations are insufficient to state a cause of action for breach of contract because they offer no factual basis for ignoring the clear provisions of Amendment 2.[73]

Accepting all well-pleaded facts in the Amended Complaint as true and viewing them in the light most favorable to Louisiana Newpack, the Court finds that Louisiana Newpack has alleged sufficient facts to state a claim for breach of contract against Indigo in Count Three.  The parties agree that the Joint Venture Agreement requires Indigo to sell inventory meeting certain criteria "within 90 days of the products landed [sic] date in a US warehouse fully cleared for commerce."[74]   The parties also agree that Amendment 2 to the Joint Venture Agreement exempts certain inventory from that requirement when the inventory "is for a designated program or contract business that requires the Joint Venture to hold the inventory beyond 90 days to service the account . . . ."[75]   Thus, the real dispute between the parties is whether the excess inventory at issue is subject to the exemption.  That question requires a factual determination and, therefore, is not properly before the Court on a Rule 12(b)(6) motion.  The Court further finds that the Amended Complaint contains sufficient facts that, if accepted as true, states a claim that is

---

[72] R. Doc. 40 at p. 5.
[73] *Id*. at p. 6.
[74] R. Doc. 29-1 at p. 1.
[75] *Id*. at p. 4.

plausible on its face.[76]  Louisiana Newpack has alleged that Indigo failed to sell certain inventory within the 90-day timeline imposed by the Joint Venture Agreement, and has alleged that the inventory does not fall under the exception set forth in Amendment 2 to the Agreement.  Viewing these facts in the light most favorable to Louisiana Newpack, the Court finds that Count Three has facial plausibility.  Accordingly, the Motion is denied to the extent that Defendants seek dismissal of the breach of contract claim alleged in Count Three.

### B. Louisiana Newpack's Declaratory Judgment Claim (Count Four).

In Count Four of the Amended Complaint, Louisiana Newpack asserts that it entered the joint venture with Indigo and Ocean Feast, effective March 15, 2017, as memorialized in the Joint Venture Agreement.[77]  Louisiana Newpack claims that under the terms of the Joint Venture Agreement, the joint venture automatically renewed for an additional year after the expiration of the initial two-year term.[78]  Louisiana Newpack then seeks a declaration that the joint venture and the Joint Venture Agreement are terminated due to the material breaches by Ocean Feast and Indigo, as set forth in the Amended Complaint.[79]

Defendants assert that Count Four should be dismissed because they will execute a consent judgment stating that the joint venture is terminated when the joint venture's affairs are wound down, *i.e.*, when Louisiana Newpack satisfies the

---

[76] *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (internal quotation marks omitted).
[77] R. Doc. 29 at ¶ 64.
[78] *Id*. at ¶¶ 64-65 (*citing* R. Doc. 29-1).
[79] R. Doc. 29 at ¶¶ 66-67.

unpaid creditors, sells the joint venture's inventory and disburses the joint venture's funds.[80]  As such, Defendants claim there is no live controversy with respect to Count Four.

Louisiana Newpack disagrees, asserting that it seeks a declaratory judgment that the Joint Venture Agreement has already been terminated as a result of the material breaches by Defendants, which is pertinent to the issue of damages flowing from that termination.[81]  Louisiana Newpack contends that Defendants' argument regarding a live controversy fails on its face, since Defendants contest that the Agreement terminated when they breached it.  Louisiana Newpack argues that by definition, this is a live controversy that entitles it to a declaratory judgment.[82]

In reply, Defendants argue that Louisiana Newpack's position misses the point that a declaratory judgment is a remedy, not an independent cause of action.[83]  Defendants agree with Louisiana Newpack that the joint venture is terminated, but claim that it terminated due to Louisiana Newpack's breaches rather than any breach by Defendants.[84]

The Declaratory Judgment Act provides that, "In a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether

---

[80] R. Doc. 33-1 at p. 11.

[81] R. Doc. 37 at p. 15.

[82] *Id*. (citing *City of Dallas v. Delta Air Lines, Inc.*, 847 F.3d 279, 292 (5th Cir. 2017) (Jones, J., dissenting)).

[83] R. Doc. 40 at p. 6 (citing *Seibert v. Baptist*, 594 F.2d 423, 428 (5th Cir.), *reversed and remanded on other grounds on reh'g*, 599 F.2d 743 (5th Cir. 1979); *Fisher v. Beers*, Civ. A. No. 13-6632, 2014 WL 3497572, at *1 (E.D. La. July 14, 2014)).

[84] R. Doc. 40 at p. 6.

or not further relief is or could be sought."[85]  "Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants."[86]  In *Fisher v. Beers*, this Court held that, "a declaratory judgment is not a substantive cause of action; it is a remedy available to a litigant who can point to an existing right that the Court has jurisdiction to enforce."[87]  Thus, "the viability of a declaratory judgment action is necessarily tethered to the underlying causes of action in the lawsuit."[88]  This Court recognized in *Fisher* that, "Numerous courts, including the Court in *Scritchfield*, have declined to entertain claims for declaratory relief when '[p]laintiffs would get nothing from a declaratory judgment that they would not get from prevailing on their breach of contract claims.'"[89]

Here, Defendants have not shown that they are entitled to dismissal under Rule 12(b)(6) of Louisiana Newpack's claim for declaratory judgment.  The Court has determined that Louisiana Newpack has stated a claim for breach of contract against Indigo in Count Three of the Amended Complaint, thus, there is a live controversy between the parties regarding whether Indigo breached the Joint Venture Agreement.  Defendants fail to argue why the breach of contract claims, including the claim in Count Three, cannot anchor the declaratory relief sought by Louisiana

---

[85] 28 U.S.C. § 2201(a).

[86] *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286, 115 S.Ct. 2137, 2142, 132 L.Ed.2d 214 (1995).

[87] Civ. A. No. 13-6632, 2014 WL 3497572, at *4 (E.D. La. July 14, 2014); *See, Siboney Contracting Co. v. Berkley Insur. Co.*, Civ. A. No. 17-9681, 2018 WL 1123624, at *3 (E.D. La. Feb. 28, 2018) (quoting *Fisher, supra*).

[88] *Collins v. Bank of America*, Civ. A. No. 3:11-cv-01120-P, 2012 WL 13027435, at *10 (N.D. Tex. Dec. 19, 2012) (citations omitted).

[89] *Fisher*, Civ. A. No. 13-6632, 2014 WL 349757 at *4 (quoting *Scritchfield v. Mutual of Omaha Insur. Co.*, 341 F. Supp. 2d 675 (E.D. Tex. 2004)) (citing authority).

Newpack.[90]  Defendants have also not argued, nor shown, that Louisiana Newpack's declaratory judgment claim is duplicative or redundant of its breach of contract claims, as was the case in *Fisher* and the cases cited therein.[91]  Accordingly, the Motion is denied to the extent that Defendants seek dismissal of Count Four of the Amended Complaint, which seeks declaratory relief.

### C. Louisiana Newpack's Claim for Breach of Fiduciary Duties (Count Five).

Louisiana Newpack alleges in Count Five of the Amended Complaint that Ocean Feast and Indigo breached their fiduciary duties of loyalty and good faith owed to it and to the joint venture when they procured, imported, and sold product separately from the joint venture, effectively cutting Louisiana Newpack out of the deal.[92]  Louisiana Newpack alleges that Indigo further breached its fiduciary obligations owed to it and to the joint venture when Indigo purported to assign the OCEANA brand to Oceana Seafood without the knowledge or consent of Louisiana Newpack or the joint venture.[93]

Defendants argue that Count Five fails to state a claim because it rests on the premise that Indigo and Ocean Feast were prohibited from procuring, marketing, and selling products outside of the joint venture and, as previously argued, no exclusivity

---

[90] *See, Collins*, Civ. A. No. 3:11-cv-01120-P, 2012 WL 13027435, at *10.

[91] Civ. A. No. 13-6632, 2014 WL 349757, at *5 ("Accordingly, the Court dismisses plaintiff's claim for declaratory relief, not for lack of jurisdiction, but because it is redundant."); *See, Scritchfield*, 341 F. Supp. 2d at 682; *Gloston v. Department of Homeland Sec.*, Civ. A. No. 13-6471, 2014 WL 1660630, at *1 (E.D. La. April 25, 2014); *Phillips v. State Farm Fire & Cas. Co.*, Civ. A. No. 13-5225, 2014 WL 295140, at *2 (E.D. La. Jan. 27, 2014); *Kougl v. Xspedius Management Co. of Dallas/Fort Worth, LLC*, Civ. A. No. 3:04CV2518-D, 2005 WL 1421446, at *4 (N.D. Tex. June 1, 2005).

[92] R. Doc. 29 at ¶¶ 72, 77.

