**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **LOUISIANA NEWPACK SHRIMP, INC.** | **CIVIL ACTION** |
| **VERSUS** | **NO:   19-12948 c/w 20-782 and 21-003** |
| **INDIGO SEAFOOD PARTNERS, INC., ET AL.** | **SECTION: "D" (4)** |

**ORDER**

Before the Court is **Louisiana Newpack's Motion for Leave to File Second Amended and Supplemental Counterclaim as to Counts One and Two to the First Amended Counterclaim (R. Doc. 261)** filed by Louisiana Newpack Shrimp Company, Inc. ("Louisiana Newpack" or "Newpack") seeking leave of Court to file its second amended and supplemental counterclaim against Longhai Desheng Seafood Stuff Co. Ftd ("Longhai"). Longhai opposes this motion. R. Doc. 266. Louisiana Newpack filed a reply. R. Doc. 274. Longhai filed a sur-reply. R. Doc. 276. This motion was set for submission on June 16, 2021 and was via oral argument.

### I.      Background

On September 24, 2019, Plaintiff Newpack filed this action against Defendants Ocean Feast of China, Ltd ("Ocean Feast"); Indigo Seafood Partners, Inc. ("Indigo"); Arthur Zeng; and Jeffrey Martinez-Malo in Louisiana state court. R. Doc. 1-1. On October 3, 2019, this action was removed to the District Court. R. Doc. 1.

Newpack alleges that, effective March 15, 2017, Newpack, Ocean Feast, and Indigo started a Joint Venture to finance, procure, and sell seafood products such as crabmeat from seafood manufacturers around the globe. R. Doc. 1-1. The Joint Venture Agreement sets forth the parties and the responsibilities of the parties. R. Doc. 71-1. Louisiana Newpack, represented by Edward Lee, was designated as the financer and was responsible for providing the Letters of Credit

necessary to procure the product. *Id.* Ocean Feast of China, represented by Arthur Zeng, was designated as the procurer and quality assurance *Id.* Indigo Seafood, represented by Jeffrey Martinez-Malo, was responsible for the sales and marketing management function of the Joint Venture. *Id.*

The Joint Venture procured their crabmeat exclusively from Longhai, a private corporate entity organized under the laws of the People's Republic of China. Newpack admits that there was no agreement between Longhai and the Joint Venture that it would act as the exclusive supplier of the Joint Venture. Longhai is also not a member of the Joint Venture. Requisitions for crabmeat were made by individual members of the Joint Venture and were allegedly never made under the Joint Venture's alleged name "Oceana Company." Longhai was then responsible for supplying, packing, and shipping crab meat to the Joint Venture. *Id.* When Longhai packed the product it would place a "Oceana Company" label on the can, which Newpack alleges was a private label[1] protected by common law trademark laws.[2]

Newpack contends that the purpose of the Joint Venture was to sell crabmeat procured from China to be sold in the United States under the brand "Oceana Company." Newpack alleges that "Oceana Company" was a brand owned collectively by the Joint Venture. While Newpack contends that the Joint Venture owned the "Oceana Company" brand collectively, the Joint Venture Agreement does not contain any language supporting this contention.

While the product the joint venture sold may have been branded "Oceana Company," "Oceana Company" itself is not a legally cognizable business entity. Public records indicate on

---

[1] A private label product is a product that is made and manufactured by a third-party company, in this case Longhai, but sold under a specific retailer's brand. *See* https://www.business.com/articles/private-labeling-details/ (last accessed: July 22, 2021).

[2] Curiously, the "Oceana Company" label also includes the words "Indigo Seafood" and the Jeffrey Martinez-Malo's wife of Indigo Seafood designed the label.

September 27, 2017, Louisiana Newpack registered "Oceana Company" as a tradename.[3] In addition, on November 17, 2017, Indigo filed a trademark with the United States Patent and Trademark Office on the word mark "Oceana", which has since been abandoned.[4]

Notably, the Joint Venture fails to mention either Longhai or "Oceana Company" entirely. In addition, the terms of the Joint Venture Agreement do not stipulate which entity is to submit purchase orders, but Ocean Feast is designated as the procurer who is responsible for sourcing from international seafood packers.

Newpack contends that when President Trump increased tariffs on Chinese goods from ten percent (10%) to twenty-five percent (25%), it already had a surplus of crabmeat for the benefit of the joint venture, and, therefore, did not place any orders. Newpack alleges that at the same time, in an effort to ramp up production and shipment of crabmeat before the increased tariffs were to go into effect, Longhai prepacked crabmeat cans with the "Oceana Company" label without yet receiving an order from the Joint Venture.  Newpack contends the fact that Longhai prepacked the cans without an order violates Longhai's own standard of practice. Newpack then contends that Longhai took efforts to offload the prepacked cans on the joint venture and contacted Ocean Feast and Indigo who ultimately placed an order for the prepacked cans. While a purchase order was sent, the crabmeat purchased was never paid for and the amount owed on the account remains outstanding.

Newpack alleges that Ocean Feast and Indigo procured and sold the "Oceana Company" branded product they received from Longhai outside the Joint Venture Agreement. *Id.* Newpack further contends that Ocean Feast's and Indigo's decision to sell product outside the Joint Venture

---

3 *See* https://coraweb.sos.la.gov/CommercialSearch/TradeServiceSearchDetails.aspx?TradeServiceMainID=153135_8D8 1381872 (last accessed: July 22, 2021).

4 *See* https://tmsearch.uspto.gov/bin/showfield?f=doc&state=4809:8iq4jt.3.28 (last accessed: July 22, 2021).

resulted in it being unable to sell the Joint Venture's aging perishable inventory, which went unsold and has since been liquidated. *Id.* As such, Newpack, on its own behalf, sought damages for breach of contract, breach of fiduciary duties, unfair trade practices, tortious interference with contract, unjust enrichment, conspiracy, and open account against Ocean Feast and Indigo. *Id.*

Newpack also contends the fact that Ocean Feast, a different member of the Joint Venture, placed the purchase order and not Newpack, who allegedly submitted the previous fifteen to eighteen purchase orders, should have signaled to Longhai that it was dealing beyond the Joint Venture.[5]

The Defendants Ocean Feast and Indigo dispute Newpack's claims and contend Lee was running out of money to buy more product forcing them to buy product outside the Joint Venture. While Defendants do not dispute that they bought product outside the Joint Venture, they contend they did so to not default on their contracts with "program suppliers."

