UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LOUISIANA NEWPACK SHRIMP, INC.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-12948-WBV-KWR** |
| **OCEAN FEAST OF CHINA, LTD, ET AL.** | **SECTION: D (4)** |

*Consolidated with*

| | |
|---|---|
| **LONGHAI DESHENG SEAFOOD STUFF CO. LTD** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-782-WBV-KWR** |
| **LOUISIANA NEWPACK SHRIMP, INC., ET AL.** | **SECTION: D (4)** |

*Consolidated with*

| | |
|---|---|
| **OCEANA SEAFOOD PRODUCTS, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO. 21-00003-WBV-KWR** |
| **LOUISIANA NEWPACK SHRIMP COMPANY, ET AL.** | **SECTION: D (4)** |

### ORDER and REASONS[1]

Before the Court is Defendants' Motion for Summary Judgment on OSP's Claims, filed by Louisiana Newpack Shrimp Company, Inc., Gulf Marine Products Co., Inc., A La Carte Specialty Foods, LLC, and Edward Lee (collectively,

---

[1] Unless otherwise indicated, all of the citations to the record in this Order refer to documents filed in the master file of this consolidated matter, 19-cv-12948.

"Defendants").[2] Oceana Seafood Products, LLC opposes the Motion,[3] and Defendants have filed a Reply.[4]

After careful consideration of the parties' memoranda and the applicable law, the Motion is **GRANTED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND[5]

This consolidated matter arises from a failed joint venture between Louisiana Newpack Shrimp Company, Inc. ("Louisiana Newpack"), Ocean Feast of China, Ltd. ("Ocean Feast"), and Indigo Seafood Partners, Inc. ("Indigo"), that operated between 2017 and 2019. On June 17, 2017, Louisiana Newpack, Ocean Feast, and Indigo executed a Joint Venture Agreement, effective March 15, 2017, to purchase, import and sell seafood products from international seafood manufacturers.[6] Edward Lee ("Lee") signed the Joint Venture Agreement as the legal representative of Louisiana Newpack, Arthur Zeng ("Zeng") signed as the legal representative of Ocean Feast, and Jeffrey G. Martinez-Malo ("Martinez-Malo") signed as the legal representative of Indigo.[7]

On or about September 24, 2019, Louisiana Newpack filed a Petition for Declaratory Judgment, Suit on Open Account and Damages in Louisiana state court, asserting eleven causes of action against Ocean Feast, Indigo, Zeng and Martinez-

---

[2] R. Doc. 214.
[3] R. Doc. 233.
[4] R. Doc. 247.
[5] In the interest of judicial economy, and because the factual background of this case has been extensively detailed in several prior Orders (*See,* R. Docs. 129, 132, 140, & 339), the Court will limit its recitation of the factual and procedural background to matters relevant to the instant Motion.
[6] R. Doc. 1-1 at p. 3; R. Doc. 29 at pp. 3-4; R. Doc. 29-1.
[7] R. Doc. 29-1 at p. 5.

Malo.[8] The case was removed to this Court on October 3, 2019 (hereafter, "the *Louisiana Newpack* case").[9] Most of the claims stem from Louisiana Newpack's allegation that Indigo and Ocean Feast breached the Joint Venture Agreement and their fiduciary duties owed to the joint venture by procuring, marketing, and selling seafood product outside of the joint venture, despite agreeing orally and in writing to the exclusive nature of the joint venture.[10]

On March 6, 2020, Longhai Desheng Seafood Stuff Co., Ltd. ("Longhai") filed a Complaint for Breach of Contract and Claim on Open Account in this Court against Louisiana Newpack and Lee, seeking to recover an outstanding balance of $998,188.03 allegedly owed by Louisiana Newpack for three lots of crabmeat that it purchased from Longhai in November and December of 2018 (hereafter, the "*Longhai* case").[11] On April 20, 2020, Louisiana Newpack and Lee filed a Motion to Consolidate the two cases.[12] The Court granted the motion, and the cases were consolidated on May 29, 2020.[13]