[93] *Id*. at ¶ 78.

provision exists.[94]  Defendants assert that they had no duty to sell product only on behalf of the joint venture and, absent such duty, there can be no breach.  Defendants also claim that Louisiana Newpack failed to allege that their actions were "prompted by fraud, ill will, or sinister motivation," as required to state a cause of action for breach of good faith and fair dealing.[95]

Louisiana Newpack argues that Count Five does not turn on whether the joint venture was exclusive.[96]  Instead, Louisiana Newpack asserts that failing to sell older product on behalf of the joint venture while selling product procured outside of the joint venture, at possibly higher profits, is a classic breach of fiduciary duty.[97] Louisiana Newpack claims that joint venture relationships, like partnerships, involve fiduciary obligations between the members of the joint venture, including obligations of loyalty, good faith, fairness, and honesty in their dealings.[98]  Louisiana Newpack argues that Louisiana courts have recognized that a joint venturer's fiduciary obligations of loyalty, good faith, fairness, and honesty "forbid one co-venturer from acquiring and retaining for himself any private or secret advantage in connection with the common enterprise."[99]  Louisiana Newpack contends that it specifically alleged that Defendants misused the existence of the joint venture and letters of

---

[94] R. Doc. 33-1 at p. 12.
[95] *Id.* at p. 13 (quoting *Commercial Nat'l Bank v. Audubon Meadow Partnership*, 21,634 (La. App. 2 Cir. 8/22/90), 566 So.2d 1136, 1139).
[96] R. Doc. 37 at p. 15.
[97] *Id.* at pp. 15-16.
[98] R. Doc. 37 at p. 16 (citing *Payne v. Forest River, Inc.*, Civ. A. No. 3:13-cv-679-JWD-RLB, 2015 WL 7013506, at *7 (M.D. La. Nov. 12, 2015); *Joyner v. Liprie*, 44,852 (La. App. 2 Cir. 1/29/10), 33 So.3d 242, 252; *Grand Isle Campsites, Inc. v. Cheek*, 262 So.2d 350, 356 (La. 1972)).
[99] R. Doc. 37 at p. 16 (quoting *Brignac v. Barranco*, 2014-1578, p.10 (La. App. 1 Cir. 9/10/15), 182 So.3d 88, 94; *Grand Isle Campsites, Inc.*, 262 So.2d at 356-57) (internal quotation marks omitted).

credit that Louisiana Newpack issued for the benefit of the joint venture to acquire and sell product for their own financial benefit without Louisiana Newpack's knowledge or involvement, and to the prejudice of the joint venture.[100]  As such, Louisiana Newpack maintains that it has stated a claim for breach of fiduciary duties in Count Five of the Amended Complaint.  Defendants do not address Count Five in their Reply brief.[101]

The Court finds that Defendants have failed to show that Count Five fails to state a claim for breach of fiduciary obligations against Indigo and Ocean Feast.  As Louisiana Newpack points out, Louisiana courts have held that joint ventures are generally governed by partnership law and that the relationship between joint venturers, like partners, is fiduciary in character.[102]  "The fiduciary relationship among partners imposes on them the obligation of the utmost good faith, fairness, loyalty and integrity in their dealings with one another with respect to partnership affairs."[103]  "The standard of a fiduciary's duty to his beneficiary, depending on the facts of the case, lies somewhere between simple negligence and willful misconduct or fraud with the intent to deceive.  The actual intent to deceive is not required where one party is placed in such an advantageous position to the other."[104]  Additionally, Louisiana courts have held that the fiduciary duty owed to the joint venture and the

---

[100] R. Doc. 37 at pp. 16-17 (*citing* R. Doc. 29 at ¶¶ 16-30, 68-79).

[101] *See generally*, R. Doc. 40.

[102] *Joyner v. Liprie*, 44,852 (La. App. 2 Cir. 1/29/10), 33 So.3d 242, 251-52 (citing *Riddle v. Simmons*, 40,000 (La. App. 2 Cir. 2/16/06), 922 So.2d 1267); *See, In re: Berranco*, Civ. A. No. 16-326-SDD-RLB, 2016 WL 6211275, at *4 n.29 (M.D. La. Oct. 24, 2016); *Payne v. Forest River, Inc.*, Civ. A. No. 3:13-cv-679-JWD-RLB, 2015 WL 7013506, at *7 (M.D. La. Nov. 12, 2015).

[103] *Joyner*, 44,852 at 17, 33 so.3d at 252 (citing *Barksdale v. Lincoln Builders, Inc.*, 32,857 (La. App. 2 Cir. 6/21/00), 764 So.2d 223).

[104] *Joyner*, 44,852 at 17, 33 So.3d at 252 (citing *Barksdale*, *supra*) (internal citation omitted).

joint venture partners prohibits the joint venture partner from conducting activity for himself or on behalf of a third person that is contrary to his fiduciary duty and is prejudicial to the joint venture.[105]

Here, Louisiana Newpack alleges in Count Five that Indigo and Ocean Feast breached their fiduciary obligations of loyalty and good faith owed to Louisiana Newpack and to the joint venture by procuring, marketing and selling product separate and apart from the joint venture.[106]   In its Opposition brief, Louisiana Newpack refers the Court to earlier allegations in the Amended Complaint, wherein it alleges that Ocean Feast and Indigo conspired to import and sell product from one of the joint venture's largest suppliers, Longhai, separate from the joint venture, "while improperly using and exploiting the joint venture's proprietary business strategies, the relationships resulting therefrom, and the OCEANA brand."[107]   The Court notes that Louisiana Newpack further alleges in the Amended Complaint that, "the acts and omissions of Ocean Fest, Indigo and Oceana Seafood diverted sales away from the Joint Venture, increased the costs of the Joint Venture – which has aging inventory in warehouses that continues to accrue costs and interest – and prevented Louisiana Newpack from remitting payment to the Joint Venture's suppliers."[108]   The Court finds that these allegations are sufficient to state a claim for breach of the fiduciary duties owed by Indigo and Ocean Feast to the joint venture

---

[105] *Brignac v. Barranco*, 2014-1578 (La. App. 1 Cir. 9/10/15), 182 So.3d 88, 95 (quoting *Riddle v. Simmons*, 40,000 (La. App. 2 Cir. 2/16/06), 922 So.2d 1267, 1282 (internal quotation marks omitted).
[106] R. Doc. 29 at ¶¶ 72, 77.
[107] R. Doc. 37 at p. 17, n.33; *See*, R. 29 at ¶ 25.
[108] R. Doc. 29 at ¶ 37.

and to Louisiana Newpack.  The case cited by Defendants for the proposition that Louisiana Newpack must allege "fraud, deception or sinister motive" is distinguishable, as that case concerned an alleged breach of the obligation to perform contracts in good faith.[109]  Additionally, Defendants do not address whether Louisiana Newpack's allegations regarding Indigo's breach of fiduciary duties concerning its assignment of the OCEANA brand fail to state a claim.  As such, the Motion to Dismiss is denied to the extent that Defendants seek dismissal of Count Five of the Amended Complaint.

### D. Louisiana Newpack's Claim Under the Louisiana Unfair Trade Practices Act. La. R.S. 51:1401, *et seq.* (Count Seven).

Louisiana Newpack alleges in Count Seven of the Amended Complaint that "Defendants violated the Louisiana Unfair Trade Practices Act (the "LUTPA")," by engaging in false, misleading and deceptive practices, and by engaging in unlawful competition.[110]  Louisiana Newpack asserts that it was misleading, deceptive and unethical for "Defendants" to procure, import and sell product under the OCEANA brand without the knowledge or permission of Louisiana Newpack.[111]  Louisiana Newpack further alleges that Indigo and Martinez-Malo formed Oceana Seafood to market, sell and advertise seafood products under the OCEANA brand and to compete with Louisiana Newpack and the joint venture.  Louisiana Newpack alleges that Defendants have misappropriated proprietary business strategies and

---

[109] *Commercial Nat. Bank in Shreveport v. Audubon Meadow Partnership*, 566 So.2d 1136, 1139 (La. App. 2 Cir. 8/22/90).
[110] R. Doc. 29 at ¶¶ 90-92.
[111] *Id*. at ¶¶ 95-96.

relationships of the joint venture, and are actively using that information for their sole benefit, which is an unfair method of competition in violation of the LUTPA.[112]

Defendants assert that Louisiana Newpack has failed to state a claim under the LUTPA because its allegations are the type of conclusory allegations that *Twombly* and its progeny prohibit.[113]  Defendants contend that to state a LUTPA claim, a plaintiff must show that the alleged conduct "offends established public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious."[114]  Defendants also claim that the range of prohibited practices under the LUTPA is extremely narrow.[115]  Defendants argue that Louisiana Newpack has failed to specify what Ocean Feast or Indigo did that was immoral, unethical, oppressive, unscrupulous or substantially injurious, and that Louisiana Newpack failed to identify any specific instances of fraud or misrepresentation.  Defendants contend that, without more, their actions are, at most, indistinguishable from a simple breach of contract.  Defendants assert that because their actions constitute appropriate free enterprise transactions, they do not amount to LUTPA violations.[116]

Louisiana Newpack asserts that it has stated a claim under the LUTPA by alleging that Defendants went behind its back and leveraged the Joint Venture Agreement to procure seafood product for their own profit, and sold the product to consumers without Louisiana Newpack's knowledge, input or involvement.[117]

---

[112] *Id*. at ¶ 97.
[113] R. Doc. 33-1 at p. 14.
[114] *Id*. at p. 13 (citing *Cheramie Servs., Inc. v. Shell Deepwater Production, Inc.*, 09-1633, p. 10 (La. 4/23/10), 35 So.3d 1053, 1059).
[115] R. Doc. 33-1 at p. 14 (quoting *Cheramie Servs., Inc.*, 09-1633 at p. 10, 35 So.3d at 1059).
[116] R. Doc. 33-1 at pp. 14-15.
[117] R. Doc. 37 at p. 18 (*citing* R. Doc. 29 at ¶¶ 16-30, 89-100).

Louisiana Newpack argues that Defendants did this while relying on and leveraging the relationships formed through the joint venture and the letters of credit issued by Louisiana Newpack, which allowed Defendants to acquire and sell the product for a profit in competition with the joint venture.  Louisiana Newpack further asserts that Indigo and Martinez-Malo created a shell company, Oceana Seafood, to exploit the OCEANA brand for its own benefit.[118]  Louisiana Newpack claims that these were all immoral, unethical and deceptive acts.

In response, Defendants maintain that the Amended Complaint fails to allege conduct that a court would characterize as immoral, unethical, oppressive, unscrupulous or substantially injurious.[119]  Defendants assert that the conclusory nature of Louisiana Newpack's allegations warrant dismissal of the LUTPA claim.

The parties rely on the same Louisiana Supreme Court case for the position that Louisiana courts determine what constitutes a LUTPA violation on a case-by-case basis.[120]  Louisiana courts have held that, "a practice is unfair when it offends established public policy and when the practice is unethical, oppressive, unscrupulous or substantially injurious."[121]  The Louisiana Supreme Court has held that the range of prohibited practices under the LUTPA is "extremely narrow" because the LUTPA prohibits only fraud, misrepresentation and similar conduct, and

---

[118] R. Doc. 37 at p. 18.

[119] R. Doc. 40 at p. 7 (quoting *Cheramie Servs., Inc. v. Shell Deepwater Production, Inc.*, 2009-1633, p. 10 (La. 4/23/10), 35 So.3d 1053, 1059) (internal quotation marks omitted).