On March 6, 2020, Longhai, the Joint Venture's supplier, sued Newpack for nearly one million dollars for breach of contract and claims on open accounts for purchases placed for crabmeat. *See Longhai Desheng Seafood Stuff Co. Ltd. v. Louisiana Newpack Shrimp, Inc. et al* (2:20-cv-00782-WBV-KWR) (R. Doc. 1). On May 26, 2020, Newpack filed its answer and counterclaim against Longhai and Third-Party Defendants Ocean Feast and Indigo alleging a conspiracy between Longhai and the members of the Joint Venture—Ocean Feast and Indigo to sell Oceana branded product outside the Joint Venture; negligent and tortious interference with contract; and that any debts are owed by Ocean Feast or Arthur Zeng or, alternatively, Ocean Feast and Indigo. *Id.* (R. Doc. 34). That matter has since been consolidated with this action.

---

[5] The Court finds it curious that Newpack placed the orders for crab when it was specifically designated as the financier and Ocean Feast was designated the procurer and neither adhered to their assigned roles as defined by the agreement.

Newpack's unfair trade practices, tortious interference with contract, unjust enrichment, open account, and conspiracy claims against Ocean Feast and Indigo have been dismissed. R. Doc. 129. Most of Newpack's breach of contract claims were also dismissed. As such, Newpack's sole remaining claims are for breach of contract—in that Indigo failed to sell product within ninety (90) days of landing pursuant to the Joint Venture Agreement, declaratory judgment, breach of fiduciary duty, breach of duties to share in joint venture losses, and piercing the veil. *Id.*; *see also* R. Doc 267.

On August 17, 2020, Ocean Feast, Indigo, and Zeng also moved to dismiss Newpack's counterclaim for failure to state a claim. R. Doc. 85. The Court granted that motion and dismissed Newpack's conspiracy counterclaim against Ocean Feast and Indigo with prejudice as well as Newpack's claims that any debts are owed by Ocean Feast or Arthur Zeng or, alternatively, Ocean Feast and Indigo without prejudice. R. Doc. 140.

On March 16, 2021, Newpack moved to file an amended and restated counterclaim against Longhai to cure the deficiencies with regard to its claim that Ocean Feast or Zeng should bear the cost of Longhai's open account. R. Docs. 151, 155. The amended counterclaim also included additional factual support for the conspiracy and intentional interference with contract claims *Id.*

On March 22, 2021, Longhai moved to dismiss all of Newpack's counterclaims against it on the grounds that the claims fail as a matter of law. R. Doc. 157. Specifically, Longhai contends it cannot be liable for the alleged "conspiracy," because the Court already determined the Joint Venture Agreement did not contain an exclusivity provision and Longhai is not a member of the Joint Venture, and, therefore, no "fiduciary" relationship exists between Longhai and Newpack. *Id.* Newpack opposes that motion. R. Doc. 165. That motion remains pending at this time.

On May 28, 2021, Newpack for the second time moved for leave to amend and supplement its counterclaim. R. Doc. 261. Newpack contends the purpose of this amendment is to supplement its Count I—the conspiracy claim pending only against Longhai—and Count II—negligent and tortious interference with a contract claim pending against Longhai, Ocean Feast, and Indigo. *Id.* Newpack contends good cause exists to allow this supplementation as it is based on recently discovered facts obtained from document productions and the corporate deposition of Longhai on May 5, 2021. *Id.* Newpack avers the proposed counterclaim contains no new cause of action or adds any new defendants. *Id.*

Longhai opposes this motion and contends that Newpack fails to show good cause for the late stage pleading amendment. R. Doc. 266. Longhai contends that allowing this amendment would result in undue delay and substantial prejudice to Longhai. *Id.* Longhai further contends that multiple factual allegations are raised concerning an alleged trademark infringement which makes it unclear whether a trademark claim is being filed against it directly. *Id.* Longhai ultimately seeks an order from the Court denying Newpack's motion to file a second amended and supplemental counterclaim in its entirety. *Id.*

The Scheduling Order in this case has established April 15, 2020 as the pleading amended and counterclaim fling deadline. R. Doc. 20.

## II.   <u>Standard of Review</u>

Generally, Federal Rule of Civil Procedure 15(a) governs the amendment of pleadings before trial. Rule 15(a) allows a party to amend its pleadings "only with the other party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Moreover, the Rule urges that the Court "should freely give leave when justice so requires." *Id.* In taking this liberal approach, the Rule "reject[s] the approach that pleading is a game of skill in which one misstep by counsel may be

decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley v. Gibson*, 355 U.S. 41, 48 (1957).

"Rule 15(a) requires a trial court 'to grant leave to amend freely,' and the language of this rule 'evinces a bias in favor of granting leave to amend.'" *Jones v. Robinson Prop. Grp.*, 427 F.3d 987, 994 (5th Cir. 2005) (internal quotations marks omitted) (quoting *Lyn–Lea Travel Corp. v. Am. Airlines*, 283 F.3d 282, 286 (5th Cir. 2002)). When denying a motion to amend, the court must have a "substantial reason" considering such factors as "'undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . and futility of the amendment.'" *Marucci Sports, LLC v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (quoting *Jones*, 427 F.3d at 994).

An amendment is deemed to be futile if it would be dismissed under a Rule 12(b)(6) motion. *Id.* (citing *Briggs v. Miss.*, 331 F.3d 499, 508 (5th Cir. 2003)). "It is well-established, of course, that the Rule 12(b)(6) analysis necessarily incorporates the federal pleading standard articulated in *Bell Atlantic Corp. v. Twombly*: 'To pass muster under Rule 12(b)(6), [a] complaint must have contained 'enough facts to state a claim to relief that is plausible on its face.'" *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp.*, 818 F.3d 193, 200 (5th Cir. 2016). As such, the Court must accept all well-plead facts as true and view them in the light most favorable to the non-moving party. *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir.2004) (internal quotation omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Where viability of a

claim is at least facially possible, futility does not provide grounds for denying an amendment. *Jaso v. The Coca Cola Co.*, 435 F. App'x 346, 353–54 & n. 6 (5th Cir.2011).

"[T]he Fifth Circuit [has] clarified that when, as here, a scheduling order has been issued by the district court, Rule 16(b) governs amendment of pleadings." *Royal Ins. Co. of America v. Schubert Marine Sales*, 02–0916, 2003 WL 21664701, at *2 (E.D. La. July 11, 2003) (Englehardt, J.) (citing *S & W Enterprises, L.L.C. v. Southtrust Bank of Ala.*, 315 F.3d 533, 535–36 (5th Cir. 2003)). Rule 16(b) limits changes in the deadlines set by a scheduling order "only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). To determine if good cause exists as to untimely motions to amend pleadings, the Court should consider: "(1) the movant's explanation for its failure to timely move for leave to amend; (2) the importance of the amendment; (3) the potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure that prejudice." *Schubert Marine Sales*, 2003 WL 21664701, at *2 (citing *S & W Enterprises*, 315 F.3d at 536). If the movant can show good cause, the Court will then apply the liberal standards of Rule 15(a). *S&W Enterprises*, 315 F.3d at 536.