Unbeknownst to this Court, on February 5, 2020, Oceana Seafood Products, LLC ("Oceana Seafood") filed a Complaint in the Southern District of Florida against Louisiana Newpack, Gulf Marine Products Co., Inc., A La Carte Specialty Foods, LLC, and Edward Lee (collectively, "Defendants"), asserting claims for unfair competition under federal and state law, civil conspiracy to engage in unfair

---

[8] R. Doc. 1-1.
[9] R. Docs. 1 & 1-1.
[10] R. Doc. 1-1 at pp. 3-13.
[11] R. Doc. 1 in Civ. A. No. 20-782-WBV-KWR, *Longhai Desheng Seafood Stuff Co. Ltd. v. Louisiana Newpack Shrimp Company, Inc., et al.*
[12] R. Doc. 16 in the *Longhai* case.
[13] R. Doc. 36 in the *Longhai* case; R. Doc. 54.

competition, and tortious interference with a business relationship, all stemming from Oceana Seafood's alleged ownership of a trademark in the OCEANA brand of seafood products (the "*Oceana Seafood* case").[14] Oceana Seafood filed its Complaint four months after Louisiana Newpack filed the *Louisiana Newpack* case, but two months before Louisiana Newpack added Oceana Seafood as a defendant in that case.[15] Oceana Seafood alleges that it obtained its rights in the OCEANA trademark by assignment from Indigo, "to buy and sell seafood products in general and crabmeat in particular."[16] Oceana Seafood also alleges that Indigo retained Ana Maria Gomez Sampedro in March 2017 to develop the OCEANA mark and accompanying logo "for Indigo's use."[17] According to the Complaint, Indigo volunteered to let the joint venture (created by Indigo, Ocean Fest, and Louisiana Newpack) sell "Oceana [Seafood] branded product."[18] Oceana Seafood alleges that Martinez-Malo provided Lee a proposed license agreement on September 27, 2017 for use of the OCEANA mark, but that no license agreement was ever signed.[19] Nonetheless, Oceana Seafood asserts that Martinez-Malo "agreed to sell branded inventory for the company pursuant to the Joint Venture Agreement."[20]

---

[14] *See*, R. Doc. 1 in Civ. A. No. 21-00003-WBV-KWR (E.D. La.), *Oceana Seafood Products, LLC v. Louisiana Newpack Shrimp Company, et al.* (E.D. La.). The Court notes that the parties refer to the "OCEANA marks" in their briefs (*See,* R. Doc. 214 at p. 1; R. Doc. 233; R. Doc. 247), with Defendants specifically referring to "the marks OCEANA and OCEANA BEYOND DELICIOUS" (R. Doc. 214 at p. 2). The Complaint, however, alleges that Oceana Seafood "is the owner of the distinctive trademark OCEANA for seafood products ('the Mark')." R. Doc. 1 at ¶ 10 in the *Oceana Seafood* case. As such, the Court will refer to the "OCEANA mark" throughout this Order.
[15] *See,* R. Doc. 29.
[16] *See*, R. Doc. 1 at ¶¶ 10 & 27 in the *Oceana Seafood* case.
[17] *Id.* at ¶ 14.
[18] *Id.* at ¶ 21.
[19] *Id.* at ¶¶ 22 & 23.
[20] *Id.* at ¶ 24.

Oceana Seafood alleges that despite this arrangement, Louisiana Newpack, through Lee, began selling OCEANA product at deeply discounted prices, "in a manner maliciously intended to harm Oceana's brand."[21] Oceana Seafood further alleges that Louisiana Newpack has imitated Oceana Seafood's unique product label and has developed its own product called "Boudreaux," which it is promoting along with OCEANA product "in order to create an association and steal OCEANA's goodwill."[22] Oceana Seafood claims that it only authorized the joint venture to use the OCEANA mark "through sale by Indigo."[23] Oceana Seafood alleges that Lee has been selling the OCEANA product through other companies that he owns, including Gulf Marine Product Co., Inc. and A La Carte Specialty Foods, LLC.[24] Oceana Seafood alleges that these actions were done by Lee to create confusion and diminish the value of the OCEANA brand.[25]