[120] R. Doc. 33-1 at p. 13 (citing *Quality Env't Processes, Inc. v. I.P. Petroleum Co., Inc.*, 2013-1582, p.21 (La. 5/7/14), 144 So.3d 1011, 1025); R. Doc. 37 at p. 18 (citing *Quality Env't Processes, Inc.*, *supra*).

[121] *Mixon v. Iberia Surgical, LLC*, 2006-878, p. 6 (La. App. 3 Cir. 4/18/07), 956 So.2d 76, 80; *See, Tripp v. Pickens*, Civ. A. No. 17-0542, 2018 WL 6072027, at *3 (W.D. La. Nov. 2, 2018) (quoting *Cheramie Servs., Inc.*, 2009-1633, 35 So.3d at 1059).

not mere negligence.[122]  The Louisiana Supreme Court has also clarified that, "[O]nly egregious actions involving elements of fraud, misrepresentation, deception, or other unethical conduct will be sanctioned based on LUTPA."[123]

The Court notes that Louisiana Newpack's LUTPA claim is asserted against "Defendants" *in globo*, without specifying which of the defendants performed the false, misleading, and deceptive practices that purportedly entitle Louisiana Newpack to relief.[124]  Thus, it is unclear to the Court whether these claims are asserted against Ocean Feast, Indigo, Oceana Seafood, Zeng, Martinez-Malo or some combination thereof.  To the extent Louisiana Newpack alleges that Indigo and Ocean Feast violated the LUTPA by merely procuring, marketing and selling seafood outside of the joint venture, the allegations fail to state a claim under the LUTPA. To the extent Louisiana Newpack alleges that Indigo and Martinez-Malo violated the LUTPA by forming Oceana Seafood to market and sell seafood products under the OCEANA brand used by the joint venture and in direct competition with the joint venture, the Court finds that such conduct does not rise to the level of egregious conduct sufficient to state a claim under the LUTPA, as Louisiana Newpack has not alleged actions involving fraud, misrepresentation, deception or other unethical conduct.[125]  The Court reaches the same conclusion regarding Louisiana Newpack's allegation that all of the defendants misappropriated proprietary business strategies

---

[122] *Quality Env't Processes, Inc.*, 2013-1582 at p. 21, 144 So.3d at 1025 (quoting *Cheramie Servs., Inc.*, 09-1633 at p. 11, 35 So.3d at 1059) (internal quotation marks omitted).
[123] *Cheramie Servs., Inc.*, 2009-1633 at p. 12, 35 So.3d at 1060.
[124] *See*, R. Doc. 29 at ¶¶ 90, 92, 95, 97, 98.
[125] *Cheramie Servs., Inc.*, 2009-1633 at p. 12, 35 So.3d at 1060.

and relationships of the joint venture for their sole benefit.[126]  As such, the Court finds that Louisiana Newpack has failed to allege sufficient facts to state a plausible claim under the LUTPA and that Count Seven must, therefore, be dismissed.

### E. Louisiana Newpack's Claim for Tortious Interference with Contract and Tortious Interference With Business Operations (Count Eight).

In Count Eight of the Amended Complaint, Louisiana Newpack alleges that Arthur Zeng, as principal and officer of Ocean Feast, and Jeffrey Martinez-Malo, as the principal and officer of Indigo and Oceana Seafood, intentionally induced or caused Ocean Feast and Indigo to breach their contract with Louisiana Newpack.[127] Louisiana Newpack also alleges that, "the actions of Defendants have interfered, and continue to interfere, with the business of the Joint Venture and Louisiana Newpack, thus damaging the joint venture and Louisiana Newpack."[128]

Defendants assert that a tortious interference with business operations claim requires proof that the defendant's actions did more than adversely affect the plaintiff's business, and requires a plaintiff to show that the defendant actually prevented the plaintiff from dealing with a third party.[129]  Defendants also claim that a plaintiff must prove the defendant was motivated by actual malice.[130]  Defendants assert that Louisiana Newpack has failed to establish tortious interference because

---

[126] R. Doc. 29 at ¶ 97.
[127] *Id.* at ¶¶ 102-105.
[128] *Id.* at ¶ 108.
[129] R. Doc. 33-1 at p. 15 (citing *Bogues v. Louisiana Energy Consultants, Inc.*, 46,434 (La. App.2 Cir. 8/10/11), 71 So.3d 1128; *Junior Money Bags, Ltd. v. Segal*, 970 F.2d 1 (5th Cir. 1992); *Dussouy v. Gulf Coast Investment Corp.*, 660 F.2d 594 (5th Cir. 1981); *Henderson v. Bailey Bark Materials*, 47,946 (La. App. 2 Cir. 4/10/13); 116 So.3d 30).
[130] R. Doc. 33-1 at p. 15.

there are no allegations in the Amended Complaint that Defendants influenced third parties not to do business with Louisiana Newpack.[131]  Defendants also assert that the Amended Complaint merely regurgitates the elements of an intentional interference with contract claim and is devoid of any factual context to support the claim.[132]  Defendants further maintain that there has been no breach of contract by the corporate defendants, and that there can be no claim for tortious interference with contract without a breach of contract.  Defendants also assert that Arthur Zeng is not a principal or officer of Ocean Feast, and that Louisiana Newpack is aware that Jia Zeng is the owner of Ocean Feast, as evidenced by Louisiana Newpack's reliance upon Jia Zeng's Chinese citizenship in its jurisdictional allegations.[133]  As such, Defendants argue Louisiana Newpack has failed to state a claim for tortious interference with a contract or tortious interference with business operations.

Louisiana Newpack asserts that it has alleged sufficient facts to support independent claims that Defendants tortiously interfered with the Joint Venture Agreement and with the business of the joint venture.[134]  According to Louisiana Newpack, to state a claim for tortious interference with contract under Louisiana law, it must establish the following: (1) the existence of a contract or a legally protected interest between the plaintiff and the corporation; (2) the corporate officer's knowledge of the contract; (3) the officer's intentional inducement or causation of the corporation to breach the contract or his intentional rendition of its performance

---

[131] *Id.* at p. 16.
[132] *Id.* at pp. 15-16.
[133] R. Doc. 33-1 at p. 16 (*citing* R. Doc. 33-1 at p. 4, n.3).
[134] R. Doc. 37 at p. 19.

impossible or more burdensome; (4) absence of justification on the part of the officer; (5) damages to plaintiff caused by the breach of contract or difficulty of its performance brought about by the officer.[135]  Louisiana Newpack asserts that it has alleged that Defendants intentionally reached out to the joint venture's primary supplier, purchased product from that supplier without Louisiana Newpack's knowledge, and sold the product for their own benefit.[136]  Louisiana Newpack also claims that Defendants were aware of the joint venture and that the Joint Venture Agreement obligated the parties to act for the "mutual economic benefit" of the joint venture's three members, but that Defendants intentionally breached and interfered with the Joint Venture Agreement and with the joint venture's business.[137]

In response, Defendants assert that Louisiana Newpack is suggesting that the joint venture arose in a vacuum and that no party involved had any independent business relationships or contacts before its existence, a position that is both naïve and untrue.[138]  Nonetheless, Defendants maintain that Louisiana Newpack has failed to allege any facts to suggest that Defendants prevented Louisiana Newpack from dealing with third parties or improperly influenced others not to deal with Louisiana Newpack.[139]  Defendants also maintain that Louisiana Newpack has failed to allege

---

[135] *Id*. at p. 19 (quoting *Beta Tech., Inc. v. State Indus. Prods. Corp.*, Civ. A. No. 06-735-SCR, 2008 WL 4330105, at *1 (M.D. La. Sept. 15, 2008) (citing *9 to 5 Fashions v. Spurney*, 538 So.2d 228, 234 (La. 1989)) (internal quotation marks omitted).
[136] R. Doc. 37 at p. 19 (*citing* R. Doc. 29 at ¶¶ 16-30, 101-110).
[137] R. Doc. 37 at p. 20.
[138] R. Doc. 40 at p. 7.
[139] *Id*.

that Defendants acted with actual malice, which is required for a tortious interference claim.[140]

### 1. Tortious Interference With Contract

As Louisiana Newpack correctly points out, the Louisiana Supreme Court has recognized a narrow cause of action for tortious interference with a contract, which requires proof of the following five elements:

> (1) the existence of a contract or a legally protected interest between the plaintiff and the corporation; (2) the corporate officer's knowledge of the contract; (3) the officer's intentional inducement or causation of the corporation to breach the contract or his intentional rendition of its performance impossible or more burdensome; (4) absence of justification on the part of the officer; [and] (5) causation of damages to the plaintiff by the breach of contract or difficulty of its performance brought about by the officer. [141]

The Court finds that the Amended Complaint fails to state a claim for tortious interference with a contract. Louisiana Newpack has alleged that Zeng and Martinez-Malo knew about the contracts entered into between Louisiana Newpack, Indigo and Ocean Feast, and that they "intentionally induced or caused the other defendant entities to breach the contracts."[142] Louisiana Newpack's claim in this regard is essentially a regurgitation of its breach of contract claim in Count One, which failed to pass muster under Rule 12(b)(6).[143] Further, the Amended Complaint fails to specify what actions by the defendant-entities purportedly constitute a breach

---

[140] R. Doc. 40 at pp. 7-8 (citation omitted).

[141] *9 to 5 Fashions, Inc. v. Spurney*, 538 So.2d 228, 234 (La. 1989).

[142] R. Doc. 29 at ¶¶ 104-105.

[143] *Id.* at ¶¶ 41-51, 145-148.  The Court further finds that the tortious interference with contract claim is repetitive of Louisiana Newpack's veil-piercing claim in Count Thirteen of the Amended Complaint, which, as discussed later in this Order, also cannot survive a Rule 12(b)(6) challenge.

of contract. To the extent Louisiana Newpack is alleging that Zeng and Martino-Malo caused Indigo and Ocean Feast to breach the Joint Venture Agreement by procuring, marketing and selling seafood product outside of the joint venture, the Court has already determined that such allegations are insufficient to show a breach of contract because the Joint Venture Agreement does not contain an exclusivity provision. To the extent Louisiana Newpack is alleging that Martinez-Malo caused Oceana Seafood to breach the Joint Venture Agreement, the claim also fails because Oceana Seafood could not breach a contract to which it is not a party. As such, the allegations in the Amended Complaint are insufficient to state a claim for tortious interference with contract, which claim must be dismissed. The Court, therefore, need not address Defendants' arguments regarding whether Zeng is a corporate officer of Ocean Feast.