## III.   **Analysis**

As noted above, the pleading deadline imposed by the Scheduling Order lapsed without extension. *See* R. Doc. 20. Thus, Rule 16(b) governs amendment of pleadings in this matter, and Plaintiffs must establish "good cause" for their untimely amendment before the liberal Rule 15(a) standard applies. Still, before addressing whether Louisiana Newpack has good cause to amend the Court reviews the proposed pleading to analyze what exactly Newpack is seeking to add.

In reviewing the pleading, the Court notes that it seeks to add an additional forty-eight (48) factual allegations to support its conspiracy claim and another ten (10) factual allegations to support its claim for negligent and tortious interference with a contract. The Plaintiff claims that

the supplementation is based on recently discovered facts obtained during unspecified document productions and the corporate deposition of Longhai. The Court, however, was not provided the transcript of that deposition.

After reviewing the allegations in detail, the Court notes that while some of the facts pled seemingly reference Longhai's policies and standards of practice, which the Court assumes was first learned at Longhai's corporate deposition, the vast majority of the allegations have been known by Newpack since the outset of the litigation.[6] *See* R. Doc. 261-4. For example, Newpack now includes allegations such as Longhai was an approved high volume seafood manufacturer that procured and imported seafood product for the Joint Venture; Longhai exclusively filled order for Oceana private label crabmeat on the order of the Joint Venture; and in 2018, the US Government announced increased tariff on Chinese crabmeat—all facts known to Louisiana Newpack since the outset of this litigation. *See* R. Doc. 261-4.

Moreover, while Newpack states that it is not adding a claim for trademark infringement, the Court finds this averment patently false. In multiple allegations throughout the proposed pleadings, Newpack mentions the Joint Venture's "Oceana Company" private label was infringed when Longhai prepacked the crabmeat cans with their label and sold it to Ocean Feast and Indigo who sold it outside the Joint Venture.  Tellingly, while Newpack has stated multiple times it is not asserting a trademark claim against Longhai, Newpack's proposed jury instructions clearly state that it is seeking damages from Longhai for trademark infringement. R. Doc. 307, p. 3.

---

[6] Based on the Court's review of the proposed pleadings, the Court can only ascertain a meagerly seven (7) out of the fifty-eight (58) proposed factual allegations that relate to Longhai policies or standard of practice that potentially would not have been known to Louisiana Newpack since the outset of the litigation. Louisiana Newpack concedes that many of the facts are not new facts, but contends they are attempting to explain the story as the facts have been developed.

Newpack's argument that it already has alleged a claim for trademark infringement in its First Amended and Restated Counterclaim is unavailing. In its First Amended and Restated Counterclaim, Newpack the words "trademark", "infringement", or "Lanham Act" are notably missing. Newpack states that its allegation that "Longhai, Ocean Feast, and Indigo conspired to commit the unlawful acts described and alleged herein" provides Longhai enough detail to provide notice of its trademark claim. *See* R. Doc. 155, ¶ 61.

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (*Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Where the complaint is devoid of facts that would put the defendant on notice as to what conduct supports the claims, the complaint fails to satisfy the requirement of notice pleading." *Anderson v. U.S. Dep't of Hous. & Urb. Dev.*, 554 F.3d 525, 528 (5th Cir. 2008). In addition, the Fifth Circuit has held "[u]nder Rule 8(a), a complaint must do more than name laws that may have been violated by the defendant; it must also allege facts regarding what conduct violated those laws." *Id.*

In this situation, Newpack's First Amended and Restated Counterclaim is completely devoid of both the name of the law allegedly violated as well as any facts supporting such cause of action. Newpack only alleges that Longhai committed some unspecified unlawful act, which in no way provides notice that such unlawful act it is referring to is a trademark infringement claim. This clearly fails short of the Federal Rules of Civil Procedure's requirement to give notice of a claim showing pleader is entitled to relief. The Court rejects Newpack's contention that it already pled a claim for trademark infringement claim against Longhai as its previous pleading does not comport with the notice pleading requirements of the Federal Rules of Civil Procedure.

Therefore, Newpack's allegations that Longhai knew prepacking "Oceana Company" product and selling it to Ocean Feast and Indigo was infringing on the Joint Venture's private label causing confusion is a new claim for trademark infringement against Longhai. As such, the Court finds that Louisiana Newpack's proposed pleading is attempting to add additional supporting facts, newly discovered facts, as well as a new cause of action against Longhai and will analyze it as such.

### A. **Rule 16(b)**

In determining whether good cause exists to allow amended pleadings outside the April 15, 2020 deadline imposed by the Scheduling Order (R. Doc. 20), the Court first considers movant's explanation for its failure to timely move for leave to amend. *Schubert Marine Sales*, 2003 WL 21664701, at *2.

### 1. **Louisiana Newpack's Explanation for its Failure to Timely Move for Leave to Amend**

The good cause standard requires the party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *Tiras v. Encompass Home & Auto Ins. Co.*, No. 4:10-CV-03266, 2012 WL 176437, at *2 (S.D. Tex. Jan. 18, 2012) (citing *S & W Enterprises*, 315 F.3d at 535). Court in this circuit have held, "[n]ewly discovered information acquired through discovery . . . constitute[s] good cause for an untimely leave to amend under Rule 16." *Rivera v. Robinson*, No. CV 18-14005, 2019 WL 4024939, at *2 (E.D. La. Aug. 27, 2019) (citing *Bayou Liberty Prop., LLC v. Best Buy Stores, LP*, 2015 WL 1415704, at *2 (E.D. La. Mar. 27, 2015)). *See EPL Oil & Gas, Inc. v. Tana Expl. Co., LLC*, No. CV 18-00757, 2018 WL 4489287, at *3 (E.D. La. Sept. 17, 2018) (finding good cause and valid explanation existed where party only learned of facts supporting the claims after the amendment deadline).

The Court, however, is reluctant to consider most of this discovery new. In addition, the Court questions why Newpack waited so long to get the discovery if they considered Longhai's standard of practices and policies crucial to their conspiracy and negligent and tortious interference with a contract claim. *See Carollo v. ACE Am. Ins. Co.*, No. CV 18-13330, 2019 WL 5294933, at *6 (E.D. La. Oct. 18, 2019), *review denied*, No. CV 18-13330-WBV-KWR, 2019 WL 5800389 (E.D. La. Nov. 7, 2019) (finding no good cause shown where party waited to pursue discovery to support their theory until the last moments in purview of *Hensgens* factors).