The *Oceana Seafood* case was subsequently transferred to this Court on January 5, 2021,[26] and the Court granted Oceana Seafood's Motion to Consolidate the case with the *Louisiana Newpack* and *Longhai* cases on March 8, 2021.[27] On the following day, March 9, 2021, Defendants filed a Renewed Motion to Dismiss and Request for Attorneys' Fees, seeking dismissal of Oceana Seafood's claim for tortious

---

[21] *Id*. at ¶¶ 32-38.
[22] *Id*. at ¶¶ 43-44.
[23] *Id*. at ¶ 45.
[24] *Id*. at ¶¶ 47-49.
[25] *Id*. at ¶¶ 49-52.
[26] *See*, R. Doc. 36 in the *Oceana Seafood* case.
[27] *See*, R. Docs. 50 & 52 in the *Oceana Seafood* case.

interference with a business relationship, asserted in Count IV of the Complaint.[28] That motion remains pending at this time.

Defendants filed the instant Motion on May 3, 2021, seeking summary judgment on Oceana Seafood's claims of unfair competition under federal and Florida law, as well as its civil conspiracy claim under Florida law, as alleged in Counts I, II, and III of Oceana Seafood's Complaint.[29] Defendants assert that they are entitled to summary judgment on these claims, which are all based on the alleged unauthorized use of the OCEANA marks by Defendants, because the joint venture owns the marks.[30] Defendants point out that courts have long held that ownership of a mark is established not by proof of who conceived the logo or concept, but by use of the mark in the marketplace.[31] Defendants assert that it is undisputed in this case that the joint venture was the first to use the name Oceana Company in trade, and to sell crab meat under the marks OCEANA and OCEANA BEYOND DELICIOUS.[32] Because the joint venture owns the OCEANA marks, Defendants assert that they are entitled to summary judgment as a matter of law.

Oceana Seafood asserts that summary judgment is inappropriate because the ownership of the brand and marks is a primary contested issue and there are several material facts in dispute, the resolution of which will likely be dispositive in the case.[33] Oceana Seafood claims that the OCEANA brand was conceived by Ana Maria

---

[28] R. Doc. 143 at p. 2; *See*, R. Doc. 1 at ¶¶ 79-87 in the *Oceana Seafood* case.
[29] R. Doc. 214; *See*, R. Doc. 1 at ¶¶ 55-78 in the *Oceana Seafood* case.
[30] R. Doc. 214 at p. 2.
[31] *Id*. at pp. 2, 11-12 (citing *Blue Bell, Inc. v. Farah Mfg. Co., Inc.*, 508 F.2d 1260, 1264-65 (5th Cir. 1975)).
[32] R. Doc. 214 at p. 2.
[33] R. Doc. 233 at p. 1.

Gomez Sampedro in order to facilitate Indigo's marketing and sale of seafood products of the joint venture, as well as the marketing of other seafood products Indigo contemplated that it would sell outside of the joint venture.[34] Oceana Seafood contends that Martinez-Malo, as owner of Indigo, agreed to allow the joint venture to use the OCEANA brand and associated marks to market and sell Chinese red swimming crabmeat, but that "Indigo always retained exclusive ownership of the brand and marks."[35] Oceana Seafood emphasizes that in an October 2, 2017 email exchange regarding the proposed license agreement, Lee referred to the OCEANA brand as Martinez-Malo's brand, and wrote that it was more important for Martinez-Malo to authorize the joint venture to use "your 'Oceana' brand . . . ."[36] Oceana Seafood argues that Lee's statement "makes it clear that he acknowledged that the Oceana brand belonged to Indigo, and that the [joint venture] was to be allowed to use it only by virtue of a (shorter) licensing agreement."[37]

Nonetheless, Oceana Seafood agrees with Defendants and cites the same Fifth Circuit authority for the notion that ownership of a trademark accrues through prior use of the mark in commerce, not by the design or conception of the mark itself or associated artwork and logos.[38] Oceana Seafood also concedes that "there appears to be no material factual dispute" regarding "the actual use of the Oceana marks in sales that took place under the [joint venture]."[39] Oceana Seafood asserts, however, that