### 2. *Tortious Interference With Business Relations*

As explained by our sister court, "To prove tortious interference with business relations, a plaintiff must show that the defendant improperly and maliciously influenced others not to deal with the plaintiff."[144] Louisiana courts, however, view this cause of action with "disfavor" and have limited it by requiring a plaintiff to show that the defendant acted with actual malice.[145] In fact, in a separate decision issued in the same case cited by Louisiana Newpack,[146] *Beta Technology, Inc. v. State Industrial Products Corporation*, the Middle District of Louisiana similarly held that,

---

[144] *K&F Restaurant Holdings, Ltd. v. Rouse*, Civ. A. No. 16-293-JWD-EWD, 2018 WL 3553422, at *15 (M.D. La. July 24, 2018) (citation omitted).

[145] *Id.* (citing *Brown v. Romero*, 05-1016 (La. App. 3 Cir. 2/1/06), 922 So.2d 742, 747; *JCD Marketing, Co. v. Bass Hotels and Resorts, Inc.*, 001-1096 (La. App. 4 Cir. 3/6/02), 812 so.2d 834, 841).

[146] *See*, R. Doc. 37 at p. 19 (citing *Beta Tech., Inc. v. State Indus. Prods. Corp.*, Civ. A. No. 06-735-SCR, 2008 WL 4330105, at *1 (M.D. La. Sept. 15, 2008)).

"To prove the tortious interference with business relations claim, the plaintiff must show by a preponderance of the evidence that the defendants maliciously interfered with their business relations."[147]  Further, it is not enough to allege that a defendant's actions affected plaintiff's business interests; the plaintiff must allege that the defendant actually prevented the plaintiff from dealing with a third party.[148]

The Court finds that the Amended Complaint fails to state a claim for tortious interference with business relations because it contains no allegations that the actions of Zeng and Martinez-Malo actually prevented Louisiana Newpack from dealing with a third party, as required under Louisiana jurisprudence.  The Amended Complaint is also devoid of any allegations that Zeng or Martinez-Malo acted with actual malice.[149]  Accordingly, the Amended Complaint fails to state a claim for tortious interference with business relations.

Based on the foregoing, Louisiana Newpack's claim for tortious interference with contract and tortious interference with business operations asserted in Count Eight of the Amended Complaint must be dismissed.

### F.  Louisiana Newpack's Claim for Unjust Enrichment (Count Nine).

Louisiana Newpack alleges a claim for unjust enrichment in Count Nine of the Amended Complaint based upon Defendants' actions in procuring, marketing and selling seafood product separate and apart from the joint venture.[150]  Louisiana

---

[147] Civ. A. No. 06-735-SCR, 2008 WL 11351462, at *3 (M.D. La. Sept. 24, 2008).
[148] *K&F Restaurant Holdings, Ltd.*, Civ. A. No. 16-293-JWD-EWD, 2018 WL 3553422 at *15 (citing *Bogues v. Louisiana Energy Consultants, Inc.*, 46,434 (La. App. 2 Cir. 8/10/11), 71 So.3d 1128, 1135).
[149] *Bogues*, 46,434 at p. 11, 71 So.3d at 1135 (quoting *JCD Mktg. Co. v. Bass Hotels and Resorts, Inc.*, 01-1096 (La. App. 4 Cir. 3/6/02), 812 So.2d 834) (internal quotation marks omitted); *Henderson*, 47,946 at p. 9, 116 So.3d at 37.
[150] R. Doc. 29 at ¶¶ 112, 115, 117.

Newpack Shrimp claims that it was impoverished by the Defendants, who purchased (and sold) crabmeat from the joint venture's largest supplier, Longhai, and allowed Oceana Seafood to improperly use and benefit from the OCEANA brand in the operation of its business, all without the permission of Louisiana Newpack or the joint venture.  Louisiana Newpack alleges that Defendants' actions increased their profit margins, stole opportunities from the joint venture and diverted sales away from the joint venture, all of which deprived Louisiana Newpack of its profit and increased the costs of the joint venture, which has aging inventory in warehouses that continues to accrue costs and interests.[151]

Defendants assert that Louisiana Newpack has failed to state a claim for unjust enrichment because that is an applicable remedy only when there is no other remedy available.[152]  Defendants point out that, among the 14 counts in the Amended Complaint, Louisiana Newpack alleges that Defendants breached the terms of the Joint Venture Agreement and that it sustained damages as a result of the breach.  Although Defendants dispute that there was a breach, they argue that the availability of a claim for breach of contract precludes a claim of unjust enrichment here, even when pled in the alternative.[153]  As such, Defendants contend Louisiana Newpack's unjust enrichment claim should be dismissed.

---

[151] *Id*. at ¶ 117.

[152] R. Doc. 33-1 at p. 16 (*citing* La. Civ. Code art. 2298; *Walters v. MedSouth Record Mgmt., LLC*, 10-0351 (La. 6/4/10), 38 So.3d 245, 246).

[153] R. Doc. 33-1 at p. 17 (citing *Reel Pipe, LLC v. USA Comserv, Inc.*, Civ. A. No. 18-6646, 2019 WL 127055, at *4 (E.D. La. Jan. 8, 2019); *Andretti Sports Mktg. Louisiana, LLC v. NOLA Motorsports Host Comm., Inc.*, Civ. A. No. 15-2167, 2015 WL 13540096, at *8 (E.D. La. Dec. 2, 2015); *Ferrara Fire Apparatus, Inc. v. JLG Indus., Inc.*, 581 Fed.Appx. 440, 444 (5th Cir. 2014)).

Louisiana Newpack asserts that it has alleged unjust enrichment in the alternative, and that it recognizes that the claim is only available to the extent there is no other remedy available at law.[154]  Louisiana Newpack argues that courts in this district have allowed claims for unjust enrichment to be pleaded in the alternative, at least until the court can determine whether the plaintiff has other remedies available.[155]  Louisiana Newpack argues that Defendants cannot have it both ways – they cannot argue that all of the other 13 counts in the Amended Complaint should be dismissed while also asserting that Louisiana Newpack cannot pursue its unjust enrichment claim because it has other available remedies.[156]  In reply, Defendants maintain that courts within this Circuit have routinely held that the availability of other claims, such as breach of contract, precludes a claim of unjust enrichment, even when pled in the alternative.[157]

The Court first notes that Louisiana Newpack asserts the unjust enrichment claim against "Defendants" *in globo*, failing to specify which of the defendants were purportedly unjustly enriched at the expense of Louisiana Newpack and the joint venture.[158]  To the extent Louisiana Newpack has asserted the unjust enrichment claim against Defendants, the Court finds that Louisiana Newpack's arguments lack merit.  To state a claim for unjust enrichment under Louisiana law, a plaintiff must

---

[154] R. Doc. 37 at p. 20.
[155] *Id*. (citing *Perez v. Utility Constructors, Inc.*, Civ. A. No. 15-4675, 2016 WL 5930877, at *1-2 (E.D. La. Oct. 12, 2016)).
[156] R. Doc. 37 at p. 20.
[157] R. Doc. 40 at p. 8 (citing *Reel Pipe, LLC*, Civ. A. No. 18-6646, 2019 WL 127055 at *4; *Andretti Sports Mktg. Louisiana, LLC*, Civ. A. No. 15-2167, 2015 WL 13540096 at *8; *Ferrara Fire Apparatus, Inc.*, 581 Fed.Appx. at 444.
[158] *See*, R. Doc. 29 at ¶¶ 112, 115, 117, 118.

allege: (1) an enrichment; (2) an impoverishment; (3) a connection between enrichment and impoverishment; (4) an absence of justification or cause for the enrichment and impoverishment; and (5) there must be no other remedy at law.[159] The Louisiana Supreme has clarified that, "the remedy of unjust enrichment is subsidiary in nature," and "is only applicable to fill a gap in the law where no express remedy is provided."[160]  This Court has repeatedly held that unjust enrichment claims must be dismissed when a plaintiff has other remedies available, including a claim for breach of contract.[161]  This Court has also held that, "Unjust enrichment claims cannot be maintained in the alternative."[162]  Here, as Defendants aptly point out, Louisiana Newpack has alleged several other claims against them, including several breach of contract claims.[163]  Louisiana Newpack plainly asserts in its Opposition brief that its unjust enrichment claim is merely pled in the alternative. Based on the foregoing legal authority, the Court finds that Louisiana Newpack cannot state a claim for unjust enrichment because other remedies are available at law.  As such, Count Nine must be dismissed.

---

[159] *Reel Pipe, LLC*, Civ. A. No. 18-6646, 2019 WL 127055 at *3 (citing *JP Mack Indus. LLC v. Mosaic Fertilizer, LLC*, 970 F.Supp.2d 516, 521 (E.D. La. 2013)); *See*, La. Civ. Code art. 2298.

[160] *Walters v. MedSouth Record Management, LLC*, 2010-0353, at p.2 (La. 6/4/10), 38 So.3d 243, 244 (quotation and internal quotation marks omitted).

[161] *See*, *Reel Pipe, LLC*, Civ. A. No. 18-6646, 2019 WL 127055 at *4; *Perez v. Utility Constructors, Inc.*, Civ. A. No. 15-4675, 2016 WL 5930877, at *2 (E.D. La. Oct. 12, 2016); *Andretti Sports Mktg. Louisiana, LLC*, Civ. A. No. 15-2167, 2015 WL 13540096 at *8.

[162] *United States v. Cytogel Pharma, LLC*, Civ. A. No. 16-13987, 2018 WL 5297753, at *16 (E.D. La. Oct. 25, 2018) (noting that prior cases from other sections of this Court allowing unjust enrichment claims to be pled in the alternative are contrary to holdings of the Louisiana Supreme Court, the Fifth Circuit and this Court in *Andretti Sports Mktg. Louisiana, LLC*).

[163] *See*, R. Doc. 29 at pp. 9-14.