At the hearing, Louisiana Newpack clarified that even though is filed its original counterclaim on May 26, 2020, it chose to wait to propound discovery until March 18, 2021 as a courtesy to Longhai while certain pending motions to dismiss remained pending. While the Court's questions whether Newpack could have acted more diligently in discovering these newly learned facts prior to the deadlines, it will not fault Newpack for working cooperatively with opposing counsel. Moreover, even though the proposed amended and restated counterclaim contains many known facts, because it also contains some newly discovered facts, the Court finds that these newly discovered facts can constitute good cause for untimely leave to amend. As such, the Court weighs the first factor in favor of allowing the amendment.

## 2. Importance of the Amendment

Next, the Court considers whether the amendments are important. Here, Plaintiff contends that the amendments are important to provide factual support to defeat the motion to dismiss. Longhai does not address this factor.

Courts in this circuit have held that counterclaims that do not assert a cause of action, claim for relief, or additional party, but only provide additional details to support claims already alleged, are not important. *See Doe v. Harris Cty., Texas*, No. CV H-16-2133, 2017 WL 4402590, at *5

(S.D. Tex. Sept. 29, 2017); *Shaunfield v. Experian Info. Sols., Inc.*, No. 3:12-CV-4686-M (BH), 2013 WL 12354439, at *5 (N.D. Tex. Dec. 20, 2013); *Clayton v. ConocoPhilips Co.*, No. Civ. A. No. H–08–3447, 2010 WL 1463466, at *3 (S.D. Tex. Apr. 12, 2010) (the proposed amendments were not important where it appeared that the plaintiff merely sought to clarify his claim).

Longhai contends that the claims should be dismissed because it cannot be held liable for a conspiracy where the contract did not contain an exclusivity provision, a fact already determined by the district judge, nor can it be liable for negligent/intentional interference with a contract where, as a non-member to the Joint Venture, it owed no fiduciary duty to Newpack. This is a pure legal question. Longhai has not challenged the sufficiency of the factual allegation. Therefore, the addition of further factual allegations will not overcome the issue before the District Judge in the pending motion to dismiss.

Notwithstanding, as the Court noted previously, it construes Newpack's pleading as adding a new claim. Here, it is undisputed that Newpack already has claims against Jeffrey Martinez-Malo an Indigo for trademark infringement arising out of the same acts that give rise to Newpack's potential trademark infringement claim against Longhai. In addition, much discovery has gone into these claims.

This Court has made clear a new claim is important only when the party was unaware of a potential cause of action at the time that the original pleading was filed. *United States ex rel. Gray v. Lockheed Martin Corp.*, No. CV 05-4201, 2008 WL 11353746, at *2 (Wilkinson, M.J.) (E.D. La. June 16, 2008). Still, the Court has an "overreaching interest . . . in efficiently bringing related matters to trial at the same time." *In re Pool Prod. Distribution Mkt. Antitrust Litig.*, No. MDL 2328, 2012 WL 3947608, at *2 (Vance, J.) (E.D. La. Sept. 7, 2012) (citations omitted) (finding proposed allegations adding new claim important). As the Court finds that judicial efficiency

would be served by hearing the claims at once, the Court weighs this factor slightly in favor of allowing the amendment.

### 3. The Potential Prejudice in Allowing the Amendment

Next, the Court considers the potential prejudice in allowing the amendment. While the amendments do not fundamentally alter the nature of the case, the Court notes the impending trial deadlines. *See Mayeaux v. Louisiana Health Serv. & Indem. Co.*, 376 F.3d 420, 427 (5th Cir. 2004) (finding good cause not supported where proposed amendment fundamentally altered the nature of the case as opposed to proposing alternative legal theories for recovery on the same underlying facts). Still, dispositive motions have been filed—including motions for summary judgment. Moreover, the case has been ongoing for many years and subject to multiple continuances. *See Halmekangas v. State Farm Fire & Cas. Co.*, No. CV 06-3942, 2008 WL 11352614, at *2 (Wilkinson, M.J.) (E.D. La. Oct. 8, 2008) ("The potential prejudice to defendants in their trial preparation and to their ability to have these lawsuits resolved after much delay is substantial."). Given the amendment is late stage and adds a new claim yet to be explored by Longhai, the proposed pleading would likely cause prejudice. As such, the Court considers the availability of a continuance to cure the prejudice.

### 4. The Availability of a Continuance to Cure that Prejudice

In this situation, a trial continuance to cure prejudice also appears necessary, but, given the state of the case, a continuance already seems likely.  Notwithstanding, the District Judge has already had to continue this case on multiple occasion due to the unavailability of jury  trials due to the COVID-19 pandemic. *See* R. Docs. 99, 117. As recently, as July 12, 2021, the District Judge issued an order extending the Jury trial without date. *See* R. Doc. 313. The District Judge was clear in the order that only the date of the trial would be continued, and the other pretrial and

preconference dates would remain in effect. *Id.* The Court, therefore, finds that a continuance has cured the any potential prejudice.

Therefore, considering the totality of Rule 16(b) factors, the Court finds that Louisiana Newpack has established good cause in favor of allowing the proposed amendments. As such, the Court will proceed to review  the amendments pursuant to Rule 15(a) and specifically for futility.

## B. <u>Federal Rule of Civil Procedure 15(a)</u>

As outlined by the Fifth Circuit, courts in this circuit examine five considerations to determine whether to grant a party leave to amend a complaint: (1) undue delay; (2) bad faith, or dilatory motive on the part of the movant; (3) repeated failure to cure deficiencies by amendments previously allowed; (4) undue prejudice to the opposing party by virtue of allowance of the amendment; and (5) futility of the amendment. *Cooper v. Bolton*, No. CV 12-2934, 2014 WL 12719432, at *3 (E.D. La. May 1, 2014) (citing *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003)). Absent any of these factors, leave to amend a complaint should be "freely given." *Id.* (citing *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004)).

Delay alone does not justify denial of a motion to amend. *Seth B. ex rel. Donald B. v. Orleans Par. Sch. Bd.*, No. CIV.A. 14-1857, 2015 WL 1726407, at *3 (E.D. La. Apr. 15, 2015) (citation omitted). "Rather, denial of a motion under Rule 15(a) is appropriate where the delay is "undue" in that it prejudices the nonmoving party or places an unfair burden on the Court." *Id.* Although Rule 15(a) does not impose a time limit "for permissive amendment, 'at some point, time delay on the part of a plaintiff can be procedurally fatal.'" *Id.* (citing *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir.2004) and *Whitaker v. City of Houston*, 963 F.2d 831, 836 (5th Cir.1992)). In such a situation, the plaintiff bears the burden of showing that delay to be " 'due to oversight, inadvertence, or excusable neglect.'" *Id.*

The Court notes that Longhai contends that the delay in Newpack's filing motion for leave to amend is undue. As the Court noted above, while the proposed amendment is quite late stage, the matter has been continued which cures any prospect of prejudice. The Court, accordingly, does not consider the burden undue. Moreover, the Court sees nothing to indicate that Newpack intentionally filed the proposed amendment dilatory to cause burden.