---

[34] *Id.* at p. 2.
[35] *Id.* at pp. 2-3.
[36] *Id.* at pp. 3 & 7-8 (*quoting* R. Doc. 233-6) (internal quotation marks omitted); R. Doc. 233 at p. 7.
[37] R. Doc. 233 at p. 8.
[38] *Id.* at p. 5 (citing *Blue Bell, Inc. v. Farah Mfg. Company, Inc.*, 508 F.2d 1260, 1264-65 (5th Cir. 1975)).
[39] R. Doc. 233 at p. 6.

the facts surrounding the discussion and use of the marks in joint venture sales "clearly establish that Indigo always retained exclusive ownership of the marks."[40]

In response, Defendants maintain that they are entitled to summary judgment because the undisputed evidence shows the first, and only, use of the OCEANA marks was by the joint venture.[41] Defendants assert that because the joint venture was the first, and only, person or entity to use the OCEANA marks in trade, the joint venture, and not Sampedro, was the initial owner of the marks. Defendants point out that Oceana Seafood admits that there is no dispute regarding the initial use of the marks, but argues that Indigo somehow retained ownership of the mark without explaining how Indigo purportedly obtained the ownership rights in the first place.[42] Defendants argue that Oceana Seafood confuses and conflates Indigo's actions on behalf of the joint venture with some other "independent" trade of Indigo, and that the evidence before the Court shows that Indigo's sale and marking of the marks was only on behalf of the joint venture.[43] Defendants assert that because Oceana Seafood failed to point to any evidence of its use in trade of the OCEANA marks, it lacks any ownership interest in the marks. As such, Defendants maintain that Oceana Seafood's related claims for unfair competition and conspiracy must be dismissed, since they can only be asserted if Oceana Seafood owns the marks at issue.[44]

---

[40] *Id.*
[41] R. Doc. 247 at p. 1.
[42] *Id.* at p. 2.
[43] *Id.*
[44] *Id.* at p. 5.

## II.     LEGAL STANDARD

Summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law.[45] When assessing whether a dispute regarding any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[46] While all reasonable inferences must be drawn in favor of the nonmoving party, a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions or "only a scintilla of evidence."[47] Instead, summary judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party.[48]

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial."[49] The nonmoving party can then defeat summary judgment by either submitting evidence sufficient to demonstrate the existence of a genuine dispute of material fact, or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party."[50] If, however,

---

[45] Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986).
[46] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008) (citations omitted).
[47] *Id.* (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)) (internal quotation marks omitted).
[48] *Delta & Pine Land Co.*, 530 F.3d at 399 (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505).
[49] *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991).
[50] *Id.* at 1265.

the nonmoving party will bear the burden of proof at trial on the dispositive issue, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.[51] The burden then shifts to the nonmoving party who must go beyond the pleadings and, "by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"[52]

### III.  ANALYSIS

In the Complaint, Oceana Seafood asserts three related claims against Defendants based upon its alleged ownership of the OCEANA brand. Oceana Seafood first asserts a federal unfair competition claim "under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)" based upon Defendants' unauthorized use of the OCEANA mark.[53] The Supreme Court has held that § 43(a) creates a federal cause of action for traditional trademark infringement of unregistered marks.[54] Oceana Seafood also asserts an unfair competition claim under Florida law, which applies the same standard as federal law.[55] Finally, Oceana Seafood asserts a conspiracy claim under

---

[51] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).
[52] *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553 (*quoting* Fed. R. Civ. P. 56(e)).
[53] R. Doc. 1 at ¶ 56 in the *Oceana Seafood* case.
[54] *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 30, 123 S.Ct. 2041, 2046, 156 L.Ed.2d 18 (2003). The Court notes that Oceana Seafood alleged in its Complaint that Indigo filed a trademark application on November 13, 2017 to register the OCEANA trademark with the United States Patent and Trademark Office, but that the application "later lapsed." R. Doc. 1 at ¶ 25 in the *Oceana Seafood* case. Oceana Seafood further asserts that it filed a trademark application to register the mark "OCEANA BEYOND DELICIOUS" in January 2019, and that the application was pending at the time it filed the Complaint on February 5, 2020. *Id*. at ¶ 29. Oceana Seafood does not allege in the Complaint that the OCEANA mark at issue is a registered trademark.
[55] *Suntree Techs., Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1345 (11th Cir. 2012) (citing *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 n.4 (11th Cir. 2001)); *Whetstone Holdings, LLC*

Florida law, based upon Defendants' unfair competition through their unauthorized use of the OCEANA mark.[56] Thus, all three claims are premised upon Oceana Seafood's alleged ownership of the OCEANA mark.