**G. Louisiana Newpack's Claim for Suit on Open Account (Count Ten).**

Louisiana Newpack alleges in Count Ten of the Amended Complaint that under the Joint Venture Agreement, the product is supposed to be sold on a rolling basis within 90 days, and that liquidation occurs every 30 days.[164]  Louisiana Newpack asserts that it incurs costs until the product is sold, including but not limited to, bank interest, insurance, freight, customs broker fees, local drayage and warehousing, which it pays with funds received from product sales.[165]  Louisiana Newpack further alleges that, as of the date it filed this suit, costs in the amount of $418,946 ($209,473 from Ocean Feast and $209,473 from Indigo) were due and owing, and that additional costs have continued to accrue.[166]  Louisiana Newpack asserts that "the foregoing constitutes an 'open account.'"[167]  Louisiana Newpack alleges that under La. R.S. 9:2781, any party that fails to pay on open account within 30 days of written demand is liable for both the open account and reasonable attorney's fees for the collection of the open account.[168]

Defendants assert that Louisiana Newpack has failed to allege an open account claim because, under the Joint Venture Agreement, there may be an open account with respect to the suppliers of the product, or with the joint venture's customers, but not among the parties to the Joint Venture Agreement.[169]  Defendants point out that their obligations under the Joint Venture Agreement include procurement, sales and

---

[164] R. Doc. 29 at ¶ 121 (*citing* R. Doc. 29-1).
[165] R. Doc. 29 at ¶¶ 122-124.
[166] *Id*. at ¶ 125.
[167] *Id*. at ¶ 126.
[168] *Id*. at ¶ 127.
[169] R. Doc. 33-1 at p. 18.

marketing of the product, and that Louisiana Newpack is responsible for approving sales and invoicing customers who purchase product from Indigo.[170]  Defendants assert that there is no continuous line of credit between them and Louisiana Newpack, so there can be no open account.  Defendants further argue that any obligation that Defendants may have to Louisiana Newpack arise under a contract, not an open account.[171]  Defendants claim that Louisiana Newpack never sold goods on credit to Defendants and that Louisiana Newpack may have borrowed funds to pay for the crabmeat, but not from Defendants.[172]  Defendants contend that the Joint Venture Agreement is not an open account because it leaves nothing open; it provides for ongoing dealings, but also strict provisions for the parties' financial obligations. As such, Defendants argue that the claim for suit on open account asserted in Count Ten should be dismissed.

Louisiana Newpack asserts that Defendants are arguing that the contractual relationship between Louisiana Newpack, Indigo and Ocean Feast precludes Louisiana Newpack from asserting a claim for suit on open account.[173]  Louisiana Newpack claims that Louisiana courts have routinely allowed breach of contract claims and claims for suit on open account to be alleged in the alternative.[174] Louisiana Newpack contends that under Louisiana law, the existence of an open

---

[170] *Id.*
[171] *Id.* at pp. 18-19.
[172] *Id.* at p. 19.
[173] R. Doc. 37 at p. 20.
[174] *Id.* (citing *Marin Holdings Int'l, Ltd. v. Frontera Offshore, Inc.*, Civ. A. No. 18-6490, 2019 WL 3306530, at *9-10 (E.D. La. July 23, 2019); *Shamrock Mgmt., LLC v. GOM Fabricators, LLC*, 2019 WL 3025237, at *3, 2018-0491 (La. App. 1 Cir. 7/10/19).

account necessarily requires the existence of an underlying contract.[175]  Louisiana Newpack argues that the Amended Complaint states a plausible claim for relief on open account because as the financier of the joint venture, it extended credit to allow Ocean Feast, as the entity responsible for procurement and quality assurance, to purchase the product.[176]  Louisiana Newpack reiterates that it financed the costs incurred in connection with procuring and storing the product until it was sold, and that it has been unable to pay those costs because there is inventory that remains unsold.[177]  Louisiana Newpack blames Defendants, asserting that they have failed to sell the product pursuant to their obligations under the Joint Venture Agreement, opting instead to procure and sell other product for their own benefit.[178]  As such, Louisiana Newpack asserts that it has alleged sufficient facts to state a plausible claim that an open account existed between it and Defendants.

In response, Defendants assert that the relationship between the parties in this case "simply does not constitute an open account."[179]  Defendants point out that Louisiana Newpack acknowledges that one element of an open account claim requires that a line of credit was extended by one party to the other.[180]  Defendants assert that Louisiana Newpack attempts to sidestep the undisputed fact that its line of credit did not extend to Ocean Feast, but to the entities from which the joint venture procured

---

[175] R. Doc. 37 at p. 21 (citing *Fort James Operating Co. v. A & L Sales, Inc.*, Civ. A. No. 03-1875, 2004 WL 2004650, at *4 (E.D. La. Sept. 7, 2004)).

[176] R. Doc. 37 at p. 21 (*citing* R. Doc. 29 at ¶¶ 15, 18).

[177] R. Doc. 37 at p. 22.

[178] *Id.*

[179] R. Doc. 40 at p. 8.

[180] *Id.* (*citing* R. Doc. 37 at p. 21).

product–the overseas suppliers.[181]   Defendants claim that Louisiana Newpack's failure to pay these suppliers is why one supplier has filed suit against Louisiana Newpack.[182]   As such, Defendants maintain that Louisiana Newpack's suit on open account claim must be dismissed.

Louisiana law defines an "open account" as "any account for which a part or all of the balance is past due, whether or not the account reflects one or more transactions and whether or not at the time of contracting the parties expected future transactions."[183]   "When any person fails to pay an open account within thirty days after the claimant sends written demand therefor correctly setting forth the amount owed, that person shall be liable to the claimant . . . when judgment on the claim is rendered in favor of the claimant."[184]   The parties agree that in determining whether a course of dealing qualifies as an open account, Louisiana courts consider the following factors: (1) whether there were other business transactions between the parties; (2) whether a line of credit was extended by one party to the other; (3) whether there are running or current dealings; and (4) whether there are expectations of other deadlines.[185]

The Court first notes that Count Ten is completely devoid of any reference to a defendant against whom the open account claim is asserted or from whom

---

[181] R. Doc. 40 at p. 8.

[182] *Id*. at pp. 8-9 (citing *Longhai Desheng Seafood Stuff Co. Ltd. v. Louisiana Newpack Shrimp, Inc.*, 29-cv-782-WBV-KWR (E.D. La.)).

[183] La. R.S. 9:2781(D).

[184] La. R.S. 9:2781(A).

[185] R. Doc. 33-1 at p. 19 (quoting *Cambridge Toxicology Grp., Inc. v. Exnicios*, 495 F.3d 169, 174 (5th Cir. 2007)) (internal quotation marks omitted); R. Doc. 37 at p. 21 (quoting *Southeast Recovery Grp., LLC v. BP Am., Inc.*, Civ. A. No. 11-823, 2011 WL 4073241, at *1 (E.D. La. Sept. 13, 2011)) (internal quotation marks omitted).

Louisiana Newpack is attempting to recover the outstanding balance. Instead, Louisiana Newpack merely cites the pertinent statute and declares that it has alleged the existence of an open account based upon unsold inventory.[186] That, alone, is sufficient to warrant dismissal under Rule 12(b)(6). The Court further finds that Louisiana Newpack's allegations demonstrate a fundamental misunderstanding of a suit on open account. As explained by our sister court, "the statute requires that the debt owed be for goods or services rendered."[187] Louisiana Newpack's claim for payment is not for goods or services rendered by Louisiana Newpack to Indigo and Ocean Feast, as the open account statute contemplates.[188] Instead, as Defendants point out, Louisiana Newpack seeks to recover amounts incurred in connection with procuring and storing unsold product on behalf of the joint venture, *i.e.* the costs it has incurred pursuant to its obligations as the "financier" of the joint venture. More importantly, however, Indigo and Ocean Feast did not have an "open account," as contemplated by La. R.S. 9:2781(D), because the amount in dispute was not incurred upon the extension of a line of credit by Louisiana Newpack.[189] The Amended Complaint is completely devoid of any allegations regarding the extension of a line of credit by Louisiana Newpack to Indigo or Ocean Feast. Louisiana Newpack has alleged only that it provided the letters of credit to Ocean Feast to procure products

---

[186] R. Doc. 29 at ¶¶ 120-128.
[187] *Jones Energy Co., LLC v. Chesapeake Louisiana, L.P.*, 873 F.Supp.2d 779, 790 (W.D. La. 2012) (citing *Double-Eight Oil and Gas, LLC v. Caruthers Producing Co., Inc.*, 41,451 (La. App. 2 Cir. 11/20/06), 942 So.2d 1279).
[188] *Double-Eight Oil and Gas LLC*, 41,451 at p. 12, 942 So.2d at 1286.
[189] *See*, *Jones Energy*, 873 F.Supp.2d at 790 (citing *Tyler v. Haynes*, 1999-1921 (La. App. 3 Cir. 5/3/00), 760 So.2d 559).

from suppliers and to package the products for re-sale under the OCEANA brand.[190]
Again, those actions were taken pursuant to Louisiana Newpack's obligations as the
"financier" of the joint venture, and were not "goods or services" rendered to Indigo
and Ocean Feast, as contemplated by the open account statute.  The Court notes that
Louisiana Newpack attempted to sidestep this issue by carefully asserting in its
Opposition brief that, "As the financier of the Joint Venture, Louisiana Newpack
extended credit *to allow* Ocean Feast, as the entity responsible for procurement and
quality assurance, to purchase the product."[191]  Thus, the Opposition brief also fails
to allege that Louisiana Newpack extended a line of credit to Indigo or Ocean Feast,
as is required to establish a claim for a suit on open account.  Accordingly, Louisiana
Newpack's claim for suit on open account in Count Ten must be dismissed.