In considering futility, "[a]n amendment is futile only if it fails to allege any facts which could conceivably support a valid theory of liability." *JRL Enterprises v. Procorp, Inc.*, No. CIV.A. 01-2893, 2002 WL 465196, at *3 (Roby, M.J.) (E.D. La. Mar. 25, 2002) (citing *Holoway v. Triola*, 1997 WL 791472, *2 (E.D.La. 1997)). "Courts have held that there is a substantial burden on the objecting party to show the futility of a proposed amendment." *Id.* "To avoid this premature determination of the merits, the standard for denying an amendment based on futility is that if a proposed amendment is not clearly futile, then denial of leave to amend is improper." *Talamatez v. Pamerleau*, No. CV SA-16-CA-12-DAE, 2016 WL 11394983, at *5 (W.D. Tex. Aug. 5, 2016), *report and recommendation adopted sub nom. Talamantez v. Bexar Cty. Sheriff*, No. 5:16-CV-012-DAE, 2016 WL 5390154 (W.D. Tex. Sept. 26, 2016).

### 1. Conspiracy

The Court first considers Louisiana Newpack's claim for conspiracy especially where Newpack's conspiracy claims against Ocean Feast and Indigo, the alleged co-conspirators, have been dismissed with prejudice.

Pursuant to Louisiana law, conspiracy itself is not an actionable claim, and must be based on an underlying tort. *Olivier v. Republic Fire & Cas. Ins. Co.*, No. CIV.A. 13-4689, 2013 WL 3283480, at *2 (Lemmon, D.J.) (E.D. La. June 27, 2013)(citing *Crutcher–Tufts Resources, Inc. v.*

*Tufts*, 38 So.3d 987, 991 (La.Ct.App. 2010) (citing *Ross v. Conoco, Inc.*, 828 So.2d 546 (La. 2002)) (quotations omitted).

> Louisiana Civil Code article 2324 provides that a person who conspires with another person to commit an intentional or willful act is answerable, *in solido*, with that person, for the damage caused by such act. Thus, the actionable element of the conspiracy claim is the tort which the conspirators agree to perpetrate and which they actually commit in whole or in part. To recover under a conspiracy theory of solidary liability, a plaintiff must prove that an agreement existed to commit an illegal or tortious act; the act was actually committed and resulted in plaintiff's injury; and there was an agreement as to the intended outcome or result.

*Id.*

Stated differently, under Louisiana law, conspiracy is a mechanism that must exist for plaintiff to impose solidary liability, but mere existence of conspiracy is not basis for liability. *Felder's Collision Parts, Inc. v. Gen. Motors Co.*, 960 F. Supp. 2d 617, 639 (M.D. La. 2013); *New Orleans Jazz & Heritage Found., Inc. v. Kirksey*, 2009-1433 (La. App. 4 Cir. 5/26/10), 40 So. 3d 394, 408, *writ denied*, 2010-1475 (La. 10/1/10), 45 So. 3d 1100 ("Civil conspiracy is not a substantive tort in Louisiana; the concept is relevant only to the distribution of quantum after liability is determined."); *Barbe v. Ocwen Loan Servicing, LLC*, 383 F. Supp. 3d 634, 645 (Feldman, D.J.) (E.D. La. 2019) ("In other words, a civil conspiracy is simply a means to impute liability for an underlying tort.").

As Louisiana law on conspiracy seeks to hold joint tortfeasors liable *in soldio*, more than one joint tortfeasor must be identified. *See, e.g., Brand Coupon Network, LLC v. Catalina Mktg. Corp.*, No. CIV.A. 11-00556-BAJ, 2014 WL 6674034, at *6 (M.D. La. Nov. 24, 2014) (finding where other defendants of alleged conspiracy were previously dismissed that Court cannot find one defendant conspired alone and pleading failed to state claim for conspiracy); *see also*

*Templeton v. CB Med., LLC*, No. 1:19-CV-01292, 2020 WL 6888044, at *5 (W.D. La. Nov. 24, 2020) ("It is well-settled that a natural person cannot conspire with himself.").

Here, the Court need not address the sufficiency of the factual allegations used to support the conspiracy claim where, on March 2, 2021, the Court dismissed with prejudice Louisiana Newpack's conspiracy claims against Ocean Feast and Indigo. *See* R. Doc. 140; *see also* R. Doc. 267 (considering motion for reconsideration on issue of conspiracy claim). Despite the fact that the conspiracy claims against Ocean Feast and Indigo were dismissed with prejudice, Newpack attempts to bolster its factual allegations that Longhai participated in a conspiracy with the dismissed alleged co-conspirators, who can no longer be held liable *in solido*.

To prove conspiracy "with another person" there must be a showing that there was an agreement between at least two people. Louisiana Newpack cannot support a claim for conspiracy against Longhai where Longhai's alleged co-conspirators have already been dismissed with prejudice.  No other potential co-conspirators are identified in the most recent proposed pleading and Longhai, as a matter of law, cannot be a sole conspirator. The Court, therefore, finds the facts, as used to support conspiracy cause of action, are futile.

2.  **Negligent and Tortious Interference with Contract**

Next, the Court considers Louisiana Newpack's claim for negligent and intentional tortious interference with a contract. Louisiana Newpack's claim for negligent and tortious interference with contract remains pending against Longhai, Ocean Feast, and Indigo. At the hearing, Newpack clearly specified that the only tort and negligence claim that it is alleging is in connection to this claim. According to Newpack, Zeng's title was Vice President of Sales for Ocean Feast and Chief Operating Officer of Oceana—this fact, however, is not contained in any pleading. In fact, no corporate officer is identified in the pleadings.

> Louisiana law severely limits the tortious interference with a contract cause of action. Generally, the claim must be made against a corporate officer rather than a corporate entity in order to draw a distinction between tort and contract liability. The tortious interference cause of action is only applicable when imposing a tort duty is more appropriate due to the officer's actions. In an ordinary case, for example, where an officer breaches a contract for the benefit of his corporation and acts within his authority, the corporation . . . would be liable in contract, not tort. Thus, tort actions against corporate entity defendants should be curtailed when a more appropriate breach of contract action is available. At least, the defendant must owe the plaintiff 'a narrow, individualized duty,' because a duty must exist for recovery of damages pursuant to La. Civ.Code Ann. Art. 2315. Whether or not such a duty exists is a question of law.