Title 15 U.S.C. § 1125, relied upon by Oceana Seafood,[57] prohibits any person from using in commerce "any word, term, name, symbol, or device . . . that is likely to cause confusion, or to cause mistake, or to deceive . . . as to the origin, sponsorship or approval of his or her goods . . . by another person."[58] To successfully assert an infringement claim under the Lanham Act, the plaintiff must: (1) establish ownership in a legally protectible mark; and (2) prove infringement by demonstrating a likelihood of confusion.[59] The pertinent issue in this case is the ownership of the OCEANA mark and logo.

The Supreme Court has held that, "rights in a trademark are determined by the date of the mark's first use in commerce. The party who first uses a mark in commerce is said to have priority over other users."[60] According to the Fifth Circuit, "Ownership of a mark requires a combination of both appropriation and use in trade."[61] Thus, "neither conception of the mark, nor advertising alone establishes trademark rights at common law."[62] "Rather, ownership of a trademark accrues

---

*v. Thorell*, Civ. A. No. 13-24138-UU, 2014 WL 11906593, at *2 (S.D. Fla. Feb. 5, 2014) (citation omitted).
[56] R. Doc. 1 at ¶¶ 72-78 in the *Oceana Seafood* case.
[57] *Id*. at ¶ 56.
[58] 15 U.S.C. § 1125(a).
[59] *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 235-36 (5th Cir. 2010) (citing *Bd. of Supervisors for La. State Univ. Agric. And Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 474 (5th Cir. 2008)).
[60] *Hana Fin. Inc. v. Hana Bank*, 574 U.S. 418, 419, 135 S.Ct. 907, 909, 190 L.Ed.2d 800 (2015).
[61] *Blue Bell, Inc. v. Farah Mfg. Co., Inc.*, 508 F.2d 1260, 1264-65 (5th Cir. 1975) (citation omitted).
[62] *Id*. at 1265 (internal citations omitted) (citing authority).

when goods bearing the mark are placed on the market."[63] The Fifth Circuit has made clear that, "The exclusive right to a trademark belongs to one who first uses it in connection with specified goods."[64] Further, "Such use need not have gained wide public recognition, and even a single use in trade may sustain trademark rights if followed by continuous commercial utilization."[65]

Here, the parties agree that the law provides that ownership of a trademark accrues through prior use of the mark in commerce, not by the design or conception of the mark or associated artwork and logos.[66] Oceana Seafood also concedes that, "'there appears to be no material factual dispute between the parties with regard to the actual use of the [OCEANA] marks in sales that took place under the [joint venture].'"[67] Nonetheless, Oceana Seafood claims that, "'the facts surrounding the discussion and use of the marks in [joint venture] sales clearly establish that Indigo always retained exclusive ownership of the marks.'"[68] Oceana Seafood, however, has failed to direct to the Court to any summary judgment evidence establishing that Indigo acquired original ownership of the OCEANA mark by using it in commerce.[69] Defendants have submitted evidence to the Court showing that the joint venture began selling OCEANA-brand product in July 2017 and continued to do so in 2019.[70] Defendants have also submitted testimony from Sampedro's deposition, during which

---

[63] *Id.* (citation omitted).
[64] *Id.* (citing authority).
[65] *Id.* (citation omitted).
[66] R. Doc. 214-1 at p. 11; R. Doc. 233 at pp. 5-6.
[67] R. Doc. 233 at p. 6; *See also*, R. Doc. 214-1 at pp. 12-13.
[68] R. Doc. 233 at p. 6.
[69] R. Doc. 1 at ¶ 10 in the *Oceana Seafood* case; *See*, R. Docs. 233-3 & 233-4.
[70] R. Doc. 214-9 & 214-17. *See*, R. Docs. 214-11, 214-12, & 214-15.

she testified that Indigo did not sell any OCEANA-brand product before June 2017.[71] Oceana Seafood has not presented the Court with any evidence to contradict or dispute the Defendants' evidence regarding the joint venture's use of the OCEANA mark.