### H. Louisiana Newpack's Claim For Breach of Duties to Share in Joint Venture Losses (Count Eleven).

Louisiana Newpack alleges in Count Eleven that Indigo and Ocean Feast
breached their duties to share in the joint venture's losses, as set forth in the Joint
Venture Agreement.[192]  Louisiana Newpack asserts that under the terms of the Joint
Venture Agreement, it receives 2% of any sale for general administration expenses
and 3% of any sale as compensation, and that net profits are to be divided equally
between Indigo and Ocean Feast and distributed every 30 days.[193]  Louisiana
Newpack cites La. Code Civ. P. art. 2804 for the proposition that because the Joint

---

[190] R. Doc. 29 at ¶ 18.
[191] R. Doc. 37 at p. 21. (*citing* R. Doc. 29 at ¶¶ 15, 18) (emphasis added).
[192] R. Doc. 29 at ¶ 130.
[193] *Id*. at ¶ 131.

Venture Agreement specifies how the parties will share the net profits and is silent as to the apportionment of losses, the losses must be apportioned the same way as the profits – divided equally between Indigo and Ocean Feast.[194]  Louisiana Newpack claims that at the time it filed this lawsuit, the joint venture had sustained $418,946 in losses, which it has been forced to bear, and that Indigo and Ocean Feast are each responsible for $209,473.[195]

Defendants first assert that this claim is premature until the assets of the joint venture – the inventory of crabmeat – are liquidated and the debts of the joint venture are settled.[196]  Until then, Defendants contend, it is unknown if the joint venture will even suffer any losses.  Defendants further dispute Louisiana Newpack's reading of the Joint Venture Agreement, asserting that under La. Civ. Code art. 2803, "[e]ach partner participates equally in profits, commercial benefits, and losses of the partnership, *unless the partners have agreed otherwise*."[197]  Defendants argue that absent a provision regarding the apportionment of losses, the default rule applies and each joint venturer shares equally in the losses.[198]  According to Defendants, the notion that the financier of the joint venture bears no portion of the losses "is absurd."[199]  As such, Defendants claim that Count Eleven must be dismissed as premature and for failure to state a claim.

---

[194] *Id*. at ¶¶ 132-133.  Although Louisiana Newpack cites Louisiana Code of Civil Procedure article 2804, this is likely an error, as the quoted text is from Louisiana Civil Code article 2804.

[195] *Id*. at ¶ 134.

[196] R. Doc. 33-1 at p. 20.

[197] *Id*. (*quoting* La. Code Civ. P. art. 2803) (internal quotation marks omitted) (emphasis in original).  Although Defendants cite Louisiana Code of Civil Procedure article 2803, this is likely an error, as the quoted text is from Louisiana Civil Code article 2803.

[198] R. Doc. 33-1 at p. 20.

[199] *Id*.

Louisiana Newpack asserts that Defendants' argument that Count Eleven should be dismissed because Louisiana Newpack, as the financier, was solely responsible for all losses is baseless.[200]  Louisiana Newpack agrees with Defendants that the Joint Venture Agreement specifies that the net profits are to be divided equally between Indigo and Ocean Feast, but is silent about the apportionment of losses.  Louisiana Newpack argues that, under Article 2804, because Indigo and Ocean Feast share equally in the joint venture's profits, they must also share equally in its losses as a matter of law.[201]  Louisiana Newpack contends that Defendants do not address this aspect of Louisiana law in their Motion.

Defendants do not address Louisiana Newpack's arguments in their Reply brief.[202]

The Court finds that Count Eleven alleges sufficient facts to state a claim for breach of fiduciary duties.  According to the Louisiana Supreme Court, joint ventures are generally governed by partnership law.[203]  "Louisiana partnership law provides that each partner participates equally in profits, commercial benefits and losses of the partnership, unless the partners have agreed otherwise." [204]  As Louisiana Newpack points out, Louisiana law further provides that:

> If a partnership agreement establishes the extent of participation by partners in only one category of either profits, commercial benefits,

---

[200] R. Doc. 37 at p. 22.

[201] *Id*. (*quoting* La. Civ. Code art. 2804).

[202] *See generally*, R. Doc. 40.

[203] *Tedeton v. Tedeton*, 46,901 (La. 2/8/12), 87 So.3d 914, 924; *Riddle v. Simmons*, 40,000 (La. App. 2 Cir. 2/16/06), 922 So.2d 1267; *Payne v. Forest River, Inc.*, Civ. A. No. 3:13-cv-679-JWD-RLB, 2015 WL 7013506, at *7 (M.D. La. Nov. 12, 2015) (citations omitted).

[204] *Dhaliwal v. Dhaliwal*, 48,034, p.16 (La. App. 2 Cir. 9/11/13), 124 So.3d 470, 480 (*citing* La. Code Civ. P. art. 2803); *Payne*, Civ. A. No. 3:13-cv-679-JWD-RLB, 2015 WL 7013506 at *6 (citations omitted).

> losses, or the distribution of assets other than capital contributions, partners participate to that extent in each category unless the agreement itself or the nature of the participation indicates the partners intended otherwise.[205]

The parties agree that the Joint Venture Agreement specifies that Indigo and Ocean Feast will share the net profits equally, but is silent regarding the apportionment of the joint venture's losses. The parties disagree, however, on the law applicable to Count Eleven. Louisiana Newpack asserts that La. Civ. Code art. 2804 applies, and that the joint venture's losses of $418,946 must be divided equally between Indigo and Ocean Feast based upon their apportionment of the net profits in the Joint Venture Agreement. Defendants argue that La. Civ. Code art. 2803 applies and that the three entities must share the losses equally. Defendants, however, fail to address Article 2804 or offer any argument why it does not apply to the facts of this case. As such, and without addressing the merits of their arguments, which is prohibited in the context of a Rule 12(b)(6) motion, the Court finds that Defendants have failed to carry their burden of proving that Louisiana Newpack's allegations fail to state a claim for reimbursement under La. Civ. Code art. 2804. As such, the Motion is denied to the extent that Defendants seek dismissal of Count Eleven.

### I. Louisiana Newpack's Claim for Piercing the Corporate Veil (Count Thirteen).

In Count Thirteen, Louisiana Newpack seeks to hold Zeng and Martinez-Malo personally liable for all of the damages it has incurred because they "transacted business with Louisiana Newpack on a personal level."[206] Louisiana Newpack alleges

---

[205] La. Civ. Code art. 2804.
[206] R. Doc. 29 at ¶ 145.

that Zeng is the sole or primary shareholder/member and primary manager of Ocean Feast, which was created as a Chinese entity to avoid liability, and that Zeng and Ocean Feast disregarded corporate formalities and are indistinguishable. [207] Louisiana Newpack alleges that Zeng comingles his personal funds with those of Ocean Feast, that Zeng does not follow statutory formalities for incorporating and transacting corporate affairs, and that Ocean Feast is not adequately capitalized.[208] Louisiana Newpack makes identical allegations against Martinez-Malo and Indigo and Oceana Seafood, with the exception of the allegation regarding Chinese citizenship of the entities.[209]

Defendants assert that Count Thirteen must be dismissed because Louisiana Newpack has failed to allege any substantive facts and merely restates the elements of a claim for veil-piercing.[210] Defendants also claim that the boilerplate "facts" are demonstrably false and inconsistent with Louisiana Newpack's allegations regarding diversity jurisdiction because Arthur Zeng is not the sole or primary shareholder/member and primary manager of Ocean Feast. Instead, Defendants assert that Louisiana Newpack has reviewed the 2019 Annual Return filed by Ocean Feast with the Chinese Government, which identifies Jia Zeng as the sole director and shareholder of Ocean Feast, and identifies her address in China, which Louisiana Newpack relied upon in its allegations regarding diversity jurisdiction. [211]

---

[207] *Id*. at ¶ 146.
[208] *Id*.
[209] *Id*. at ¶¶ 147-148.
[210] R. Doc. 33-1 at p. 22.
[211] *Id*. (*citing* R. Doc. 26-2).

Defendants argue that Louisiana Newpack makes the same boilerplate allegations regarding Martinez-Malo, without providing any evidence or facts to support that he used the corporate entity to perpetuate fraud or that he disregarded the corporate form.[212] As such, Defendants contend that the claims against Zeng and Martinez-Malo fail to establish the "exceptional circumstances" necessary to find an entity is the alter-ego of an individual, and that the claim should be dismissed.[213]

Louisiana Newpack asserts that piercing the corporate veil is a largely factual inquiry that turns on whether a fraud has been perpetuated or corporate formalities have been disregarded.[214] Louisiana Newpack claims that courts routinely deny motions to dismiss because the facts pertaining to fraud need to be developed, and that another section of this Court previously concluded that a plaintiff adequately pleaded a claim for piercing the corporate veil simply by alleging that the individual defendants "had complete domination" over the corporate defendant.[215] Louisiana Newpack asserts that its allegations are more detailed and exacting than those at issue in the prior case because it has alleged that: (1) Zeng and Martinez-Malo formed Ocean Feast and Indigo, respectively, for the purpose of entering into the joint venture; (2) Zeng and Martinez-Malo are the sole shareholders/members and managers of Indigo and Ocean Feast; (3) Zeng and Martinez-Malo have comingled funds with the corporate entities; and (4) Indigo and Ocean Feast are indebted to

---

[212] R. Doc. 33-1 at pp. 22-23.

[213] *Id*. at p. 23 (quoting *Riggins v. Dixie Shoring Co.*, 590 So.2d 1164, 1167 (La. 1991)).

[214] R. Doc. 37 at p. 23.

[215] *Id*. (quoting *Sanderson v. H.I.G. P-Xi Holding, Inc.*, Civ. A. No. 99-3313, 2001 WL 406280, at *5 (E.D. La. April 19, 2001), *opinion set aside in part on reconsideration on other grounds by*, *Sanderson v. H.I.G. P-XI Holdings, Inc.*, Civ. A. No. 99-3313, 2001 WL 423075 (E.D. La. Apr. 24, 2001).

Louisiana Newpack for a significant amount of inventory that they failed to market and sell.[216]  Louisiana Newpack further asserts that the Joint Venture Agreement identifies Arthur Zeng as Ocean Feast's representative,  Zeng signed the Agreement in his capacity as the legal representative of Ocean Feast, and the Agreement refers to Zeng as a "party."[217]  Thus, Louisiana Newpack argues Count Thirteen should not be dismissed.