*Ocean Mexicana, S.A. DE C.V. v. Cross Logistics, Inc.*, No. CIV.A. 2:13-CV-06657, 2014 WL 2441103, at *4 (E.D. La. May 30, 2014) (citing *9 to 5 Fashions, Inc. v. Spurney*, 538 So. 2d 228 (La. 1989)) (citations omitted); *see also Harris Builders, L.L.C. v. URS Corp.*, 861 F. Supp. 2d 746, 748 (E.D. La. 2012).

Here, Newpack fundamentally misunderstands the central holding by the Louisiana Supreme Court in *9 to 5 Fashions*, 538 So. 2d 228. [7] In *9 to 5 Fashions*, the Louisiana Supreme Court first permitted an actionable claim for intentional interference with a contract. *Id.* at 234. In doing so, the Louisiana Supreme Court explicitly rejected any notion that it was adopting the broad expanded common law doctrine of interference with a contract and noted "only a corporate officer's duty to refrain from intentional and unjustified interference with the contractual relation between his employer and a third person." *Id.*

According to *9 to 5 Fashions*, in order to state a claim, Newpack must allege that some Longhai officer acted against the interest of the corporation to violate a contractual relation. *Id.* at 231. Again, the Louisiana Supreme Court is clear that the fiduciary duty owed by the corporate

---

[7] Here, the Court notes that Louisiana Newpack urged the Court to adopt the standard for intentional interference with a contract as articulated in its proposed jury instructions. *See* R. Doc. 307, p. 71. The Court declines to apply that standard where Newpack cites to multiple cases from Florida and Kansas, which have a much broader causes of action for intentional interference with a contract than does the state of Louisiana.

officer is not to the other parties to the contract, but to the corporate officer's own corporation. *Id.* at 232. Only when the corporate "officer's action is detrimental to the corporation" could s/he be potentially responsible for tortious interference with a contract. *Id.*; *see also Smitty's Supply, Inc. v. Hegna*, No. CV 16-13396, 2019 WL 1077294, at *3 (E.D. La. Mar. 7, 2019) ("*Spurney* recognized only an action wherein a corporate officer causes his own corporation to breach a contract between *his own corporation* and the plaintiff.") (quoting *Matrix Essential, Inc. v. Emporium Drug Mart, Inc.*, 756 F. Supp. 280, 284 (W.D. La. 1991), *aff'd sub nom. Matrix Essentials, Inc. v. Emporium Drug Mart, Inc., of Lafayette*, 988 F.2d 587 (5th Cir. 1993) (emphasis in original)).

These requirements for stating a claim have been construed very narrowly. Thus, in order to plead an actionable claim for intentional interference with a contract, a party must allege the following elements:

> (1) the existence of a contract or a legally protected interest between the plaintiff and the corporation; (2) the corporate officer's knowledge of the contract; (3) the officer's intentional inducement or causation of the corporation to breach the contract or his intentional rendition of its performance impossible or more burdensome; (4) absence of justification on the part of the officer; (5) causation of damages to the plaintiff by the breach of contract or difficulty of its performance brought about by the officer.

*Id.* at 234.

Newpack, however, conflates this standard. Here, the only contract identified between Longhai and Louisiana Newpack is the accounts receivable for three lots of seafood products in the purchase price of $1,368,788.03. *See Longhai Desheng Seafood Stuff Co. Ltd. v. Louisiana Newpack Shrimp, Inc. et al* (2:20-cv-00782-WBV-KWR) (R. Doc. 1, ¶¶ 12-13).

In order to state a claim against Longhai, Newpack needs to allege that a Longhai officer acted in some way antithesis to the interest of Longhai, and not that Longhai's officer acted against

the interest of another company for which the officer owes no fiduciary duty. Notwithstanding, Newpack's proposed counterclaim pleads the exact opposite, *e.g.*, Longhai's unnamed officer undertook action to sell the prepacked "Oceana Company" can crab which actually served to benefit Longhai as a corporation as the corporation was able to receive a purchase order and profit from any alleged deviation from its standards of practice. *See id.* at 232 (noting fidelity and freedom of action aimed toward corporate benefit should not be curtailed). This alleged action was solely against the interest of the Joint Venture of which Longhai is not a member.

In addition, Newpack's proposed pleading names Longhai, the corporate entity, and not an officer, an approach which Louisiana courts have rejected. Newpack also fails to identify some duty that Longhai owed to it. Finally, and perhaps most importantly, Newpack does not allege that Longhai breached the contract it has with Newpack. The only agreement alleged to have been breached is the Joint Venture Agreement, which Longhai is not a party to. *See* R. Doc. 261-4, p. 2.

Because the proposed pleading does not include any of these necessary allegations, the Court finds the addition of the new facts is futile to support this cause of action.

### 3. Trademark Infringement Claim

Finally, the Court considers Louisiana Newpack's addition of a trademark infringement claim against Longhai. Newpack makes allegations such as "Longhai knew, or through the exercise of ordinary and reasonable diligence should have known– including the different way in which the Infringing Order was placed – that the shipment of Oceana brand crabmeat to 'Oceana Company' was illegal and likely to infringe upon the trademark of the Joint Venture if sold to an entity other than the Joint Venture." R. Doc. 261-4, ¶ 63(cc). Newpack later alleges Indigo's and Martinez-Malo's use of this product in commerce was likely to cause confusion. *Id.* at ¶ 63(qq).

In addition, Newpack alleges perfunctorily, that there was "indeed actual confusion, between the parties' competing uses of the Oceana brand." *Id.* at ¶ 63(rr). Newpack, however, fails to separate these allegations as a distinct count for relief. *See* R. Doc. 261-4.

Newpack is not clear whether it is claiming a word mark or design mark.[8] The parties concede, however, that there is no officially registered trademark on the "Oceana Company". As such, the Court applies the law regarding unregistered trademarks.

In addition to providing a cause of action for trademark infringement, the Lanham Act, 15 U.S.C. § 1125(a) also provides a cause of action for unfair competition regardless of registration of a mark. In pertinent part, the Act states:

(a)  Civil action

(1)  Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

*Snowizard, Inc. v. Robinson*, No. CIV.A. 11-515, 2011 WL 2681197, at *7 (Lemelle, D.J.) (E.D. La. July 8, 2011) (citing 15 U.S.C. 1125(a)).

---

[8] Here, the Court also questions the capacity of Newpack to bring a claim of trademark infringement against an entity on behalf of the Joint Venture, where Newpack alleges the trademark was owned collectively by the Joint Venture and where the Joint Venture itself has not instituted a claim but resolves this issue on other grounds.