More importantly, however, Oceana Seafood has failed to allege any facts or submit evidence regarding Indigo's use of the OCEANA mark in commerce. Thus, there is no evidence before the Court that Indigo ever used the OCEANA mark on its own products, or that it did so before the joint venture used the mark in commerce. Although Oceana Seafood asserts in the Complaint that, "Sampedro was retained by Indigo to develop the mark OCEANA and a logo to accompany the Mark for Indigo's use," and that, "Indigo had her design the distinctive OCEANA label for use on Indigo products, show booths and other forms of marketing material,"[72] "ownership of a trademark is not acquired through its formal design or conception, but rather through its use in commerce,"[73] a point Oceana Seafood concedes. As such, Oceana Seafood has failed to establish a genuine issue of material fact regarding the joint venture's ownership of the OCEANA mark through its initial use of the mark in commerce.

The Court further finds that the email correspondence between Martinez-Malo and Lee in September and October of 2017, regarding a license agreement for the joint venture's use of the OCEANA mark, does not create a genuine issue of material fact regarding Indigo's lack of ownership in the mark.[74] Although Lee responded to

---

[71] R. Doc. 214-1 at p. 5 (*quoting* R. Doc. 214-4 at pp. 33-34) (internal quotation marks omitted).
[72] R. Doc. 1 at ¶ 14 in the *Oceana Seafood* case. *See also*, R. Doc. 233-3 at ¶¶ 7; R. Doc. 233-4 at ¶ 6.
[73] R. Doc. 233 at p. 6.
[74] *See*, R. Docs. 233-5 & 233-6.

Martinez-Malo's email by referring to the OCEANA mark as "your 'Oceana Brand,'"[75] there seems to be no dispute that the parties never executed a license agreement for the joint venture's use of the OCEANA mark.[76] More importantly, Oceana Seafood has not directed the Court to any legal authority indicating that a discussion regarding licensing the use of a trademark is sufficient to create a genuine issue of fact regarding original ownership of the mark, especially in the face of well-established Fifth Circuit authority that, "The exclusive right to a trademark belongs to one who first uses it in connection with specified goods."[77] As such, Oceana Seafood has failed to establish a genuine issue of material fact regarding the joint venture's ownership in the OCEANA mark. While Oceana Seafood contends that Indigo maintained its ownership of the mark while allowing the joint venture to use the mark, which it then assigned to Oceana Seafood, Oceana Seafood has failed to present any summary judgment evidence indicating that Indigo was the original owner of the mark through its use in commerce. As a result, Oceana Seafood has likewise failed to provide any evidence of its ownership in the OCEANA mark, which it purportedly obtained "by assignment from Indigo Seafood Partnership, Inc."[78]

Because Oceana Seafood's claims for federal and common law unfair competition and for civil conspiracy are all premised upon its ownership in the OCEANA mark and Oceana Seafood has failed to raise a genuine issue of fact

---

[75] R. Doc. 233 at p. 8 (*quoting* R. Doc. 233-5 at p. 1).
[76] R. Doc. 1 at ¶¶ 21-24 in the *Oceana Seafood* case; R. Doc. 214-1 at pp.6-7; R. Doc. 233 at pp. 3-4.
[77] *Blue Bell, Inc. v. Farah Mfg. Co., Inc.*, 508 F.2d 1260, 1265 (5th Cir. 1975) (citing authority).
[78] R. Doc. 1 at ¶ 10 in the *Oceana Seafood* case.

regarding its lack of ownership in the mark, Defendants are entitled to summary judgment on these claims.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the Defendants' Motion for Summary Judgment on OSP's Claims [79] is **GRANTED.** Oceana Seafood's claims in Counts I, II, and III of its Complaint for federal unfair competition, common law unfair competition under Florida law, and civil conspiracy under Florida law [80] are hereby **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana, November 2, 2021.

*[signature: Wendy B. Vitter]*

**WENDY B. VITTER**
**United States District Judge**

---

[79] R. Doc. 214.
[80] R. Doc. 1 at ¶¶ 55-78 in the *Oceana Seafood* case.