In response, Defendants assert that the law relied upon by Louisiana Newpack does not cure the deficiencies in its Amended Complaint.[218]  Defendants contend that the cases cited by Louisiana Newpack make clear that persuading courts to disregard the corporate entity is a difficult task, and that, "The degree of control required to pierce the veil is exclusive domination and control to the point that the entity no longer has legal or independent significance of its own."[219]  Defendants argue that the Amended Complaint fails to meet this standard and is devoid of any specific facts to sustain a claim of piercing the corporate veil.[220]  Defendants claim that it contains only boilerplate, conclusory assertions.  Defendants dispute that the Joint Venture Agreement refers to Zeng as a "party," and claim that there is no legal support for Louisiana Newpack's assertion that Zeng signing as a "legal representative" shows that he is the owner of the entity.[221]  As such, Defendants argue there is no basis to pierce the corporate veil in this case.

---

[216] R. Doc. 37 at pp. 23-24.
[217] *Id*. at p. 24 (*citing* R. Doc. 29-1 at p. 2).
[218] R. Doc. 40 at p. 9.
[219] *Id*. (quoting *Sanderson*, Civ. A. No. 99-3313, 2001 WL 406280 at *5).
[220] R. Doc. 40 at p. 9.
[221] *Id*.

Although the parties contend that Louisiana law applies to Louisiana Newpack's veil-piercing allegations in Count Thirteen, this Court has previously recognized that, "Louisiana courts have not explicitly ruled on the appropriate choice of law for veil piercing theories.  However, the Fifth Circuit has predicted that Louisiana courts would look to the law of the state in which the defendant corporation was incorporated."[222]  According to the allegations in the Amended Complaint, which Defendants do not dispute, the defendant-entities in this case, Indigo and Ocean Feast, were incorporated in Florida and China, respectively.[223]  Accordingly, although Defendants and Louisiana Newpack both rely on Louisiana law in support of their arguments, this Court believes it is appropriate to apply Florida law in assessing Louisiana Newpack's veil-piercing theory against Martinez-Malo/Indigo and Chinese law to the veil-piercing theory asserted against Zeng/Ocean Feast.  The Court finds that Louisiana Newpack's allegations fall far short of demonstrating the exceptional circumstances required to pierce the corporate veil under Florida, Chinese or Louisiana law.

The Fifth Circuit has held that the leading Florida case addressing the piercing of corporate veils is *Dania Jai-Alai Palace, Inc. v. Sykes*, wherein the Florida Supreme Court held that to pierce the corporate veil of a defendant corporation, a plaintiff

---

[222] *Lentz v. Trinchard*, 730 F. Supp. 2d 567, 582 (E.D. La. 2010) (Africk, J.) (citing *Patin v. Thoroughbred Power Boats, Inc.*, 294 F.3d 640, 647 (5th Cir. 2002)).  *See, Energy Coal v. CITGO Petroleum Corporation*, 836 F.3d 457, 462 (5th Cir. 2016) (reaffirming *Patin* and stating that, "Louisiana courts look to the state of incorporation not just when deciding issues involving piercing, which as noted above is a close relative of the single business enterprise theory, but also when deciding more general questions of corporate structure." (citations omitted)); *Soriano v. Gulf Coast Lift, LLC*, Civ. A. No. 12-2744, 2014 WL 949145, at *9 (E.D. La. Mar. 11, 2014) (Vance, J.) (citing *Patin, supra*).
[223] R. Doc. 29 at ¶¶ 2, 3.

must prove *both*: (1) that the corporation is a "mere instrumentality" or alter ego of the defendant; and (2) that the defendant engaged in "improper conduct" in the formation or use of the corporation.[224]  The Florida Supreme Court further explained that the corporate veil "will not be penetrated either at law or in equity unless it is shown that the corporation was organized or employed to mislead creditors or to work a fraud upon them."[225]

Florida courts and federal courts applying Florida law have elaborated further on the meaning of "improper conduct," explaining that:

> Florida decisions uniformly hold that courts will look through the screen of a corporate entity to the individuals who compose it in cases in which the corporation was a mere device or sham to accomplish some ulterior purpose, . . . or where the purpose is to evade some statute or to accomplish some fraud or illegal purpose, or where the corporation was employed by the stockholders for fraudulent or misleading purposes, was organized or used to mislead creditors or to perpetrate a fraud upon them, or to evade existing personal liability.[226]

Thus, under Florida law, Louisiana Newpack must allege both that Indigo was used for an improper purpose and that Indigo was the alter ego or mere instrumentality of Martinez-Malo.[227]

The Court finds that the Amended Complaint fails to state a plausible claim under Florida law for piercing the corporate veil and holding Martinez-Malo liable for the debts of Indigo.  Relying upon the five non-exclusive factors used by Louisiana

---

[224] *Patin,* 294 F.3d at 647 (quoting *Sykes*, 450 So.2d 1114, 1120-21 (Fla. 1984)).

[225] *Sykes*, 450 So.2d at 1120 (quoting *Advertects, Inc. v. Sawyer Indus., Inc.*, 84 So.2d 21, 23-24 (Fla. 1955) (internal quotation marks omitted).

[226] *Patin*, 294 F.3d at 647-48 (quoting *Steinhardt v. Banks*, 511 So.2d 336, 339 (Fla. Dist. Ct. App. 1987)); *See also*, *In re Warmus*, 276 B.R. 688, 697 (S.D. Fla. 2002); *In re Hillsborough Holdings Corp.*, 166 B.R. 461, 469 (Bankr. M.D. Fla. 1994); *Acquisition Corp. of Am. v. Am. Cast Iron Pipe Co.*, 543 So.2d 878, 882 (Fla. Dist. Ct. App. 1989).

[227] *Verizon Trademark Services, LLC v. Producers, Inc.*, 810 F. Supp. 2d 1321, 1329 (M.D. Fla. 2011).

courts to determine whether to pierce the corporate veil under Louisiana law,[228] Louisiana Newpack alleges that Martinez-Malo is the sole or primary shareholder/member and primary manager of Indigo, that Martinez-Malo disregarded the requisite corporate formalities and that he is indistinguishable from Indigo, that Martinez-Malo commingles his personal funds with those of Indigo, that Martinez-Malo does not follow statutory formalities for incorporating and transacting corporate affairs, and that Indigo is not adequately capitalized. Louisiana Newpack, however, does not provide any factual detail to substantiate these allegations. Moreover, Louisiana Newpack has not alleged that Indigo was used for an improper purpose, as required under Florida law. As such, Louisiana Newpack has failed to assert a plausible basis for piercing the corporate veil and holding Martinez-Malo liable for the debts of Indigo.

With respect to Zeng and Ocean Feast, companies formed under the laws of China are subject to the country's Company Law, which provides, in pertinent part, that, "Where any shareholder of a company evades debts by abusing the independent legal person status of the company or by abusing the shareholder's limited liabilities, thereby graving prejudicing the interests of the creditors of the company, the shareholder shall be jointly and severally liable for the debts of the company."[229] As

---

[228] *See, Riggins v. Dixie Shoring Co., Inc.*, 590 So.2d 1164, 1168 (La. 1991) (citations omitted) (Louisiana courts consider: (1) commingling of corporate and shareholder funds; (2) failure to follow statutory formalities for incorporating and transacting corporate affairs; (3) undercapitalization; (4) failure to provide separate bank accounts and bookkeeping records; and (5) failure to hold regular shareholder and director meetings).

[229] Company Law of the People's Republic of China (2018 Amendment), Chapter 1, Article 20, ¶ 3, Promulgated by NPC Standing Committee on 10/26/18; eff. 10/26/18 (Westlaw China); *See also, In re Chinese-Manufactured Drywall Products Liability Litigation*, Civ. A. No. 09-02047, 2017 WL 1476595, at *20, n.20 (E.D. La. Apr. 21, 2017) (quoting the 2017 version of the law).

another Section of this Court has recognized, "Regulations interpreting China's veil-piercing Company Law look to corporate separateness, considering factors such as the comingling of shareholder and company income, funds, and business and whether the company's business transactions are under complete control of its shareholders."[230]  Further, "Chinese law generally respects the legal separateness provided by the corporate form, and requires a strong showing of comingling in order to negate it."[231]

Louisiana Newpack's allegations in its veil-piercing claim against Zeng are identical to the allegations made against Martinez-Malo.  As this Court has found in relation to Martinez-Malo, Louisiana Newpack has failed to assert any factual support for its veil-piercing claim against Zeng.  The Court finds that such conclusory allegations are insufficient to state a plausible basis for the Court to pierce the corporate veil and hold Zeng liable for the debts of Ocean Feast under Chinese law.

The Court further notes that even if Louisiana law applied to these claims, the allegations in the Amended Complaint still fail to state a plausible veil-piercing claim against Martinez-Malo/Indigo or Zeng/Ocean Feast.  Louisiana Newpack alleges, almost verbatim, three of the five factors considered by Louisiana courts in determining whether to pierce the corporate veil, but fails to provide any factual detail to substantiate the allegations.[232]  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" will not

---

[230] *In re Chinese-Manufactured Drywall Products Liability Litigation*, Civ. A. No. 09-02047, 2017 WL 1476595 at *20 (citation omitted),
[231] *Id*. (citations omitted).
[232] *See*, *Riggins v. Dixie Shoring Co., Inc.*, 590 So.2d 1164, 1168 (La. 1991).

survive a Rule 12(b)(6) motion.[233]  The Court further finds that the authority relied upon by Louisiana Newpack does not support its position that it has sufficiently alleged that Zeng and Martinez-Malo had "complete domination or control" of Ocean Feast and Indigo.[234]  As Defendants point out, that court went on to clarify that, "The degree of control required to pierce the veil is exclusive domination and control to the point that the entity no longer has legal or independent significance of its own."[235] Louisiana Newpack has not alleged any facts to show that Zeng or Martinez-Malo exercised that level of control over Ocean Feast or Indigo, respectively.

Based on the foregoing,  the Court agrees with Defendants that the allegations in Count Thirteen are insufficient to allow the Court to pierce the corporate veil and impose personal liability on Arthur Zeng and Jeffrey Martinez-Malo for the debts of Ocean Feast and Indigo, respectively.  As such, Count Thirteen must be dismissed.