"Unfair competition refers to situations in which a 'defendant pass[es] of his goods or services as those of the plaintiff by virtue of substantial similarity between the two,' leading to consumer confusion." *Id.* (citing *Chevron Chemical Co. v. Voluntary Purchasing Groups, Inc.*, 659 F.2d 695, 701 (5th Cir. 1981) (quoting *Boston Prof'l Hockey Assoc'n v. Dallas Cap & Emblem Mfg. Co.*, 510 F.2d 1004, 1010 (5th Cir. 1975))). "An action for unfair competition applies to unregistered marks when the 'unregistered marks used by the plaintiff are so associated with its goods that the use of the same or similar marks by another company constitutes a representation that its goods come from the same source.'" *Id.* (citing *Boston Prof'l Hockey Assoc'n, 510 F.2d at 1010 (quoting Joshua Meier Co. v. Albany Novelty Mfg. Co.*, 236 F.2d 144, 147 (2nd Cir. 1956))). "[T]he same facts which would support an action for trademark infringement would also support an action for unfair competition." *Boston*, 510 F.2d at 1010. *See also Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.*, 549 F.2d 368, 386 (5th Cir. 1977) ( "[B]oth [actions] turn primarily on the likelihood of customer confusion.").

### i.    *Direct Trademark Infringement Claim*

In order to state a direct claim for unfair competition of an unregistered trademark under the Lanham Act "a plaintiff must allege that it had valid ownership of a mark, and that the defendant's use of the mark in commerce creates a likelihood of confusion as to the origin, sponsorship, or affiliation of his goods." *721 Bourbon, Inc. v. B.E.A., Inc.*, No. CIV.A. 11-710, 2011 WL 3747231, at *5 (Feldman, D.J.) (E.D. La. Aug. 25, 2011).

Here, in reviewing the pleadings, Louisiana Newpack does not allege that Longhai used the "Oceana Company" mark in commerce. *See* R. Doc. 261-4. Instead, Louisiana Newpack alleges that Indigo and Martinez-Malo used the mark in commerce in a manner likely to cause confusion. R. Doc. 261-4, ¶ 63 (qq). Longhai only allegedly supplied Indigo with such product.

Because Louisiana Newpack fails to allege that Longhai used the mark in commerce, Louisiana Newpack fails to state a direct claim against Longhai for unfair competition under the Lanham Act.

### ii. Indirect Trademark Infringement Claim

As Louisiana Newpack does not state a direct claim for trademark infringement, the Court reviews the pleadings to determine whether Louisiana Newpack states a claim for indirect or secondary infringement under the Lanham Act. In *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844 (1982), the Supreme Court developed the judicially created doctrine known as contributory infringement under the Lanham Act. In *Inwood Laboratories*, the Supreme Court held that a person could be liable for trademark infringement not only through direct infringement but through secondary indirect infringement, *i.e.*, the inducement or contribution to infringement. *Id. at 847.* In doing so the Supreme Court stated:

> [L]iability for trademark infringement can extend beyond those who actually mislabel goods with the mark of another. Even if a manufacturer does not directly control others in the chain of distribution, it can be held responsible for their infringing activities under certain circumstances. Thus, if a manufacturer or distributor intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement, the manufacturer or distributor is contributorily [sic] responsible for any harm done as a result of the deceit

*Id.* at 853–54. *See also 1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1240 (10th Cir. 2013) ("Akin to aiding and abetting, contributory infringement generally consists of either intentionally causing or knowingly facilitating the infringement of the plaintiff's mark by a third party.").

"A party is liable for contributory infringement when it, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another." *Threadgill*

*v. Orleans Par. Sch. Bd.*, No. CIV.A. 02-1122, 2013 WL 4591402, at *2 (Vance, D.J.) (E.D. La. Aug. 28, 2013) (citing *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 791 (5th Cir. 1999) (internal quotation marks omitted)).

In order to state a claim for contributory infringement, a claim of direct infringement must be alleged. *Phoenix Ent. Partners LLC v. Boyte*, 247 F. Supp. 3d 791, 797 (S.D. Tex. 2017) ("There must be underlying direct infringement by someone other than the secondarily liable defendant in order to hold that defendant liable on a contributory infringement theory."); *Threadgill*, 2013 WL 4591402, at *2 ("It follows that an allegation of direct infringement is a logical predicate for a claim of contributory infringement."); *Tru-Line, Inc. v. Philadelphia Resins Corp.*, No. CIV A 84-1067, 1984 WL 1403, at *2 (E.D. La. July 11, 1984), *aff'd*, 765 F.2d 160 (Fed. Cir. 1985) ("[D]irect infringement is a condition precedent to both claims for active inducement to infringe and for contributory infringement."); *Wright's Well Control Servs., LLC v. Oceaneering Int'l, Inc.*, No. CV 15-1720, 2017 WL 568781, at *5 (E.D. La. Feb. 13, 2017) ("[I]ndirect infringement claims can arise only in the presence of direct infringement.").

Since *Inwood Laboratories*, the doctrine of contributory trademark infringement has been extended multiple times. Federal courts have held that where it is alleged that a producer continued to supply counterfeit products to a third-party not holding the trademark rights after it had reason to know the rights to the trademark were held by another that the pleading sufficiently states a claim for contributory trademark infringement. *See Rosenshine v. A. Meshi Cosms. Indus. Ltd.*, No. 18-CV-3572 (LDH), 2020 WL 1914648, at *10 (E.D.N.Y. Mar. 30, 2020); *see also Ferring B.V. v. Fera Pharms., LLC*, No. CV 13-4640 SJF AKT, 2015 WL 4623507, at *8 (E.D.N.Y. July 6, 2015), *report and recommendation adopted*, No. 13-CV-4640 SJF AKT, 2015 WL 4611990 (E.D.N.Y. July 31, 2015) (finding company that continues to provide infringing products, labels,

packaging, and advertising to seller with the knowledge seller uses these items in commerce in a way that directly infringes on trademark sufficiently states a claim for contributory infringement liability).

In considering the knowledge prong of a contributory infringement claim, courts have held that it must be alleged that defendants engaged in contributory trademark infringement by _knowingly_ supplying services to an alleged infringer that they knew or had reason to know was engaging in allegedly infringing activity. *Lopez v. Bonanza.com, Inc.*, No. 17 CIV. 8493 (LAP), 2019 WL 5199431, at *15 (S.D.N.Y. Sept. 30, 2019) (emphasis added). Courts are strict with this knowledge prong, holding "the doctrine of contributory trademark infringement should not be used to require defendants to refuse to provide a product or service to those who merely _might_ infringe the trademark." *Id.* (emphasis in the original). In addition, Courts have held that there is no affirmative duty on the third-party contributory infringer to determine the infringing activities. *See Ford Motor Co. v. Greatdomains.Com, Inc.*, 177 F. Supp. 2d 635, 646 (E.D. Mich. 2001).