### J.  Louisiana Newpack's Conspiracy Claim (Count Fourteen).

In Count Fourteen of the Amended Complaint, Louisiana Newpack alleges that Defendants conspired with specific and malicious intent to procure, market and sell product outside of the joint venture and under the OCEANA brand without the knowledge or consent of Louisiana Newpack or the joint venture, effectively cutting Louisiana Newpack out.[236]  Louisiana Newpack alleges that Defendants used the

---

[233] *Romious v. Cornell*, Civ. A. No. 11-2791, 2012 WL 6048725, at *2 (E.D. La. Dec. 5, 2012); (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007))).
[234] R. Doc. 37 at p. 23 (quoting *Sanderson v. H.I.G. P-Xi Holding, Inc.*, Civ. A. No. 99-3313, 2001 WL 406280, at *5 (E.D. La. April 19, 2001)).
[235] *Sanderson*, Civ. A. No. 99-3313 2001 WL 406280 at *5 (citing *Wallace v. Wood*, 752 A.2d 1175, 1183 (Del. Ch. 1999)).  *See*, R. Doc. 37 at p. 23; R. Doc. 40 at p. 9 (quoting *Sanderson, supra*).
[236] R. Doc. 29 at ¶ 151.

joint venture's business strategy and relationships to engage in side deals outside of the joint venture to increase their own profits, effectively diverting business away from the joint venture and Louisiana Newpack.[237]  Louisiana Newpack asserts that Defendants consciously and intentionally excluded it from those side deals to increase their own profits, and that Defendants had the specific intent to harm Louisiana Newpack and to deprive it of its share of those sales under the Joint Venture Agreement.[238]  Louisiana Newpack claims that Defendants are solidarily liable for any and all damages caused by their "intentional and willful" acts of conspiracy pursuant to La. Civ. Code art. 2324(A).  The Court notes that Count Fourteen refers to Defendants *in globo* and does not specify which defendants are subject to the allegations.

Defendants assert that Louisiana Newpack has failed to state a claim for conspiracy and that Count Fourteen should be dismissed.[239]  Defendants assert that conspiracy is not a claim under Louisiana law, and that it is the tort that the conspirators agreed to commit and committed in whole or in part that constitutes the element of a conspiracy claim.[240]  Defendants contend that the underlying tort of the conspiracy claim is Defendants' procuring, marketing and selling product outside of the joint venture.   Because the Joint Venture Agreement does not contain an

---

[237] *Id*. at ¶ 154.
[238] *Id*. at ¶¶ 152-153.
[239] R. Doc. 33-1 at pp. 23-24.
[240] *Id*. at p. 23 (citing *Ross v. Conoco, Inc.*, 2002-0299 (La. 10/15/02), 828 So.2d 546, 552; *Crutcher-Tufts Resources, Inc. v. Tufts*, 07-1556, p.3 (La App. 4 Cir. 9/17/08), 992 So.2d 1091, 1094 (citing *Ross, supra*)).

exclusivity provision or a non-compete clause, Defendants argue there can be no malicious intent and, therefore, no conspiracy.[241]

Louisiana Newpack argues that its conspiracy claim is not premised on an exclusivity provision in the Joint Venture Agreement and that it has alleged sufficient facts to state a plausible claim that Defendants conspired to violate the Joint Venture Agreement and their obligations under Louisiana law to the prejudice of Louisiana Newpack.[242]  Louisiana Newpack asserts that it has alleged sufficient facts to show a meeting of the minds because Ocean Feast and Indigo could not have obtained the product and sold it to consumers without Louisiana Newpack's involvement unless there was a meeting of the minds.[243]

In response, Defendants assert that a conspiracy claim requires more than a mere "meeting of the minds" and requires intentional or willful conduct for the purpose of committing an illegal or tortious act.[244]  Defendants argue that the only intentional conduct alleged in the Amended Complaint is Defendants' sale of product outside of the joint venture.  Referring back to their prior arguments on the same issue, Defendants maintain that there was nothing illegal or tortious about those sales.[245]  Because Louisiana Newpack fails to allege any other intentional or willful

---

[241] R. Doc. 33-1 at pp. 23-24.
[242] R. Doc. 37 at pp. 24-25 (citing *K&F Rest. Holdings, Ltd. v. Rouse*, Civ. A. No. 16-293, 2018 WL 3553422, at *13 (M.D. La. July 24, 2018)).
[243] R. Doc. 37 at p. 25.
[244] R. Doc. 40 at p. 10 (*citing* R. Doc. 37 at p. 25; *Thomas v. N. 40 Land Dev., Inc.*, 04-0610 (La. App. 4 Cir. 1/26/05), 894 So.2d 1160, 1178 (*citing* La. Civ. Code art. 2324); *Crutcher-Tufts Resources, Inc.*, 07-1556 at p.3, 992 So.2d at 1094).
[245] R. Doc. 40 at p. 10.

conduct concerning the commission of an illegal or tortious act, Defendants assert that Count Fourteen must be dismissed.

Louisiana Civil Code article 2324 provides that anyone who "conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act."[246]  Nonetheless, "the Louisiana Supreme Court has held that conspiracy by itself is not an actionable claim under Louisiana law."[247]  Instead, it is "the tort which the conspirators agreed to perpetrate and which they actually commit in whole or in part" that constitutes the actionable element of a conspiracy claim.[248]  Thus, a conspiracy claim requires a plaintiff to allege, and prove, the existence of an agreement to commit an illegal or tortious act, which was actually committed, that resulted in the plaintiff's injury, and an agreement as to the intended outcome or result.[249]

As Defendants correctly point out, the only intentional conduct alleged in Count Fourteen of the Amended Complaint is that Defendants acted with "specific and malicious intent" to procure, import and sell product outside of the joint venture and without Louisiana Newpack's knowledge or consent.[250]  Although Count Fourteen refers to Defendants *in globo*, Louisiana Newpack alleges elsewhere in the Amended Complaint (namely, Counts One and Six) that Indigo and Ocean Feast

---

[246] La. Civ. Code art. 2324(A).

[247] *Crutcher-Tufts Resources, Inc.*, 07-1556 at p.3, 992 So.2d at 1094 (citing *Ross v. Conoco, Inc.*, 2002-0299 (La. 10/15/02), 828 So.2d 546).

[248] *Ross*, 2002-0299 at p.8, 828 So.2d at 552 (quoting *Butz v. Lynch*, 97-2166, p.6 (La. App. 1 Cir. 4/8/98), 710 So.2d 1171, 1174) (internal quotation marks omitted).

[249] *Crutcher-Tufts Resources, Inc.*, 07-1556 at pp. 3-4, 992 So.2d at 1094 (citing *Butz*, 97-2166, 710 So.2d at 1174).

[250] R. Doc. 29 at ¶ 151.

procured, marketed and sold product outside of the joint venture.[251]  These alleged actions by Indigo and Ocean Feast, however, are not illegal or tortious acts.  More importantly, however, Louisiana Newpack has not alleged that these actions are illegal or tortious.  Instead, Louisiana Newpack alleges that these actions were done with the specific, malicious intent to harm Louisiana Newpack.[252]  The Court finds that Louisiana Newpack's allegations are insufficient to state a plausible claim for conspiracy under La. Civ. Code art. 2324.  Accordingly, Louisiana Newpack's conspiracy claim in Count Fourteen must be dismissed.

### K. Leave to Amend is Denied.

The Court notes that neither in its Opposition brief or in any other motion has Louisiana Newpack requested leave to amend the allegations in its Amended Complaint to cure any deficiencies found by the Court.[253]  While the Court will "freely give leave [to amend] when justice so requires,"[254] leave to amend "is by no means automatic."[255]  In exercising its discretion, this Court may consider such factors as "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment."[256]

---

[251] *Id.* at ¶¶ 43, 85.
[252] *Id.* at ¶¶ 151, 153.
[253] *See generally*, R. Doc. 37.
[254] Fed. R. Civ. P. 15(a).
[255] *Halbert v. City of Sherman, Tex.*, 33 F.3d 526, 529 (5th Cir. 1994) (citation omitted).
[256] *Nolan v. M/V SANTE FE*, 25 F.3d 1043 (5th Cir. 1994) (citing *Gregory v. Mitchell*, 635 F.2d 199, 203 (5th Cir. 1981)).

The Court finds that leave to amend is not warranted in this case because Louisiana Newpack has already had an opportunity to address the deficiencies raised in the instant Motion, which were raised in a nearly identical motion to dismiss filed by Defendants on November 7, 2019.[257]  Not only did Louisiana Newpack file an Opposition to the prior Motion to Dismiss,[258] it also sought, and was granted, leave to amend its Complaint, which resulted in the filing of the Amended Complaint now at issue.[259]  Thus, Louisiana Newpack has already been granted an opportunity to amend its Complaint to cure the same deficiencies raised in Defendants' Motion to Dismiss, and failed to do so in its Amended Complaint.  Granting Louisiana Newpack leave to amend its Complaint a second time would effectively afford Louisiana Newpack a third bite at the apple, which, ultimately, would cause undue delay in this matter which has been pending since 2019.  The Court finds that the facts of this case do not warrant such relief.  Exercising the discretion afforded under Fed. R. Civ. P. 15 and the pertinent jurisprudence, the Court finds that further leave to amend is not warranted to cure the deficiencies raised by Defendants' Motion to Dismiss.

## IV.    CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss [260] is **GRANTED in part** and **DENIED in part.**  The Motion is **GRANTED** to the extent that Defendants seek dismissal of Counts One, Two, Six, Seven, Eight, Nine, Ten, Thirteen and Fourteen of the Amended Complaint, and such claims are **DISMISSED**

---

[257] *See*, R. Doc. 9; R. Doc. 9-1 at pp. 6-20.
[258] R. Doc. 13.
[259] *See,* R. Docs. 22, 28, 29.
[260] R. Doc. 33.

**WITH PREJUDICE.**  The Motion is **DENIED** to the extent that Defendants seek

dismissal of Counts Three, Four, Five, and Eleven, which remain pending.[261]

New Orleans, Louisiana, February 9, 2021.

**WENDY B. VITTER**
**United States District Judge**

---

[261] The Court notes that Defendants did not move to dismiss Count Twelve of the Amended Complaint, which also remains pending.