Courts have also held that the plaintiff must make specific allegations showing that the alleged contributory infringer was made aware of the alleged infringing conduct in connection with their services. *Compare Pragmatus AV, LLC v. Yahoo! Inc.*, No. CIV.A. 11-902-LPS, 2012 WL 6044793, at *15 (D. Del. Nov. 13, 2012) (holding that specific factual allegations must be plead regarding knowledge; therefore, pleading must not only state notice of infringement given but must contain the contents of the infringement notice), *report and recommendation adopted sub nom. Pragmatus AV, LLC v. Yahoo%! Inc.*, No. CA 11-902-LPS-CJB, 2013 WL 2295344 (D. Del. May 24, 2013) *with Glob. Merch. Servs., Ltd. v. Sunfrog, LLC*, No. 17 CIV. 10154 (AKH), 2018 WL 11223365, at *2 (S.D.N.Y. Aug. 9, 2018) (finding plaintiff sufficiently pled knowledge prong of contributory infringement where it was alleged that plaintiff sent cease and desist letter to

indirect infringer, indirect infringer responded by asking pointing plaintiff to its "report an infringement tool", and plaintiff provide a list of over one hundred and twenty intellectual property listing that where being infringed).

Therefore, pleadings that only contains generalizations that the indirect infringer knew or should have known of the direct infringement fail to state a claim as factually insufficient. *Lopez*, 2019 WL 5199431, at *15 (finding that plaintiff failed to state a claim for contributory infringement where there was not a single allegation as to defendant's knowledge of alleged infringing activity despite sending generalized infringement notice to defendants); *see also Marvullo v. Gruner & Jahr*, 105 F. Supp. 2d 225, 230 (S.D.N.Y. 2000) (finding plaintiff failed to state a claim for contributory infringement where there was no allegations that the third-party contributory infringer had any knowledge of alleged direct infringer's conduct).

Although, in the Eastern District of Louisiana, the Court has not separately addressed the issue of pleading knowledge of underlying infringement in specificity when considering whether allegations state a claim for contributory infringement, the Court has considered the allegations regarding the indirect infringer's knowledge of the underlying infringing activities. *See Annie Sloan Interiors, Ltd. v. Davis Paint Co.*, No. 18-CV-08431, 2019 WL 1967029, at *5 (Van Meerveld, M.J.) (E.D. La. May 2, 2019). In addition, courts in the Fifth Circuit have likewise dismissed claims for contributory infringement where the pleadings failed to contain allegations that give rise to plausible inference that indirect infringer had pre-suit knowledge of the alleged underlying infringement. *Affinity Labs of Texas, LLC v. Toyota Motor N. Am.*, No. W:13-CV-365, 2014 WL 2892285, at *6 (W.D. Tex. May 12, 2014) (finding plaintiff failed to state a claim where plaintiff did not specifically allege the basis of alleged indirect infringer's knowledge).

The Court first notes that it is undisputed that Louisiana Newpack has made direct claims for trademark infringement against Oceana Seafood, Indigo, and Jeffrey Martinez Malo. *See* R. Docs. 29, 146.

In its newly proposed pleading, Louisiana Newpack alleges that Longhai pressured Ocean Feast/Zeng to place an order that infringed upon the Ocean Company label outside the Joint Venture. R. Doc. 261-4, ¶ 63(e). Louisiana Newpack further alleges that due to Longhai's insistence, on February 28, 2019, that Zeng and Martinez-Malo placed an order for Oceana branded crabmeat through the name of the Joint Venture that infringed upon the trademark of the Joint Venture. *Id.* at ¶ 63(s).

Louisiana Newpack alleges that Longhai knew or should have known by the way Zeng placed the order for crabmeat on Oceana Company letterhead, instead of Louisiana Newpack letter head as all other orders were placed, that a shipment of Oceana Company labeled crabmeat was likely to infringe upon the Joint Venture's trademark. *Id.* at ¶ 63(cc). In addition, Louisiana Newpack alleges that Longhai knew or should have known that Indigo would use the products that Longhai supplied to infringe upon the Oceana trademark owned by the Joint Venture. *Id.* at ¶ 63(ii). Louisiana Newpack identified Indigo as the direct competitor of the Joint Venture. *Id.*

Here, the Court finds that Louisiana Newpack fails to make specific allegations as to Longhai's knowledge, and, thus, fails to meet the knowledge prong of the contributory infringement claim.

Based on Louisiana Newpack's pleadings, the Joint Venture collectively owned the "Oceana Company" trademark, and not Louisiana Newpack. According to Newpack, Longhai received an order from Zeng of Ocean Feast, a Joint Venture member on "Oceana Company" letterhead. To be clear, "Oceana Company" is the alleged name of the Joint Venture, although no

mention of trademark or joint venture name is contained in the Joint Venture Agreement, who Newpack claims owns the trademark. For some reason, however, Longhai was supposed to deduce because the order came in unusually on "Oceana Company" letterhead that the order was intend to circumvent the Joint Venture Agreement and the product was to be sold in a manner that infringed upon the Joint Venture's trademark.

These allegations do not meet the threshold requirement of pleading actual or constructive knowledge of underlying infringing activity in order to state a contributory infringement claim. First, Longhai had no affirmative duty to determine why the order was placed on separate letterhead or if Indigo, also a member of the Joint Venture, was going to sell the product in a manner that infringement upon the alleged trademark. *See Ford Motor Co.*, 177 F. Supp. 2d at 646. In addition, there is no allegation that an infringement notice or cease and desist letter of any sort was sent to Longhai providing it notice of the alleged infringement.

From the Court's reading of the proposed pleading, no one placed Longhai on notice of any alleged infringement, Longhai was dealing directly with members of the Joint Venture who allegedly owned the trademark, and Longhai did not encourage the Joint venture to sell outside the Joint Venture but rather buy up the pre-labeled inventory that Longhai had in stock. Put simply, there is absolutely no allegations contained in the proposed pleading that would lead the Court to believe that Longhai knew the product would be sold in a way that infringed on the Joint Venture trademark or even that the Joint Venture was the holder of a trademark.

Louisiana Newpack's allegations that Longhai knew or should have known that Indigo would use the Oceana branded product to infringe on the Oceana trademark are conclusory at best. Formulaic recitations of elements that lack the necessary specific factual allegations in support,

fall short of stating a claim. As such, the Court finds that Louisiana Newpack's claim for contributory infringement against Longhai is factually insufficient and fails to state a claim.

## IV.    <u>Conclusion</u>

Accordingly,

**IT IS ORDERED** that the **Louisiana Newpack's Motion for Leave to File Second Amended and Supplemental Counterclaim as to Counts One and Two to the First Amended Counterclaim (R. Doc. 261)** is **DENIED**.

New Orleans, Louisiana, this 6<u>th</u> day of August 2021.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**